UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

287 FRANKLIN AVENUE RESIDENTS'
ASSOCIATION; JON SASMOR;
LISA LIN; WILLIAM OSTERWEIL;
KURT FLETCHER; and VILIJA SKUBUTYTE

              Plaintiffs,

    - against -

CHAIM MEISELS a/k/a CLIAMAH MIZELLE;
CHAIM GOLDBERGER a/k/a HENRY GOLDBERG;
ISAAC TEITELBAUM a/k/a ISAAC TITALBAUM;
ABRAHAM SCHNEEBALG; RONALD HENRY;
NATHAN SMITH; JOSH BOSCH; JOE DOE;
RONALD HENRY LAND TRUST;
HENRY MANAGEMENT, LLC;
PEOPLE CHOICE REAL ESTATE, LLC
a/k/a PEOPLES CHOICE REAL ESTATE, L.L.C.
a/k/a PEOPLE'S CHOICE REALTY, INC.;
PETER HENRY a/k/a GURU;
LOUIS GARCIA; JOEL KAUFMAN;
KINGS COUNTY REALTY CORP.;
BRIAN DUDJAK; SAMUEL EMMANUS;
JOHN AND JANE DOES # 2 THROUGH # 10;
JOHN DOE CORPORATIONS
# 1 THROUGH # 10; and OTHER JOHN DOE
ENTITIES # 1 THROUGH # 10,

              Defendants.

----------------------------------------------------------------X

ORIGINAL

**FIRST
AMENDED
COMPLAINT**

11-CV - 976 (KAM)(JO)

**Jury Trial Demanded**



1

## INTRODUCTION

1. Plaintiffs bring this lawsuit to redress and end Defendants' practices of defrauding banks, tenants, and tax authorities, conducting unlawful money transfers, evading taxes, and providing unsafe, unlawful housing in Brooklyn to hundreds of tenants and to hundreds or thousands of interstate and foreign guests.

2. Plaintiffs make claims under each of the four subsections of 18 U.S.C. § 1962 of the Federal Racketeer Influenced and Corrupt Organizations Act.

3. Plaintiffs make two additional supplementary claims under the New York Consumer Protection Act.

## PARTIES

4. Plaintiff 287 Franklin Avenue Residents' Association has an office at 287 Franklin Avenue, Brooklyn, NY 11205.

5. Plaintiff Jon Sasmor resides at 287 Franklin Avenue, Room #2B, Brooklyn, NY 11205.

6. Plaintiff Lisa Lin resides at 287 Franklin Avenue, Room #2B, Brooklyn, NY 11205.

7. Plaintiff Willie Osterweil resides at 287 Franklin Avenue, Room #3R, Brooklyn, NY 11205.

8. Plaintiff Kurt Fletcher resides at 7324 Richmond Place, Saint Louis, MO 63143.

9. Plaintiff Vilija Skubutyte resides at 287 Franklin Avenue, Room #3F, Brooklyn, NY 11205.

10. Defendant Chaim Meisels a/k/a Cliamah Mizelle resides at 75 Franklin Avenue, Brooklyn, NY 11205 or at 660 Bedford Avenue, Brooklyn, NY 11211 and has an office at 132 Franklin Avenue, #2, Brooklyn, NY 11205.

11. Defendant Chaim Goldberger a/k/a Henry Goldberg resides at 198 Middleton Street, Brooklyn, NY 11206 or at 1270 59th Street, Brooklyn, NY 11219 and has an office at 503 Lafayette Avenue, Brooklyn, NY 11205.

2

12. Defendant Isaac Teitelbaum a/k/a Isaac Titalbaum resides at 237 Hooper Street, Brooklyn, NY 11211.

13. Defendant Abraham Schneebalg resides at 194 Hooper Street, Brooklyn, NY 11211 or at 238 Keap Street, Brooklyn, NY 11211 or at 56 Morton Street, Apt. #1A, Brooklyn, NY 11211 or at another address in Brooklyn, NY.

14. Defendant Ronald Henry resides at 424 Cathedral Pkwy, #14C, New York, NY 10025.

15. Defendant Nathan Smith has an office at 359 Broadway, Brooklyn, NY 11211.

16. Defendant Josh Bosch has an office at 359 Broadway, Brooklyn, NY 11211.

17. Defendant Joe Doe has an office at 359 Broadway, Brooklyn, NY 11211.

18. Defendant Ronald Henry Land Trust has registered with the New York City Register an address of 287 Franklin Avenue, Brooklyn, NY 11205.

19. Defendant Henry Management, LLC has an office at 503 Lafayette Avenue, Brooklyn, NY 11205, and has registered with the New York Department of State an address of 320 Roebling Street, Ste. 518, Brooklyn, NY 11211.

20. Defendant People Choice Real Estate, LLC a/k/a Peoples Choice Real Estate, L.L.C. a/k/a People's Choice Realty, Inc. has an office at 359 Broadway, Brooklyn, NY 11211.

21. Defendant Peter Henry a/k/a Guru resides or has an office at an address unknown to the plaintiffs but believed to be in Brooklyn, NY.

22. Defendant Louis Garcia resides at 115 Prentice Road, Levittown, NY 11756 and has an office at 1755 Broadway, Brooklyn, NY 11207.

23. Defendant Joel Kaufman has offices at 1755 Broadway, Brooklyn, NY 11207 and at 132 Franklin Avenue, #2, Brooklyn, NY 11205.

24. Defendant Kings County Realty Corp. has an office at 1755 Broadway, Brooklyn, NY 11207.

3

25. Defendant Brian Dudjak resides or has an office at 1082 Pacific Street, Brooklyn, NY 11238.

26. Defendant Samuel Emmanus resides or has an office at 1580 Prospect Place, Brooklyn, NY 11233.

**JURISDICTION AND VENUE**

27. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1964(c), 18 U.S.C. § 1965, and 28 U.S.C. § 1331.

28. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

29. Venue is proper in this Court under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because all Defendants transact affairs in this judicial district, at least one Defendant resides in this judicial district, and a substantial part of the events, acts, or omissions giving rise to the claims occurred in this judicial district.

**APPLICABLE STATUTORY AND REGULATORY ENVIRONMENT**

**A. Racketeer Influenced and Corrupt Organizations Act**

30. Congress enacted the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 – 1968, as part of the Organized Crime Act of 1970, with the purpose of "the eradication of organized crime." 18 U.S.C. § 1964(c) provides a civil remedy to those who have been injured by a violation of 18 U.S.C. 1962. RICO racketeering activity as defined in 18 U.S.C. § 1961(1) includes predicate acts committed by Defendants, as alleged specifically in subsequent paragraphs, in violation of the following U.S. Code provisions and New York laws:

(a) 18 U.S.C. § 1951 relating to interference with commerce by threats or violence, including by extortion, by attempted extortion, or by conspiracy to extort,

(b) 18 U.S.C. § 1341 relating to mail fraud,

(c) 18 U.S.C. § 1343 relating to wire fraud,

4

(d) 18 U.S.C. § 1344 relating to bank fraud,

(e) 18 U.S.C. § 1952 relating to interstate travel or transportation in aid of racketeering enterprises,

(f) 18 U.S.C. § 1956 relating to laundering of monetary instruments,

(g) 18 U.S.C. § 1957 relating to engaging in transactions of criminally derived property,

(h) 18 U.S.C. § 2314 relating to interstate or foreign transport of stolen property,

(i) 18 U.S.C. § 1510 relating to obstruction of criminal investigations,

(j) New York Penal Code Article 155 relating to larceny, including the wrongful taking, obtaining, or withholding of another's property by extortion,

(k) New York Penal Code Article 110 relating to attempt to commit a crime, including attempt to commit larceny involving extortion, and

(l) New York Penal Code Article 105 relating to conspiracy to commit a crime, including conspiracy to commit larceny involving extortion.

31. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

32. 18 U.S.C. § 1962(b) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

33. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

5

34.  18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

35.  Defendants' unlawful schemes, as described herein, violate all four subsections of 18 U.S.C. § 1962.

**B.  New York Consumer Protection Act**

36.  The New York Consumer Protection Act (the "NYCPA"), Article 22-A of the New York General Business Law, prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state" (N.Y. Gen. Bus. Law § 349) and also prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state" (*Id.* § 350).  General Business Law §§ 349(h) and 350-e provide civil remedies to those who have been injured by deceptive practices or false advertising in violation of the NYCPA.

37.  Defendants' conduct, as described herein, violates both § 349 and § 350 of the NYCPA.

**C.  New York Housing Laws and Public Policy**

38.  Because Defendants' patterns of racketeering activity include activities related to providing unsafe, unlawful housing in New York City to tenants and to interstate and foreign visitors, a few references to state and local housing laws are provided here.  The New York Multiple Dwelling Law ("MDL") governs housing in New York State.  The New York City Administrative Code ("AC"), including the Building Code ("BC") and the Housing Maintenance Code ("HMC"), governs housing in New York City.  Defendants' violations of housing laws include the following:

(a)  Fire Safety.  The MDL requires working smoke detectors in multiple dwellings (MDL § 68).  The BC requires working carbon monoxide detectors in residential buildings with a fossil-fuel burning boiler or furnace (AC § 27-981.2).  The MDL requires at least two separate means of fire egress from every apartment in non-fireproof multiple dwellings (MDL § 146).

(b) Illegal conversions.  The MDL prohibits conversions of wood frame buildings into multiple dwellings after 1929 (MDL § 56).  The HMC prohibits conversions of buildings to single room occupancy ("SRO") rooming units after 1954, with certain exceptions for nonprofit

6

organizations (AC § 27-2077). The MDL prohibits use of wood frame buildings for SRO rooming units (MDL § 248).

(c) SRO Safety Requirements. SRO rooming units require special safety precautions, including self-closing doors, specially marked fire exits, a closed-circuit fire alarm system, weekly cleaning of rooms, a manager in residence, and a watchman on duty at all times (MDL § 248).

(d) Multiple Dwelling Registration. The MDL requires registration of multiple dwellings in New York City. No rent may be collected in multiple dwellings without a valid registration, and no eviction proceedings may be maintained for nonpayment of rent (MDL § 325).

(e) Certificate of Occupancy. The MDL requires building owners to obtain a Certificate of Occupancy for multiple dwellings built or converted after 1929. Such a Certificate of Occupancy is granted upon compliance with the MDL, BC, HMC, and any other relevant laws and regulations. Buildings requiring a Certificate of Occupancy may not be occupied until the Certificate of Occupancy is obtained (MDL § 301). No rent may be collected from buildings in violation of MDL § 301, and no eviction proceedings may be maintained for nonpayment of rent. Additionally, any mortgage on buildings in violation may be declared due at the option of the mortgagee. Buildings in violation are to be deemed "unfit for habitation," and are to be vacated by the appropriate department, and the water turned off (MDL § 302). In cases of which Plaintiffs are aware, the New York City Departments of Buildings and Housing Preservation have vacated only those parts of buildings which are "unfit for human habitation" on other grounds, such as lack of fire egress.

(f) Hotel registration. The AC requires hotel operators, including hostel operators, to file a Certificate of Registration with the New York City Department of Finance for the purposes of payment of the Hotel Room Occupancy Tax (AC § 11-2514).

(g) Vacate orders. According to the HMC, any dwelling or part thereof which "constitutes a danger to the life, health, or safety of its occupants shall be deemed unfit for human habitation," and an order may be issued by the Department of Housing Preservation and Development to vacate that dwelling or part thereof (AC § 27-2139).

39. On November 7, 2009, a fire killed 3 people in an illegally divided apartment in Woodside, Queens (http://www.nytimes.com/2009/11/10/nyregion/10fire.html). On February 17, 2011, a fire killed a man in East New York, Brooklyn in an illegally divided apartment, after which the Fire Department of New

York reported that fires had killed at least 7 people in illegal apartments in 2010 (http://online.wsj.com/article/AP11d1c52ef30c47d8898b43681a1f674d.html). In an effort to crack down on unsafe, illegal apartments, such as those operated by Defendants, in the summer of 2010, the New York City Mayor's Office and Department of Buildings conducted an undercover operation to investigate apartment postings on craigslist.org. 54 of 62 apartments investigated contained illegal living conditions, and vacate orders were issued for 33 buildings by September 2010 as a result of the investigation (http://www.nyc.gov:80/portal/site/nycgov/menuitem.c0935b9a57bb4cf3daf2f1c701 c789a0/index.jsp?pageID=mayor_press_release&catID=1194&doc_name=http%3A%2F%2Fwww.nyc .gov%2Fhtml%2Fom%2Fhtml%2F2010b%2Fpr403-10.html&cc=unused1978&rc=1194&ndi=1).

40. The New York City Mayor's Office for Special Enforcement enforces laws against illegal conversions of apartment buildings into hostels, such as those operated by Defendants. (http://blogs.wsj.com/metropolis/2010/07/26/illegal-hotels-now-outlawed-will-be-policed-by-mayors-office/). In July 2010, Governor David Patterson signed S6873B-2009 (http://open.nysenate.gov/ legislation/bill/S6873B), a law amending the MDL and AC to clarify provisions that prohibit the operation of hotels and hostels in residential buildings (http://blogs.villagevoice.com/runninscared/ 2010/11/finally_days_nu.php).

## THE DEFENDANTS' UNLAWFUL ACTIVITIES

### A. The Enterprise

41. Defendant Chaim Meisels currently is owner of record of at least 5 parcels of real property in Brooklyn, NY, including 465 Park Avenue, Brooklyn, NY 11205; 467 Park Avenue, Brooklyn, NY 11205; 330 Berry Street, Brooklyn, NY 11211; 28 Rochester Avenue, Brooklyn, NY 11233; and 393 Liberty Avenue, Brooklyn, NY 11207. Since 2000, Chaim Meisels has previously conducted real estate transactions, including ownership and mortgages, at 335 Tompkins Avenue, Brooklyn, NY 11221; 155 West 9 St, Brooklyn, NY 11215; 27 North Elliott Place, Brooklyn, NY 11205; 99 Hall Street, Brooklyn, NY 11205; 75 Franklin Avenue, Brooklyn, NY 11205; and 624 Wythe Avenue, Brooklyn, NY 11211.

42. 330 Berry Street, Brooklyn, NY 11211 was previously owned by Miriam Katz, then transferred on February 16, 2005 to Chaim Meisels and Miriam Katz, then transferred again on February 5, 2008 to Chaim Meisels alone. 75 Franklin Avenue, Brooklyn, NY 11205 was transferred from Miriam Katz to Chaim Meisels on July 6, 2005.

8

43. An internet directory (http://www.veromi.com/NY/Miriam-Katz.aspx) accessed on February 22, 2011 shows Miriam Katz as an alternate name for Mirel Meisels and a relative of Chaim Meisels. Another directory webstite (http://www.hoovers.com/company/10_new_york_realty_inc/rhfkjfrhf-1.html) also accessed on February 22, 2011 shows Mirel Meisels as Principal of 10 NY Realty Inc., with a listed address at 75 Franklin Avenue, Brooklyn, NY 11205, which is the same as Chaim Meisels' residence address. 877 Myrtle Avenue, Brooklyn, NY 11206 was transferred from Mirel Meisels to Chaim Meisels on November 20, 2005. Mirel Meisels is the current record owner of 1082 Pacific Street, Brooklyn, NY 11238, where Defendants Isaac Teitelbaum and Brian Dudjak have operated an illegal hostel since May 2010, and continue to do so.

44. The New York Secretary of State's internet corporations database includes the following entities: 01 NY REALTY INC., 02 NY REALTY INC., 03 NY REALTY INC., 04 NY REALTY INC., 05 NY REALTY INC., 06 NY REALTY INC., 07 NY REALTY INC., 08 NY REALTY INC., 09 NY REALTY INC., 10 NY REALTY INC., 11 NY REALTY INC., 12 NY REALTY INC., 13 NY REALTY INC., 14 NY REALTY INC., 15 NY REALTY INC., 18 NY REALTY INC., 21 NY REALTY INC., 22 NY REALTY INC., 23 NY REALTY INC., 24 NY REALTY INC., 25 NY REALTY INC., 26 NY REALTY INC., 27 NY REALTY INC., 28 NY REALTY INC., and 29 NY REALTY INC. The above entities numbered 01 through 09 and 11 through 15 were registered at 84 St. Jones Place, Brooklyn, NY 11202, and were dissolved on October 28, 2009. The above entities numbered 21 through 26 were registered at 3654 Hertel Avenue, Buffalo, NY 14213, and were dissolved on January 26, 2011. The above entities numbered 27 through 29 were registered at 6 Lake Street, Monroe, NY 10950, and were dissolved on January 26, 2011. 10 NY Realty Inc., as also mentioned in paragraph 43 above, has a current entity name of NY DEVELOPEMENT INC. (sic), and was dissolved on January 26, 2011. 18 NY Realty Inc. is an active entity registered at 543 Bedford Avenue #256, Brooklyn, NY 11211, and the Department of State registration lists Eliezer Meisels as the chairman or chief executive officer.

45. Joel Meisels and Chaim Meisels both live at 660 Bedford Avenue, Brooklyn, NY 11211, according to an internet directory accessed on February 22, 2011 (http://www.whitepages.com/search/Replay?lower=6&more_info=1&search_id=12221332519884846393&search_type=findperson). According to the New York City Register's online records ("ACRIS") at http://www.nyc.gov/html/dof/html/jump/acris.shtml, Joel Meisels granted Power of Attorney to Chaim Meisels for the property 227 Franklin Avenue, Brooklyn, NY 11205 on October 31, 2003 and October 13, 2004. Joel Meisels also granted Power of Attorney to Chaim Meisels for the property 603 Van Buren Street, Brooklyn, NY 11221 on August 28, 2007. Also according to ACRIS, Joel Meisels, Inc. granted a deed for 1082 Pacific Street, Brooklyn, NY 11238 to Mirel Meisels on April 16, 2007 for a sale price of $0.

9

46. Since 2008, 10 foreclosure cases have been filed against Chaim Meisels, 5 against Joel Meisels, and 3 against Mirel Meisels in Supreme Court of the State of New York, County of Kings. Plaintiffs do not know which of the names Chaim Meisels, Joel Meisels, Mirel Meisels, and Miriam Katz refer to separate people and which if any are aliases.

47. Defendant Chaim Meisels is the current owner of record of 330 Berry Street, Brooklyn, NY 11211, which is Block 2442, Lot 23 in the City Register's records. Defendant Chaim Goldberger resides at 198 Middleton Street, Brooklyn, NY 11206, which is Block 2242, Lot 23 in the City Register's records. In the six digits of Block and Lot, only one digit differs between the two properties above: one is Block 2442, Lot 23; the other is Block 2242, Lot 23. On September 15, 2008, HSBC Bank filed HSBC Bank USA, N.A. v. Chaim Meisels, bearing Index No. 25980/2008 at the Supreme Court of the State of New York, County of Kings, in which HSBC Bank commenced a foreclosure proceeding on the wrong Block and Lot, incorrectly stating the Block and Lot of 330 Berry Street to be Block 2242, Lot 23 instead of Block 2442, Lot 23.

48. The website of GNP Brokerage (http://www.gnpbrokerage.com/contact.html) as accessed on February 22, 2011 lists Defendant Chaim Goldberger and Joel Meisels as 2 of 7 "Account Producers." The Department of State's registration for GNP BROKERAGE INC. lists the current entity name as GNP COVERAGE INC. and the chairman or chief executive officer as Chaim Goldberger, 1270 59th Street, Brooklyn, NY 11219. GNP BROKERAGE INC. was dissolved on October 29, 2009, which is the same date of dissolution as 14 of the entities mentioned above in paragraph 44.

49. Jacob Teitelbaum is the record owner of 237 Hooper Street, Brooklyn, NY 11211, where Defendant Isaac Teitelbaum resides. According to ACRIS, Jacob Teitelbaum on February 16, 2005 entered into a UCC1 agreement with Chaim Meisels using Meisels' property 155 West 9th Street, Brooklyn, NY 11215 as collateral.

50. Defendant Ronald Henry purchased 287 Franklin Avenue, Brooklyn, NY 11205 from Gail Cadogan Richardson on August 31, 2007. He obtained a mortgage that was subsequently assigned to OneWest Bank FSB, whose headquarters are at 888 East Walnut Street, Pasadena, CA 91101. On May 8, 2009, OneWest Bank FSB filed an action to foreclose this mortgage at the Supreme Court of the State of New York, County of Kings, bearing Index No. 11344/2009.

51. On or around May 9, 2009, Defendant Chaim Meisels approached Defendant Ronald Henry at 287 Franklin Avenue and offered to help facilitate a short sale. Chaim Meisels identified himself to Ronald

Henry as "Cliamah Mizelle." On May 12, 2009, Ronald Henry met with Meisels and other unknown individuals to sign documents, including a Power of Attorney, and Authorization for Short Sale, Proof of Hardship, and a deed for 287 Franklin Avenue. Some or all of the documents were signed in front of a notary in Queens. Chaim Meisels told Ronald Henry that the deed he signed was a necessary part of the paperwork for the short sale. Also on May 12, 2009, Chaim Meisels gave Ronald Henry a check for $10,000, which Ronald Henry cashed.

52. On May 18, 2009, 10 days after OneWest Bank FSB filed the foreclosure case referenced above in paragraph 50, a deed was filed with the New York City Register, Document ID 2009051400302001 conveying 287 Franklin Avenue from Defendant Ronald Henry as grantor to Defendant Ronald Henry Land Trust as grantee. The full sale price listed in that deed is $0. The deed names no beneficiary of Ronald Henry Land Trust. The deed contains no reference to any specific trust agreement nor does it name any trustee or other individual responsible for Ronald Henry Land Trust in any capacity.

53. 162 Covert Street, Brooklyn, NY 11207 is another property with a pending foreclosure case (*LaSalle Bank N.A. v. Sylvia Francis, et al.,* Supreme Court of the State of New York, County of Kings, Index No. 7986/2007). On June 10, 2009, a deed was signed granting 162 Covert Street from Sylvia Francis as grantor to Sylvia Francis Land Trust as grantee. The deed names no beneficiary of Sylvia Francis Land Trust. The deed contains no reference to any specific trust agreement nor does it name any trustee or other individual responsible for Sylvia Francis Land Trust in any capacity. The signatures of both grantor and grantee on the documents accompanying the deed were notarized by Defendant Louis Garcia. The signature on the Real Property Transfer Report for the grantee appears to be the signature of Defendant Joel Kaufman, and Defendant Garcia has told plaintiffs that that signature, which he notarized, indeed belongs to Joel Kaufman. The Sylvia Francis Land Trust deed was filed with the New York City Register on August 17, 2009, Document ID 2009081100663002. The deed lists a full sale price of $0 and purports to grant 162 Covert Street to Sylvia Francis Land Trust.

54. The Ronald Henry Land Trust deed referenced in paragraph 52 and the Sylvia Francis Land Trust deed referenced in paragraph 53 have striking similarities. Both grant a property in foreclosure to a "Land Trust" containing the name of the grantor for a full sale price of $0. Both were signed within a month of each other in May and June 2009. Both list the same Presenter and the same Return To address on their cover pages, NY LAND TITLE AGENCY (PICK UP BRS), 38-08 BELL BLVD., SUITE 11, BAYSIDE, NY 11361.

55. According to a search of the New York State Department of State's licensing records at

11

https://appsext7.dos.state.ny.us/nydos/searchByName.do on July 4, 2011, Defendant Joel Kaufman has two real estate salesperson licenses, one under Defendant Kings County Realty Corp. with Defendant Louis Garcia as supervising broker (License No. 40KA1095749) and one under Microsoft Real Estate Inc. with Defendant Chaim Meisels as supervising broker (License No. 10401224720). In the "land trust" transactions involving 162 Covert Street, 287 Franklin Avenue, and possibly other properties, it is unclear which actions were done on behalf of Microsoft Real Estate Inc. and/or Defendants Chaim Meisels, Louis Garcia, Kings County Realty Corp., and/or Joel Kaufman. To the extent that Kings County Realty Corp. and Microsoft Real Estate Inc. are involved, their respective principals or officers, possibly including Defendants Chaim Meisels and Louis Garcia, may be personally liable for their own actions and/or as supervising brokers for the actions of Joel Kaufman and/or as principals or officers participating in the affairs of the corporation.

56. As of January 2010, 287 Franklin Avenue was occupied by Maria Hernandez and several of her foster children. Hernandez previously had paid $5400 monthly rent for the whole house to Ronald Henry, but had not paid rent for several months. In or around January 2010, Defendant Louis Garcia, on behalf of Defendants Kings County Realty Corp., Chaim Meisels, Joel Kaufman, Microsoft Real Estate, Ronald Henry Land Trust, Isaac Teitelbaum, Abraham Schneebalg, and/or Ronald Henry visited Ms. Hernandez and convinced her and her family to leave 287 Franklin Avenue.

57. By February 2010, Defendants Isaac Teitelbaum and Abraham Schneebalg arranged to convert 287 Franklin Avenue illegally into 9 single room SRO rooming units by moving the walls that previously divided the second floor into a two-family house, so that the building now contained a single hallway and stair with 9 rooms on 3 floors, each room with a separate entrance and lock.

58. In or around early March 2010, Defendant Ronald Henry visited 287 Franklin Avenue and spoke with Defendant Brian Dudjak, who was living there. According to statements that Dudjak later made to Plaintiff Jon Sasmor, Ronald Henry was angry and surprised to see Dudjak there. Ronald Henry told Dudjak that he was the owner of the building and asked how Dudjak came to live there. Dudjak told Ronald Henry that there had been a short sale and that Defendant Isaac Tetitelbaum was the new owner. Ronald Henry left his business card with Dudjak, and did not return to 287 Franklin Avenue until August 6, 2010.

59. In March 2010, Defendant Isaac Teitelbaum made an agreement with Defendant Chaim Goldberger to manage 287 Franklin Avenue through Goldberger's LLC, Defendant Henry Management, LLC. Goldberger and/or Teitelbaum made an agreement with Defendants Nathan Smith, Josh Bosch, Joe Doe, and People Choice Real Estate, LLC to advertise the 9 rooming units on the

12

internet, collect rents, security deposits, and credit check fees, and fill the rooms with tenants.

60. Defendant People Choice Real Estate, LLC describes itself as Peoples Choice Real Estate, L.L.C. on its printed receipts, on its printed lease rider, on its website (http://peopleschoicerentals.com), and on its blog (http://peopleschoicerentals.blogspot.com/). When Plaintiff Jon Sasmor searched the New York Secretary of State's internet database on February 20, 2011 for entities beginning with "Peoples Choice," "People's Choice," and "Peoples' Choice," he could not find the correct LLC registered. On the fourth try, he was able to identify the correct name of Defendant People Choice Real Estate, LLC by searching for entities containing "Choice Real Estate." Another registered entity, People's Choice Realty, Inc., previously did business at the same address as People Choice Real Estate, LLC, but was dissolved on September 24, 2009.

61. Defendant People Choice Real Estate, LLC a/k/a Peoples Choice Real Estate, L.L.C. a/k/a People's Choice Realty, Inc. as of February 23, 2011 has received 5 internet reviews from Google Users (http://maps.google.com/maps/place?cid=78932211901187306&q=peoples+choice+real +estate+reviews&hl=en&gl=us&view=feature&mcsrc=google_reviews&num=10&start=0&ie=UTF8 &ll=40.707735,-73.955166&spn=0,0&z=14), 8 internet reviews from Yelp users (http://www.yelp.com/biz/peoples-choice-realty-brooklyn), and 26 internet reviews from CitySearch users (http://brooklyn.citysearch.com/profile/42309306/brooklyn_ny/peoples_choice_realty_inc.html). Of the total 39 reviews mentioned above, all on a scale of 1 to 5 stars, there are 21 1-star reviews, 0 2-star reviews, 1 3-star review, 1 4-star review, and 16 5-star reviews.

62. The following is a sampling of the 1-star reviews of People Choice Real Estate, LLC taken from the sites mentioned in paragraph 61 above:

> (a) review by Chakaraka posted to citysearch.com on April 2, 2008:
> "HORRIBLE EXPERIENCE: These "realtors" are extremely unprofessional. My friend and I were searching for an apartment and working with many many realtors, we finally found the right apartment for us and unfortunately wound up at People's Choice Realty. Things started out normally and once we made our agreement, signed the lease, and payed our money to them they became extremely unprofessional, hard to locate, hard to communicate with, and behaved very rudely. They screamed at us on the phone after we called them to explain that our keys were no where in sight and we could not get into our apartment. The main realtor we dealt with sent me text messages explaining how he was attracted to me and asking me if I wanted to go out, after many friendly responses I finally said I wasn't interested and extremely disrespectful, rude treatment ensued. I can't explain how thoroughly shocked I am that this kind of business exists

and how realtors such as the ones we dealt are employed."

(b) review by Brian posted to Google Users website on October 14, 2008:
"Totally Crooked Don't go near Nathan Dan or Mickey Bad business Theives Liars Crooks BAD If they say they are representing the owner, ask who it is, ask as many questions ask if they are a broker, don't sign anything. Ugh I had the awfullest experience of my life."

(c) review by Aaron M. posted to yelp.com on March 30, 2009:
"Avoid this organization. They appeared to be friendly and helpful until I signed a lease. Afterwards, everything changed. I signed a lease on December 4, 2008 for a nearly-finished new construction apartment. The broker (Dan) encouraged me to sign the lease starting December 15, even though the space wasn't ready yet. I agreed to January 1, 2009. When I came back to New York to move in on January 2, I discovered that the apartment had no running water, no gas and no heat. It was completely uninhabitable. People's Choice, who held itself out as the landlord's representative (I hadn't even been given the landlord's first name, phone number or address), could not explain why they hadn't called to warn me of this ahead of my arrival. Over the following weeks, I discovered that the building had no certificate of occupancy. This, despite the fact that Peoples Choice had assured me on multiple occasions that "Of course the building has a C of O! Who do you think we are? We're not like those shady brokers at other places." Because I had just arrived in the city and now had nowhere to live, Peoples Choice told me to put myself up in a hotel, and that the landlord would reimburse me for all costs. I was apprehensive - how could I be sure I would be reimbursed? Peoples Choice promised that if the landlord didn't repay me, they would pay me back themselves - they went even said that they would be required by law to reimburse me for the expenses I'd incur. I never received any reimbursement from either the landlord or People's Choice. (However, the landlord later defaulted on his mortgage, a bank foreclosed on the property, and - luckily for me - the bank reimbursed me for all my expenses.) Perhaps others will have better experiences with Peoples Choice. But I really wish I'd seen a negative review of Peoples Choice before I signed a lease with them!"

updated by Aaron M. on yelp.com on April 3, 2009:
"Moments ago, I received a phone call from Mickey, a manager at Peoples Choice. Mickey told me that if I did not remove the negative review I had written within the next week, he would hire a lawyer and sue me for slander. He framed this as "trying to end things on a positive note." Unfortunately for his case, truth is an absolute defense to slander."

14

(d) review by Someones Mother posted to citysearch.com on May 27, 2010:

"Total Ripoffs! The comment from Awesome Neighbor spells it out for me completely. My daughter is the person on the other end of Awesome Neighbor's fortune. She was the one who had her deposit cashed and then on the very day she was scheduled to pick up the keys, she found out the apartment had been rented to someone else!! Richard offered to show her another smaller apartment for the SAME amount of money. What choice did she have at this point?!! She had to move that weekend or she would end up homeless.... This company should not be allowed to be in business. Pros: none. Cons: They cash deposits and then rent apartments to someone else."

(e) review posted anonymously to Google Users website on July 9, 2010:

"A complete nightmare... Signed a lease with Josh and Nathan for the 1st of this month. It was a beautiful place, and they had been very helpful when it came to finding it and getting us a fair price. Everything seemed great until the day came for us to move in - and the place was still under construction. Josh assured us that we could stay in another apartment, get our stuff moved for free when the construction was done, and then be reimbursed for a week's rent. The actual owner of the building, however, said that he could promise nothing of the sort and that the realtors knew the WHOLE TIME the apartment wouldn't be finished by the first. Now my roommate and I have to scramble to find a new place, after we spent weeks narrowing it down to this one. My experience may me atypical, but I doubt it considering we witnessed not one but THREE angry customers arrive at the People's Choice offices during our lease signing. A Yelp member's claim that he was harassed by their management because of a poor review (as well as the many inexplicable 5-star ratings on this and other sites) shows me that they are Internet savvy and probably plant positive reviews around the web. Hopefully I can do my part and stop at least one person from having to go through what I (and coutless others) have. DON'T believe the positive reviews - AVOID AT ALL COSTS!"

63. The following is a sampling of the 5-star reviews of People Choice Real Estate, LLC taken from the sites mentioned in paragraph 61 above:

(a) review posted by Veronica S. to yelp.com on August 20, 2008:

"I can't believe what iv'e been reading.Those people who wrote these reviews are crazy.This is the best company I dealt with they are very friendly and professional.They do not charge any fee the only fee they charge is a credit check which is $50 and thats the companies policy but other than that they are great people.I recommend this company 100%."

(b) review posted by ussrbear55 to citysearch.com on May 26, 2009:

"I just moved to U.S. and was in big need of a good apartment. People choice very helpful. I like apartment they secure for me. Very professional and clean cut operation. Pros: Professional Cons: No Con"

(c) review posted by acbutterbell to citysearch.com on November 12, 2009:

"I recently worked with an agent of theirs named Josh and he pulled off the impossible in my favor. He showed me an apartment which I really wanted and it looked like I was going to get it but it turned out there was another deposit on it. I was very disappointed and thought I would have to start my search all over again until he worked his magic. He was able to speak with the owner and got me the apartment despite the other deposit and even took a hit on his cut of the deal from the owner. I was so happy that he was able to make this happen but felt bad that he had to take a hit on his cut. Thank You soooo much Josh. xoxoxo :) Pros: Very Very Professional, Excellent Negotiators. Cons: Not One!"

(d) review posted by anniegirlb to citysearch.com on February 16, 2010:

"This company helped me find a really great apartment at a really good price. I was working with this guy Nathan and he worked miracles for me. The management company for the building I was interested in was a bit tough to work with but Nathan was there every step of the way. He fought hard for me to get an even better price then advertised and even convinced them to build an extra room for me since I work from home. Now that's what I call an awesome agent. Thanks again Nathan! Pros: Very Good Negotiators. Cons: None come to my mind

(e) review posted anonymously to Google Users website on August 11, 2010:

Awesome agents that work great!!! I started looking for an apartment about three weeks ago, Could not find anything that work. I saw a ad on craigslist and called Dan, He found me a awesome apartment in Williamsburg. The whole experience was easy and I was happy. I really was happy, Thanks Peoples Choice. So Happy! Thanks Dan!!!

64. Between March 15 and March 30, 2010, Plaintiffs Jon Sasmor, Lisa Lin, Willie Osterweil, and Kurt Fletcher each responded to advertisements on craigslist.org advertising rooms for rent. Each of the above Plaintiffs called the phone number listed in the ads, which was either (646) 229-9213 or (347) 761-8376. Those numbers respectively belong to Defendants Nathan Smith and Josh Bosch of Defendant People Choice Real Estate LLC. Defendants Nathan Smith, Josh Bosch, and Joe Doe from People Choice Real Estate LLC made arrangements with each of the Plaintiffs mentioned above to collect rent, security deposits, and credit check fees in exchange for rooms at 287 Franklin Avenue.

16

65. On various dates between March 20 and April 20, 2010, Plaintiffs Jon Sasmor, Lisa Lin, Vilija Skubutyte, and Kurt Fletcher signed separate copies of a "Standard Form of Apartment Lease" between Henry Management llc as Owner and Anthony Steele, Vilija Skubutyte, Kurt Fletcher, Alex Rosenbaum, William Osterweil, Jon Sasmor, Etjan Naro, Brian Dudjak as Tenant for "all floors entire apartment" of 287 Franklin Avenue. When Plaintiffs Sasmor and Lin discussed the lease with Defendant Nathan Smith at the office of Defendant People Choice Real Estate, LLC on or around April 17, 2010, Nathan Smith told Sasmor and Lin that the lease was arranged to include all tenants of the separately rented rooms on one lease for legal reasons. Sasmor and Lin agreed with Nathan Smith to cross out some provisions and make some changes, and Sasmor and Lin signed the lease. Sasmor and Lin also received a Rider to Lease from "Peoples Choice Real Estate, L.L.C." stating that Sasmor and Lin were responsible only for $400 per month in rent for Apt 4F. Sasmor and Lin signed the Rider, as did Smith on behalf of "Peoples Choice Real Estate, L.L.C." Skubutyte and Fletcher each signed different copies of the Lease at different times. Although Sasmor and Lin requested return copies of the lease on several occasions in April 2010 from both Smith and Goldberger, neither Sasmor, Lin, Skubutyte, nor Fletcher received return copies of the lease they had signed with an owner's signature. Furthermore, although Plaintiff Willie Osterweil and tenant Alex Rosenbaum requested a lease to sign on at least three occasions after moving into 287 Franklin Avenue, and Smith, Bosch, and Goldberger each promised them a lease, Osterweil and Rosenbaum never received the lease they had been promised. After the electricity was turned off at 287 Franklin Avenue around April 20, 2010, Con Edison required a lease for a tenant to open a new account to restore electricity. At that time Goldberger provided Defendant Brian Dudjak with a blank Standard Form of Lease, absent any cross-outs, amendments, or tenant signatures, signed only by Goldberger as "Henry" on the line marked "Owner's Signature."

66. Defendant Brian Dudjak already resided at 287 Franklin Avenue when Plaintiffs moved into their rooms on April 1, 2010 or shortly thereafter. Dudjak rented both rooms on the third floor. Between around April 15 and around July 7, 2010, Dudjak operated one and sometimes both of his rooms as an illegal hostel. On one occasion, he even rented out the sofa in the public area on the first floor that all the tenants shared. Dudjak advertised on the website airbnb.com and engaged international guests from Canada, Australia, France, Germany, and other countries. Between 30 and 70 guests stayed at 287 Franklin Avenue while Dudjak was operating the hostel. He usually collected $50 per night for the smaller room and $70 per night for the larger room, plus booking fees. He split the proceeds with Defendant Isaac Teitelbaum. Teitelbaum met with Dudjak several times a week during April 2010 and thereafter, and arranged for Dudjak to begin operating hostels on several other properties, including 1082 Pacific Street, Brooklyn, NY 11238, a property on Broadway in Brooklyn, NY, and a property on

17

Myrtle Avenue in Brooklyn, NY.

67. Starting in May 2010, Defendant Chaim Goldberger, using the name "Henry," came around to 287 Franklin Avenue every month to collect the rent on an unannounced date between the beginning of the month and the middle of the month. Each month, Goldberger would arrive unannounced in the evening between 7:00 and 9:00 p.m., let himself in, and walk up the stairs to knock on every tenant's bedroom door and demand the rent. Goldberger requested rent in cash. In May 2010, when Plaintiff Vilija Skubutyte once asked for a receipt, Goldberger placed a squiggle on a receipt that Skubutyte wrote in her notebook. When tenants paid rent by check, they were instructed to make out the checks to Defendant Isaac Teitelbaum, whom Goldberger claimed was the owner of 287 Franklin Avenue. Defendant Nathan Smith from Defendant People Choice Real Estate, LLC instructed Plaintiffs Jon Sasmor and Lisa Lin to make out their April 2010 rent check to "Isaac Titalbaum."

68. On three or four occasions between April and June 2010, Defendant Isaac Teitelbaum visited 287 Franklin Avenue unannounced in the evenings, entered the building, and walked through the shared hallways. Defendant Abraham Schneebalg accompanied Teitelbaum on one or more of those visits. On June 1, 2010, when Plaintiff Jon Sasmor attempted to pay rent to Isaac Teitelbaum on one of these visits, Teitelbaum instructed Sasmor to make the rent check out to "Henry Goldberg."

69. Defendant Chaim Goldberger operates Defendant Henry Management, LLC from an office at 503 Lafayette Avenue, Basement, Brooklyn, NY 11205. The building where Goldberger's office is located, 503 Lafayette Avenue, has an owner of record of Bedford Lafayette LLC. In the New York Department of State's internet corporations database, Defendant Henry Management, LLC is registered at 320 Roebling St., Ste. 518, Brooklyn, New York 11211. Kosciuszko Equities LLC and Lafayette Residence LLC also are registered with the Department of State at 320 Roebling Street #518, Brooklyn, New York 11211. Bedford Lafayette LLC is registered at 174 Broadway #518, Brooklyn, New York 11211.

70. When Plaintiff Jon Sasmor attempted to visit 320 Roebling Street #518 and 174 Broadway #518 in June 2010, though he did not go inside the buildings, he observed from the sidewalk that 320 Roebling Street is a small three-story row building with two doorbells and a storefront, while 174 Broadway is a small apartment building with around six doorbells and a bar/lounge on the ground floor. Between 2003 and 2011, at least 5 entities, including Bedford Lafayette LLC, 205 Spencer St. LLC, 515 Lafayette LLC, Lafayette Residence LLC, and Kosciuszko Equities LLC, have filed at least 82 documents with the City Register using the addresses 320 Roebling Street #518, Brooklyn, NY 11211 and 174 Broadway #518, Brooklyn, NY 11211, including several documents in which these addresses

18

are described as an office or residence. These 82 documents have included deeds, mortgages, assignments of leases and rents, and agreements related to at least 8 properties including 501 Lafayette Avenue, Brooklyn, NY 11205, 503 Lafayette Avenue, Brooklyn, NY 11205, 515 Lafayette Avenue, Brooklyn, NY 11205, 556 Lafayette Avenue, Brooklyn, NY 11216, 205 Spencer Street, Brooklyn, NY 11205, 237 Marcus Garvey Boulevard, Brooklyn, NY 11221, 486 Kosciuszko Street, Brooklyn, NY 11221, and 156 Pulaski Street, Brooklyn, NY 11206. According to a spreadsheet entitled "Foil Corps on 320 Roebling Brooklyn.xlsx" sent by the New York Department of State in response to a Freedom of Information Law request submitted in February 2011 by Plaintiff Jon Sasmor, 360 named corporate entities are registered in the current Department of State database to receive biennial mailings at various suite or apartment numbers at 320 Roebling Street. It is unknown to Plaintiffs how many of those 360 corporate entities are operated by Defendants.

71. Mayer Kohn and Defendant Chaim Goldberger acquired 223 Skillman Street, Brooklyn, NY 11205 on February 18, 2003. On May 12, 2003, 223 Skillman Street was transferred from Kohn and Goldberger to Kohn alone. According to the City Register's ACRIS database, Mayer Kohn has filed at least 3 documents personally using the address 320 Roebling Street, #518, Brooklyn, NY 11211, including a Power of Attorney for 156 Pulaski Street on October 11, 2005, a mortgage for 205 Spencer Street and 515 Lafayette Avenue on February 21, 2008, and a deed for 515 Lafayette Avenue on May 8, 2008. In a 2009 lawsuit regarding 175 Tompkins Avenue, Brooklyn, NY 11206, captioned Victor Cortes v. Henry Management LLC, bearing Index # 16419/2008 at the Supreme Court of the State of New York, County of Kings, documents listed in the docket associated both Mayer Kohn and Defendant Chaim Goldberger with Defendant Henry Management, LLC.

72. 1399 Pacific Street, Brooklyn, NY 11216 was transferred from Max Star to B N H Properties Inc. on February 25, 2008, from B N H Properties Inc to Joel Teitelbaum on December 18, 2009, and from Joel Teitelbaum to Joel Teitelbaum Inc. on December 30, 2010. According to the New York Department of State corporation database, Joel Teitelbaum Inc. is the current entity name of BNH Properties Inc. Joel Teitelbaum was the intermediate owner of 1399 Pacific Street between B N H Properties Inc. (sic) and Joel Teitelbaum Inc., which are the same entity. As of Fiscal Year 2008, over $50,000 of Department of Housing Preservation and Development ("HPD") emergency repairs were unpaid, at which time the property was placed into HPD's Alternative Enforcement Program for the 200 worst kept properties in the city. At that time, Defendant Henry Management, LLC was listed by the HPD as the registered owner of 1399 Pacific Street (see http://www.nyc.gov/html/hpd/downloads/pdf/AEP-city-council-report-round1.pdf). According to the HPD website (http://www.nyc.gov/html/hpd/html/home/home.shtml) as accessed on February 23, 2011, the most recent HPD multiple dwelling registration for 1399 Pacific Street was filed on February 6, 2009, and listed the Owner as Head Officer

Henry Goldberger at 320 Roebling Street, Apt 518, Brooklyn, NY 11211, Corporation BNH Properties at 320 Roebling Street, Apt 518, Brooklyn, NY 11211, Managing Agent Henry Management LLC, Henry Goldberger at 320 Roebling Street, Apt 518, Brooklyn, NY 11211, and Emergency Contact Henry Goldberger.

73. On June 2, 2010, Plaintiffs Jon Sasmor and Lisa Lin consulted with an attorney about the arrangement of 287 Franklin Avenue into SRO rooming units, about the illegal hostel operated by Dudjak on the third floor, and about Defendants Isaac Teitelbaum and "Henry Goldberg" collecting rent while Defendant Ronald Henry Land Trust was the record owner of the house. Sasmor subsequently canceled the June rent check to "Henry Goldberg" and instead escrowed the money in his bank account pending evidence about the true ownership of the house and the legality of the housing. Over the subsequent weeks in June and July 2010, Sasmor and Lin spoke with the other tenants about the legality and ownership of the housing.

74. On June 25, 2010, Plaintiffs Jon Sasmor, Kurt Fletcher, Lisa Lin, and Willie Osterweil, and additional tenant Amanda Diaz signed and mailed a letter to Defendants Chaim Goldberger and Isaac Teitelbaum stating their intention to withhold rent and demanding that Dudjak move out and remove his illegal hostel from the premises. On or around July 7, 2010, Teitelbaum and Dudjak ceased to operate the illegal hostel, and on or around July 22, 2010, Dudjak moved out of 287 Franklin Avenue.

75. In early July 2010, Defendants Josh Bosch and Nathan Smith from Defendant People Choice Real Estate, LLC advertised a room from 287 Franklin Avenue on craigslist.org and began showing one of Defendant Brian Dudjak's rooms on behalf of Defendant Chaim Goldberger and/or Defendant Isaac Teitelbaum and/or Defendant Henry Management, LLC. When Plaintiff Jon Sasmor told Defendant Nathan Smith and the potential tenant looking at the room about Dudjak's illegal hostel, alcoholism, cursing fits, and verbal abuse of other tenants, Smith agreed not to show the room again until after Dudjak moved out.

76. On July 24, 2010, the 287 Franklin Avenue Residents' Association was formed by written agreement to benefit the residents of 287 Franklin Avenue. On or around July 24, 2010, Plaintiff Jon Sasmor verbally asked Defendant Goldberger for proof of ownership of 287 Franklin Avenue, and restated the same request on voice messages to Defendants Goldberger and Isaac Teitelbaum. Sasmor also asked Goldberger and Teitelbaum to stay away from 287 Franklin Avenue until after they provided proof of ownership and Sasmor showed the proof of ownership to an attorney. In response to Sasmor's verbal request, Goldberger demanded rent and refused to provide any documentation. On or around July 24, 2010, Sasmor on behalf of the 287 Franklin Avenue Residents' Association changed the locks

20

on the front doors of 287 Franklin Avenue and notified Goldberger and Teitelbaum that a key would be given to them as soon as they could prove that they were the owners of the building.

77. On August 5, 2010, at noon, as Plaintiff Jon Sasmor was about to leave 287 Franklin Avenue, he heard a buzzing noise and discovered Defendant Samuel Emmanus drilling into the deadbolt lock on the front door of 287 Franklin Avenue. Sasmor opened the door, stood inside, and asked Defendant Emmanus to stop and go away. While Sasmor was still in the doorway behind the door, and out of view of the sidewalk, Defendant Chaim Goldberger called out to Emmanus from the sidewalk, "I thought you said no one was home." Sasmor called 911 and the police responded quickly. Goldberger told the police that he was the managing agent, and that he needed access to 287 Franklin Avenue so that Defendant "Guru" could move in. "Guru" and Emmanus both arrived in a white work van marked Three B's Construction, 1580 Prospect Pl Bklyn, 347.517.5343. Guru showed the police a driver's license stating his name as Peter Henry. Goldberger showed the police a driver's license stating his name and address as Chaim Goldberger, 198 Middleton Street, Brooklyn, NY 11206. Goldberger showed the police 3 documents. The first document was a copy of the deed conveying 287 Franklin Avenue to Defendant Ronald Henry Land Trust. The second document was a lease for two rooms in 287 Franklin to Peter Henry as tenant from Ronald Henry Land Trust as owner, starting March 31, 2010. Peter Henry claimed he had been paying $1000 a month to Goldberger for 4 months already but had been out of the country and was just now planning to move into 287 Franklin Avenue. The third document that Goldberger showed the police was a written Agreement to Establish the Ronald Henry Land Trust, dated May 12, 2009. Police Officer Villanueva allowed Plaintiff Sasmor to look at the Agreement for less than a minute before insisting that he give it back. Sasmor looked at it long enough to see that it was an Agreement of around 32 paragraphs in length between Defendants Ronald Henry, Isaac Teitelbaum, and Abraham Schneebalg. Police Officer Villanueva ordered Sasmor and Goldberger each to provide each other with access to 287 Franklin Avenue. Peter Henry stated his intention to move his furniture into 287 Franklin Avenue on August 9, 2010.

78. On the evening of August 5, 2010, Plaintiffs Jon Sasmor and Lisa Lin located Defendant Ronald Henry and established contact with him. Ronald Henry came to 287 Franklin Avenue on August 6, 2010, and met with Plaintiffs Sasmor, Lin, and Vilija Skubutyte. Ronald Henry told the tenants, and stated in a written affadavit, inter alia, that he had never signed the deed conveying 287 Franklin Avenue to the Ronald Henry Land Trust, that he had no knowledge of the Ronald Henry Land Trust and was not involved in its creation, that he never authorized any agent to administer 287 Franklin Avenue, and that had not met, conferred with, signed documents with, or received anything of value from any of Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Henry Management LLC, and People Choice Realty (sic).

79. On August 6, 2010, Defendant Ronald Henry and Plaintiff Jon Sasmor went to the 79th Police Precinct. Officer Villanueva, the same officer who had come to the house the previous day, was at the desk and spoke with Ronald Henry. Ronald Henry told Officer Villanueva about how the house he owned had been rented out by other people claiming to be the owners. Officer Villanueva provided instructions to Ronald Henry for enrollment in the New York Police Department's anti-trespassing program, and instructed Ronald Henry to change the locks again. Ronald Henry departed in a hurry, but instructed Sasmor to change the locks and get him the key. Sasmor on behalf of Ronald Henry changed the locks. On or around August 12, 2010, Sasmor met with Ronald Henry outside his apartment building at 424 Cathedral Parkway, New York, NY 10025. Sasmor and Ronald Henry found a notary at the Bank of America at West 96 Street and Broadway, New York, NY, and while they were inside the bank, Ronald Henry completed the paperwork to enroll in the Brooklyn District Attorney's Formal Trespass Affadavit Program, and Sasmor handed the key to Ronald Henry, which Ronald Henry placed in his keychain. Sasmor on behalf of the 287 Franklin Avenue Residents' Association gave Ronald Henry an August rent check for $100 from all tenants together, with the nominal $100 paid to establish a tenancy directly under Defendant Ronald Henry because of the atmosphere of fear due to repeated break-in attempts by Defendants Chaim Goldberger, Peter Henry, and Samuel Emmanus.

80. Defendants Chaim Goldberger, Peter Henry, and Samuel Emmanus returned again in a van and minivan around 1:00 a.m. on August 6, 2010, but when Plaintiff Kurt Fletcher awoke, turned on a light, and ran downstairs, Defendants left. Defendants Peter Henry and Samuel Emmanus returned again on August 25, 2010 around 3:00 p.m. and knocked on the front door. When Plaintiff Willie Osterweil answered, Peter Henry claimed he needed to move some tools into the basement. Peter Henry stepped inside and shouted insults at Plaintiffs Osterweil and Sasmor for several minutes before leaving.

81. Plaintiffs Jon Sasmor, Lisa Lin, and Kurt Fletcher called the police around 6 times between June 2010 and August 2010 in reaction to Defendant Brian Dudjak's behavior and Defendants Chaim Goldberger, Peter Henry, and Samuel Emmanus's attempts to break in. Between July 2010 and January 2011, Plaintiffs Jon Sasmor, Lisa Lin, Willie Osterweil, Kurt Fletcher, and Vilija Skubutyte received at least 40 phone calls from Defendants Chaim Goldberger and Isaac Teitelbaum, usually in waves where all the tenants would receive multiple phone calls in one day or night. Sasmor, Lin, Osterweil, Fletcher, and Skubutyte did not answer these calls. Teitelbaum did not leave any messages. Goldberger left Sasmor and Osterweil messages asking them to call him, and then called again up to 3 more times the same day after leaving those messages. Goldberger also left Skubutyte a message asking her if she had moved out of 287 Franklin Avenue and whether she would give him her keys. Sasmor also received a phone call and voice message from Defendant Chaim Meisels, and has

22

exchanged at least 15 emails or text messages from Defendant Ronald Henry regarding Ronald Henry's requests to collect rent from 287 Franklin Avenue and Ronald Henry's inquiries about whether Sasmor still resides there.

82.  In August 2010, Plaintiffs Willie Osterweil, Kurt Fletcher, Vilija Skubutye, and Lisa Lin searched internet listings for alternate housing due to fear about their safety at 287 Franklin Avenue. After August 2010, all individual tenants at 287 Franklin Avenue decided to escrow the rent for their rooms monthly, and the 287 Franklin Avenue Residents' Association decided to escrow $100 monthly, in consideration of the dispute between multiple factions claiming to own and manage the building, including Defendants Ronald Henry, Chaim Goldberger, Isaac Teitelbaum, Henry Management, LLC, Abraham Schneebalg, Ronald Henry Land Trust, Nathan Smith, Josh Bosch, and People Choice Real Estate, LLC.

83.  In November 2010, Defendants Chaim Goldberger and Henry Management, LLC arranged with the Law Offices of Stuart I. Jacobs to file a nonpayment eviction case against some tenants of 287 Franklin Avenue. On or around November 11, 2010, the Law Offices of Stuart I. Jacobs filed L.&T. No. 100576/10 at the Civil Court of the City of New York, County of Kings, Housing Part, captioned Ronald Henry Land Trust v. Jon Sasmor & Kurt Fletcher & Lisa Lin & Willie Osterweil & Amanta Diqz. The nonpayment case claimed $15,550 in rent arrears owed for all 9 SRO rooming units at 287 Franklin Avenue, even though the named respondents occupied only 4 of the 9 units. The Respondents in that case, all but one of whom are Plaintiffs in this case, found out about the eviction case by a single Petition and Notice of Petition sent by regular U.S. Mail addressed to all five Respondents, which was received on November 17, 2010, the day before an answer was required. Sasmor discovered when looking at the Housing Part records on or around January 14, 2011 that Curtis Duncan, a process server, had submitted an Affidavit of Service stating that he had twice attempted personal service on all Respondents, posted a copy of the Petition and Notice of Petition on the entrance door for each Respondent, and sent each Respondent additional copies by both certified and regular mail. Sasmor, Lin, and Osterweil currently have complaints pending with the New York City Department of Consumer Affairs regarding Curtis Duncan's conduct as process server in relation to the aforementioned facts.

84.  When Plaintiffs Jon Sasmor, Lisa Lin, and Willie Osterweil and tenant Amanda Diaz went to the Housing Part of the Civil Court of City of New York, County of Kings on December 1, 2010, in a meeting with opposing counsel Stuart I. Jacobs and the court attorney in Part E, the tenants alleged that 287 Franklin Avenue was illegally converted into an unregistered multiple dwelling and that accordingly, no rent legally was owed. When the court attorney asked Mr. Jacobs about his client's

23

view, Mr. Jacobs said he would call in his client. Later that morning, Defendant Chaim Goldberger showed up at the court on behalf of Defendant Ronald Henry Land Trust. When the court attorney asked Goldberger whether there were multiple apartments in 287 Franklin Avenue, Goldberger replied, "One family, two family, six family, who cares? If it's illegal housing, then throw them out!" At the court attorney's recommendation, Judge Marcia J. Sikowitz ordered an inspection by HPD to determine if the building was an illegal multiple dwelling. As a result of the HPD's findings from its inspection on December 18, 2010, the HPD issued 8 class "B" violations, including five for occupied illegal rooming units and one for illegal conversion to a multiple dwelling. The HPD submitted a written statement to Judge Sikowitz confirming that 287 Franklin Avenue was an illegal multiple dwelling. On January 7, 2011, Judge Sikowitz reviewed the HPD's report and instructed Sasmor, Lin, Osterweil, and Diaz not to pay any more rent. Also on January 7, 2011, Judge Sikowitz ordered that the nonpayment case be removed from the calendar and deemed dismissed if not restored within 45 days, that is, as of February 21, 2011. The case was not restored to the calendar as of February 23, 2011.

85. On December 13, 2010, as Plaintiff Jon Sasmor was arriving back at 287 Franklin Avenue around 1:05 p.m., he saw a man emerging from a large pickup truck who was just about to enter the curtilage of 287 Franklin Avenue. The man introduced himself as Louis Garcia from Kings County Realty Corp. and said that he had been sent by "the bank" to look at the condition of 287 Franklin Avenue. When Sasmor asked him which bank, Garcia said that he been given a printout with the mortgage number, and had been given two contacts for 287 Franklin Avenue, which were Defendant Chaim Meisels and Defendant Joel Kaufman. When Sasmor again asked which bank Garcia was working for, Garcia called "Joel," who said that the job was for OneWest Bank. Garcia mentioned that he had visited 287 Franklin Avenue the previous January, as described above in paragraph 56, and had spoken with Maria Hernandez, the tenant at the time. She lived with many foster children and didn't have any heat. Garcia also claimed that an eviction case was pending against Hernandez at the time, and that he was able to help her find another home. Sasmor expressed concern that absent proof that Garcia was actually working for the bank, Sasmor would have no way of knowing that Garcia was not at the property to break in. Garcia removed from his pocket a set of locksmith's tools and said that he was just there to knock on the door because there were tenants living in the building, but that if the house were vacant, he would have broken in. Garcia still refused to present any evidence about his affiliation with the bank. Sasmor denied him access to 287 Franklin Avenue. Garcia shouted for a few minutes about Sasmor's bad manners and about the inferiority of Sasmor's hospitality to Maria Hernandez's hospitality, made a call on his cell phone, and then drove away.

86. On December 16, 2010, around 2:00 p.m., Garcia returned, and knocked on the door of 287 Franklin Avenue. No one answered. At 2:03 p.m., Plaintiff Jon Sasmor received a call from (646) 872-

24

5600, which he did not answer. He immediately identified the number from the internet (http://www.brooklynbusinesslist.com/business/1344341.htm) as belonging to Defendant Kings County Realty Corp. At that moment, Sasmor looked out his window and observed Defendant Louis Garcia sitting in the driver's seat of his pickup truck parked outside, talking on his cell phone. At 2:11 p.m., Defendant Joel Kaufman from Defendant Kings County Realty Corp. called Sasmor's cell phone from (917) 676-4773, and left a voice message stating: "Hi Jonathan, Joel with Kings County Realty. We've been hired to do an inspection at your apartment. We've been hired by the bank. Please call me back when we can gain access. Call me at (917) 676-4773, (917) 676-4773."

87. On December 13, 2010, Sasmor found internet listings indicating that Defendants Joel Kaufman and Louis Garcia both worked for Defendant Kings County Realty Corp. When Sasmor called OneWest Bank on December 17, 2010 at 11:35 a.m., Aaron told him that OneWest could not verify whether Mr. Garcia was working for OneWest and could not provide that information except to the borrower on the mortgage. When Sasmor checked the computer records at the Civil Court of the City of New York, County of Kings, Housing Part, on or around December 23, he could find no record of any eviction case against Maria Hernandez, nor any prior eviction case filed by Defendant Ronald Henry or Defendant Ronald Henry Land Trust, nor any eviction case related to 287 Franklin Avenue prior to the case pending at that time against Sasmor, Fletcher, Lin, Osterweil, and Diaz.

88. As described in paragraph 85, Defendant Garcia stated that Defendants Kaufman and Meisels were his contacts for access to 287 Franklin Avenue. Due to Defendant Kaufman's two licenses under Defendants Meisels and Garcia as supervising brokers (paragraph 55) and due to the involvement of all three of Kaufman, Meisels, and Garcia in the "land trust transactions" in 2009 (paragraphs 51 through 54), it is again unclear in paragraphs 85 and 86 which actions were done on behalf of Microsoft Real Estate Inc. and/or Defendants Chaim Meisels, Louis Garcia, Kings County Realty Corp., and/or Joel Kaufman.

89. On March 24, 2011, one day after Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry Land Trust, and Henry Management, LLC served and filed an answer in this case (Docket Item No. 4), those Defendants arranged for seven additional eviction cases to be filed in the Civil Court of the City of New York against tenants and former tenants of 287 Franklin Avenue. Each of the seven cases concerned a single, individual bedroom at 287 Franklin Avenue.

90. All seven cases were served by further "sewer service," whereby process server Yisroel A. Simon made no apparent attempt at personal service, mailed the petitions and notices of petition, and then submitted falsified Affidavits of Service. On June 30, 2011, when Plaintiffs Jon Sasmor and Lisa Lin

obtained a traverse hearing in the eviction case in which they were named respondents, the same process server, Yisroel A. Simon, served Sasmor and Lin, while they were in the waiting room for the traverse hearing, with a petition and notice of petition for a new nearly identical eviction case. Later the same day, Ronald Henry Land Trust discontinued the former case over Sasmor's objections. Accordingly, the process server avoided testifying at a traverse hearing, the results of which would be required by local law to be reported to the New York City Department of Consumer Affairs.

91. Each of the tenants of 287 Franklin Avenue involved in the seven eviction cases made attempts at the Housing Court to consolidate all seven cases, but were told, in different courtrooms, that the request to consolidate needed to be brought as a formal motion, that it required the notice usually required in plenary actions, that it should be brought in the courtroom of the case with the lowest index number of the remaining tenants, that it should be brought in the courtroom of the case with the lowest index number overall, and that the tenants making the motion did not have standing to speak in the case with the lowest index number overall.

92. Defendant Chaim Goldberger submitted affidavits and appeared at several of the hearings on behalf of Ronald Henry Land Trust, purporting to be the managing agent for the trust with respect to 287 Franklin Avenue. The lawyer for Ronald Henry Land Trust in the Housing Court, Stuart I. Jacobs, made multiple affirmations declaring personal knowledge of the facts, but plaintiffs are not sure where or how Mr. Jacobs gained his personal knowledge.

93. Mr. Jacobs and Defendants Goldberger, Henry Management, and/or Ronald Henry Land Trust have attempted to gain access to 287 Franklin Avenue by obtaining default judgments for eviction against former tenants Kurt Fletcher, Amanda Diaz, and Alex Rosenbaum, who no longer live in the county, and by taking advantage of a New York statute that appears on its face to permit warrants of eviction to be executed to "remove all persons" occupying the premises, irrespective of whether the actual tenants have had due process to present defenses (N.Y. Real Prop. Actions and Proceedings § 749(1)).

94. Three judgments against former tenants and two judgments against current tenants are on appeal, while two cases remain undetermined. The current tenants in possession attempted to defend the three cases naming former tenants, but were denied standing to speak. These denials of standing are on appeal. Both of the two current tenants who lost their cases have first languages other than English, and therefore were unable to defend their cases effectively. Plaintiffs believe all the eviction cases are meritless for numerous reasons, including, among others, that under New York law a trust can not sue or own property in the name of the trust, that Ronald Henry Land Trust does not qualify for Housing Court subject matter jurisdiction as "landlord or lessor," that there was sewer service, that the eviction

26

case was retaliatory, and the Ronald Henry Land Trust has unclean hands.

95.  Plaintiffs now believe that Ronald Henry Land Trust is neither a person nor a legally recognized entity.  Therefore, Plaintiffs believe that Ronald Henry Land Trust cannot be a proper party to any action under New York Law.  However, Plaintiffs include Ronald Henry Land Trust as a Defendant here due to its clear involvement with the fraudulent and criminal activities described herein.  If the Court finds that Ronald Henry Land Trust is a proper party and/or a proper RICO person, it should be held liable under RICO and under the NYCPA.

96.  On Sunday night, June 19, 2011, at approximately 11:30 p.m., Defendant Chaim Goldberger was sitting in his vehicle parked immediately outside 287 Franklin Avenue. Mr. Goldberger appeared to flee precipitously as soon as he realized he was observed by a tenant who was returning home.  In consideration of the pendency of this case in U.S. District Court, and in consideration of police responses to Defendant Goldberger's previous break-in attempts (*see* paragraphs 77 and 80), plaintiffs are not aware of any reasonable explanation why Defendant Goldberger was lurking outside 287 Franklin Avenue so late at night.

## B.  Pattern of Racketeering Activity

### Extortion

97.  Defendants committed acts of extortion in violation of 18 U.S.C. § 1951 and New York Penal Code Article 155, as follows.

98.  As described above in paragraph 50, on May 8, 2009, OneWest Bank FSB started a case foreclosing on Ronald Henry's mortgage of 287 Franklin Avenue, Brooklyn, NY 11205.  The next day, on May 9, 2009, Defendant Chaim Meisels visited Defendant Ronald Henry and convinced Ronald Henry that a short sale could solve his problem with the foreclosure.  Three days later, on May 12, 2009, under color of the fear of the foreclosure, in the presence of Meisels and possibly Defendants Isaac Teitelbaum, Abraham Schneebalg, and/or unknown others, Ronald Henry signed a group of papers that Meisels gave him, including a deed, a power of attorney, an authorization for short sale, proof of hardship, and possibly an Agreement to Establish the Ronald Henry Land Trust.  When Plaintiffs Jon Sasmor and Lisa Lin met with Ronald Henry on August 6, 2010, Ronald Henry said that he had signed a deed with Meisels on May 12, 2009, but that it was not the deed on file with the City Register granting 287 Franklin Avenue to the Ronald Henry Land Trust.  Ronald Henry said that Meisels told him the deed he was signing was part of the paperwork to allow Meisels to do a short sale.

27

Ronald Henry also said on August 6, 2010 that the pending foreclosure case regarding 287 Franklin Avenue had preventing him from keeping a credit card, had contributed to his divorce, and had destroyed his credit line.

99. On March 26, 2010, Sasmor and Lin had given $50 cash to Defendant Nathan Smith as payment to Defendant People Choice Real Estate, LLC for a credit check fee, for which they received a receipt. On March 29, 2010, People Choice Real Estate, LLC printed a credit report about Lin's credit. On March 30, 2010, People Choice Real Estate, LLC printed a credit report for Sasmor's credit. On or around April 1, 2010, which was the day Sasmor and Lin moved into 287 Franklin Avenue, Room #4F, Brooklyn, NY 11205, Defendant Nathan Smith gave Sasmor and Lin copies of the credit reports he had printed. The credit reports had been purchased by People Choice Real Estate, LLC from Credit Plus Inc. for $4 each. On April 17, 2010, Plaintiffs Jon Sasmor and Lisa Lin went to the office of Defendant People Choice Real Estate, LLC and met with Defendants Nathan Smith and Josh Bosch to finalize the details of their lease for 287 Franklin Avenue, Room #4F, Brooklyn, NY 11205. At that time, Defendants Nathan Smith and Josh Bosch told Sasmor and Lin that they needed to pay $50 each in credit check fees, for a total of $100, or an additional $50 beyond what they had paid before. Sasmor and Lin mentioned the prior oral agreement with Nathan Smith to allow Sasmor and Lin to pay one $50 credit check fee for both Sasmor and Lin, who were renting a single room. Josh Bosch yelled at Sasmor and Lin for 10 minutes, saying that they had to pay, that they could not have the lease without paying the additional credit check fee, and that they would have to move out of their new home if they did not pay the credit check fee. Sasmor paid the additional $50 using cash, and obtained a receipt.

100. On or around May 2, 2010 at night, Defendant Chaim Goldberger visited 287 Franklin Avenue unannounced to collect rent. He entered the front door, and proceeded up the stairs to knock on the bedroom door of each individual tenant. With Goldberger standing outside of each of their respective bedroom doors, Plaintiffs Jon Sasmor and Lisa Lin gave Goldberger a $400 check made out to Isaac Titalbaum, Plaintiff Willie Osterweil gave Goldberger a $465 check made out to Isaac Teitelbaum, Plaintiff Kurt Fletcher gave Goldberger a $400 check made out to Isaac Teitelbaum, tenant Alex Rosenbaum gave Goldberger a $525 money order made out to Isaac Teitelbaum, and Plaintiff Vilija Skubutyte gave Goldberger a check made out to Isaac Teitelbaum for $500. Sasmor, Lin, Osterweil, Fletcher, and Skubutyte, and Rosenbaum spoke privately with each other about their concern about Goldberger's unannounced intrusion and rent demands, but all agreed that it would be more expensive to try to find housing elsewhere.

101. On or around May 10, 2010, Defendants People Choice Real Estate, Nathan Smith, Josh Bosch, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, and/or Henry Management, LLC decided

to make Anthony Steele relinquish possession of the room in which he was a tenant, 287 Franklin Avenue, Room #4C, Brooklyn, NY 11205. Defendants Nathan Smith, Josh Bosch, Chaim Goldberger, and Isaac Teitelbaum called Steele repeatedly to tell him that he needed to leave. On or around May 12, 2010, Goldberger visited Steele in person unannounced to tell him that he needed to leave. On or around May 12, 2010, Steele complained to Plaintiff Jon Sasmor that he did not feel that he or his property were safe in his room anymore, that the landlords were forcing him out, and that he did not know where he could afford to move. On or around May 14, 2010, Anthony Steele moved out of 287 Franklin Avenue, Room #4C, and Plaintiffs have had no contact with him since.

102. On or around June 10, 2010 at night, Defendant Chaim Goldberger visited 287 Franklin Avenue unannounced to collect rent. He entered the front door, and proceeded up the stairs to knock on the bedroom door of each individual tenant. With Goldberger standing outside of each of their respective bedroom doors, Plaintiff Willie Osterweil gave Goldberger a $525 check made out to Isaac Teitelbaum, Plaintiff Kurt Fletcher gave Goldberger a $300 check made out to Isaac Teitelbaum, and Plaintiff Vilija Skubutyte gave Goldberger a $500 check made out to Isaac Teitelbaum. Osterweil, Fletcher, and Skubutyte, and Rosenbaum spoke with each other and with other tenants afterwards about their heightened concern about Goldberger's unannounced intrusion and rent demands, but still agreed that it would be more expensive to try to find housing elsewhere.

103. On or around June 18, 2010 at night, Defendant Chaim Goldberger visited 287 Franklin Avenue unannounced to collect rent. He entered the front door, and proceeded up the stairs to knock on the bedroom door of tenant Amanda Diaz. Goldberger knocked on Diaz's door, and Diaz did not answer. Goldberger sent Diaz a text message, called her, and knocked on her door repeatedly. Diaz had been sleeping and told Goldberger to go away. On or around June 20, 2010 at night, Defendant Chaim Goldberger visited 287 Franklin Avenue again. He entered the front door, and proceeded up the stairs to knock on the bedroom door of tenant Amanda Diaz. Goldberger also called Diaz's phone which rang inside her bedroom. Meanwhile, Goldberger knocked on Diaz's bedroom door repeatedly. With Goldberger standing outside her bedroom door, tenant Amanda Diaz gave Goldberger $500 in cash. When Plaintiff Jon Sasmor asked Diaz about the incident immediately afterwards and tried to console her, Diaz said she was extremely upset and expressed her desire to find another place to live as soon as she could afford to save up for another security deposit.

104. As described by review (d) in paragraph 62 above, in or around May 2010, Defendant People Choice Real Estate, LLC rented to the daughter of citysearch.com user "Someones Mother" a room which it had already rented to someone else. People Choice Real Estate, LLC subsequently waited until the girl "had to move that weekend or she would end up homeless," and, under those conditions,

collected the same amount of rent for an inferior apartment elsewhere.

**Attempted extortion**

105. Defendants committed acts of attempted extortion in violation of 18 U.S.C. § 1951 and New York Penal Code Articles 110 and 155, as follows.

106. As described by the update to review (c) in parargraph 59 above, on April 3, 2009, Mickey from Defendant People Choice Real Estate, LLC called yelp.com user "Aaron M." to threaten him with a slander lawsuit if he did not remove his internet review about the fraudulent behavior of Defendant People Choice Real Estate, LLC. Aaron M. refused to relinquish his right to share his experiences freely on the internet.

107. On or around June 10, 2010, as Chaim Goldberger was standing outside Plaintiff Jon Sasmor's bedroom door after collecting rent from Plaintiff Kurt Fletcher, Goldberger said to Sasmor: "If you don't pay your rent, I'll wreck your credit." The next day, Sasmor did research on the internet about how to protect oneself from identity theft. Shortly thereafter, Plaintiffs Sasmor and Lin placed initial fraud alerts with the credit reporting agencies Equifax, Experian, and TransUnion because they were afraid of what Goldberger might do with their social security numbers.

108. On June 25, 2010, Plaintiffs Jon Sasmor, Kurt Fletcher, Lisa Lin, and Willie Osterweil, and tenant Amanda Diaz wrote a letter to Defendants Chaim Goldberger and Isaac Teitelbaum demanding that Defendant Brian Dudjak end his illegal hostel on the third floor of 287 Franklin Avenue and move out. Between June 25 and July 2, 2010, Dudjak shouted at Sasmor and Lin on at least three occasions, and once for over half an hour. Dudjak took some of Sasmor and Lin's food, including a bag of potatoes, and threw it out into the yard. Dudjak told Sasmor, "If you have a problem with what I'm doing, you move out. This is my home." Sasmor and Lin called the police around 3 times between June 25 and July 2, 2010 as a result of Dudjak's shouting and threats. On July 2, 2010, Sasmor and Lin each obtained a Temporary Order of Protection against Dudjak from the Family Court of the State of New York, County of Kings. The Orders of Protection for Sasmor and Lin had Docket Nos. O-19873-10 and O-19871-10 respectively.

109. On or around July 10, 2010, around 9:00 p.m., Plaintiffs Jon Sasmor and Lisa Lin were walking on Wythe Avenue near Rodney Street in Brooklyn, NY, over a mile away from their residence at 287 Franklin Avenue. Defendant Chaim Goldberger pulled over his minivan and yelled at Sasmor and Lin who were walking on the sidewalk: "Rent! Rent! Where is the rent?" After they walked away, Sasmor

and Lin expressed their concern to each other that they could not be safe anywhere from Goldberger's harassment.

110. Around July 24, 2010, when Plaintiff Jon Sasmor was talking on the phone with Defendant Josh Bosch from Defendant People Choice Real Estate, LLC, after Sasmor requested evidence of who actually owns 287 Franklin Avenue, Bosch told Sasmor that ownership was not Sasmor's business and that Sasmor should pay rent. Bosch shouted at Sasmor into the phone, "You're in over your head. You don't know who you're dealing with." Bosch then abruptly hung up. Later that day, Sasmor spoke with Plaintiffs Osterweil, Lin, and Fletcher about the conversation with Bosch, and all of them wondered about their safety at home.

111. Around July 25, 2010, Plaintiff Willie Osterweil and tenant Alex Rosenbaum were walking on Franklin Avenue near 287 Franklin Avenue. Defendant Chaim Goldberger pulled over his minivan to talk with them. Goldberger told Osterweil and Rosenbaum that they were stupid and that they owed him rent. When Osterweil and Rosenbaum asked Goldberger for proof of ownership before paying rent, Goldberger replied, "Don't play those games with me." Osterweil replied, "It's not a game, just show us proof of ownership and we can talk about the rent." Then Goldberger said, "That's not the point, you know what we're going to do to you." Osterweil and Rosenbaum asked, "What are you going to do?" Goldberger shouted, "We're going to sue you, take $5,000 from you, and ruin your credit rating."

112. As described above in paragraph 77, on August 5, 2010, Defendants Chaim Goldberger, Peter Henry, and Samuel Emmanus attempted to break into the front door of 287 Franklin Avenue. When Sasmor opened the door and asked Emmanus to stop drilling at the lock, Goldberger called out to Emmanus, "I thought you said no one was home." Emmanus changed the lock on the upper front door of 287 Franklin Avenue. Peter Henry told Sasmor that he was moving into 287 Franklin Avenue and would arrive back on August 9, 2010 with his furniture. Between August 5 and August 9, 2010, Plaintiffs Lisa Lin, Willie Osterweil, Kurt Fletcher, and Vilija Skubutyte examined internet listings for alternate housing, and stated their intention to move out if Peter Henry moved in, even if they needed to pay more than they had been paying or escrowing at 287 Franklin Avenue. Beginning August 5, 2010, Plaintiffs Jon Sasmor, Lisa Lin, Willie Osterweil, and Kurt Fletcher established a rotating coverage schedule ensuring that someone would be at 287 Franklin Avenue at all times in the case of another break-in attempt or another attempt to change the locks on the front door. Beginning August 5, 2010, all the tenants began checking the front door at the slightest noise and frequently woke up in the night to investigate noises.

113. As described in Paragraph 80 above, Defendants Chaim Goldberger, Peter Henry, and Samuel Emmanus returned to 287 Franklin Avenue in a van and minivan around 1:00 a.m. on August 6, 2010, but when Plaintiff Kurt Fletcher awoke, turned on a light, and ran downstairs, Defendants left. Fletcher called the police and called Plaintiffs Sasmor and Lin, and the three together talked with the Police Officers who came to investigate the incident.

114. As described in paragraph 80 above, on or around August 25 at 3:00 p.m., Defendants Samuel Emmanus and Peter Henry returned to 287 Franklin Avenue. When Plaintiff Willie Osterweil opened the front door, Peter Henry entered without being invited in, and claimed he needed to move some of his tools into the basement. Plaintiffs Osterweil, Sasmor, Lin, Fletcher, and Skubutyte spoke with each other about the incident, and expressed their fear that the same people who had tried to break in 3 weeks before were still attempting to gain access, and might try to break in again. Because the locksmith Defendant Samuel Emmanus was again present on August 25, 2010, Plaintiffs believe that Peter Henry and Samuel Emmanus probably would have tried to break in again on August 25 if Osterweil and Sasmor had not been at home.

115. As described in paragraphs 83 and 84 above, on or around November 11, 2010, the Law Offices of Stuart I. Jacobs filed L.&T. No. 100576/10 at the Civil Court of the City of New York, County of Kings, Housing Part, captioned Ronald Henry Land Trust v. Jon Sasmor & Kurt Fletcher & Lisa Lin & Willie Osterweil & Amanta Diqz. The nonpayment case claimed $15,550 in rent arrears owed for all 9 SRO rooming units at 287 Franklin Avenue, even though the named respondents occupied only 4 of the 9 units. The case also made a claim for the eviction of the 5 tenants named as Respondents, who were the same 5 tenants arranged in the same order who previously signed a letter to Defendants Chaim Goldberger and Isaac Teitelbaum demanding that Defendant Brian Dudjak remove from 287 Franklin Avenue the illegal hostel that Dudjak and Teitelbaum were operating. During the pendency of the eviction case, Sasmor, Lin, and Osterweil looked at internet listings of alternate housing, but were concerned about whether they could afford the apartments listed. Sasmor, Lin, Osterweil, and Diaz for 2 months talked about the ongoing possibility that they might be put out onto the street, and about where they could go. On December 1, 2010, Defendant Chaim Goldberger appeared at the conference between Sasmor, Lin, Osterweil, Diaz, Stuart I. Jacobs, and the court attorney. When the court attorney asked Goldberger whether there were multiple apartments in 287 Franklin Avenue, Goldberger replied, "One family, two family, six family, who cares? If it's illegal housing, then throw them out!" Even after the court attorney prepared a request for an inspection of the possible illegal multiple dwelling which would be grounds for dismissing the case, Jacobs asked Sasmor, Lin, Osterweil, and Diaz, "So when are you getting out?" On January 7, 2011, after the HPD had found that 287 Franklin Avenue was an illegal multiple dwelling, Judge Sikowitz reviewed the HPD's report, found that no rent was

32

owed, and instructed Sasmor, Lin, Osterweil, and Diaz not to pay any more rent. Also on January 7, 2011, Judge Sikowitz ordered that the nonpayment case be removed from the calendar and deemed dismissed if not restored within 45 days, that is, as of February 21, 2011. The case was not restored to the calendar as of July 4, 2011.

116. As described in paragraphs 85 through 88 above, on December 13, 2010, Defendant Louis Garcia from Defendant Kings County Realty Corp. attempted to gain access to 287 Franklin Avenue. Garcia returned on December 16, 2010, parked outside, knocked on the front door, called Plaintiff Jon Sasmor, and arranged for Defendant Joel Kaufman to call Sasmor from a different number as another attempt to gain access to 287 Franklin Avenue. Garcia stated a connection to Defendant Chaim Meisels, stated a past experience with getting a tenant to leave 287 Franklin Avenue while an eviction case was pending, knew Sasmor's cell phone number, had a set of tools for breaking into locks, and refused to provide evidence that he actually worked for OneWest Bank, as he claimed. For these reasons, when Plaintiffs Sasmor, Lin, Osterweil, and Skubutyte discussed Garcia's visits and the related phone calls, Plaintiffs believed that Garcia was working with Meisels to try to make them leave 287 Franklin Avenue, either by breaking in or otherwise. At the time of Garcia's visits, Plaintiffs continued to operate a coverage rotation by which one of the remained at 287 Franklin Avenue at all times in case of another attempt to break-in or another attempt to change the locks on the front doors.

117. As described above, Defendants have made numerous attempts to force plaintiffs Jon Sasmor, Lisa Lin, Willie Osterweil, and Vilija Skubutyte to leave through three waves of litigation in the Housing Court, designed to regain access to the building and to plaintiffs' bedrooms and possessions by obtaining warrants against them or against former tenants.

### Conspiracy to extort

118. Defendants committed acts of conspiracy to extort in violation of 18 U.S.C. § 1951 and New York Penal Code Articles 105 and 155, as follows.

119. Between May 8 and May 12, 2009, Defendants Chaim Meisels, Isaac Teitelbaum, and/or Abraham Schneebalg met or spoke with each other, agreed to prepare, and prepared the documents that Defendant Ronald Henry signed in a meeting with Meisels and unknown others on May 12, 2009. One of those documents may have created Defendant Ronald Henry Land Trust, and at the same meeting as that document may have been signed, a deed may have been signed granting 287 Franklin Avenue from Defendant Ronald Henry to Defendant Ronald Henry Land Trust.

33

120. On or around April 17, 2010, Defendants Josh Bosch and Nathan Smith from Defendant People Choice Real Estate, LLC met and agreed to attempt to collect an additional credit check fee from Plaintiffs Jon Sasmor and Lisa Lin, as described in paragraph 99 above.

121. Between March 2010 and June 2010, Defendants Isaac Teitelbaum and Chaim Goldgberger, and possibly additional Defendants People Choice Real Estate, LLC, Nathan Smith, Josh Bosch, Henry Management, LLC, Abraham Schneebalg, Chaim Meisels, and/or Ronald Henry Land Trust, met or spoke with each other and made a written or oral agreement that Goldberger come to 287 Franklin Avenue at unannounced times at night monthly, knock on tenants' bedroom doors, and collect rent from tenants in the form of cash or of checks made out to Teitelbaum, as described in paragraphs 100, 102, and 103 above.

122. On or around May 10, 2010, Defendants People Choice Real Estate, Nathan Smith, Josh Bosch, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, and/or Henry Management, LLC met or spoke with each other and agreed that Nathan Smith, Josh Bosch, Chaim Goldberger, and Isaac Teitelbaum call Anthony Steele repeatedly and that Chaim Goldberger visit him personally on or around May 12, 2010, until such time as Steele relinquished possession of 287 Franklin Avenue, #4C, Brooklyn, NY 11205, as described above in paragraph 101.

123. Due to the change in Defendant Brian Dudjak's behavior after Plaintiffs Jon Sasmor, Lisa Lin, and others sent a letter to Defendant Isaac Teitelbaum on June 25, 2010 demanding that Dudjak move out and that Dudjak and Teitelbaum cease operating their illegal hostel on the third floor of 287 Franklin Avenue, Plaintiffs believe that between June 25 and July 2, 2010, Defendants Brian Dudjak and Isaac Teitelbaum met or spoke with each other and agreed that Dudjak shout at Plaintiffs Jon Sasmor and Lisa Lin, threaten them, and otherwise harass them, so that Sasmor and Lin would move out of 287 Franklin Avenue and permit Dudjak and Teitelbaum to continue operating the illegal hostel on the third floor.

124. On or around August 1, 2010, Defendants Chaim Goldberger, Henry Management, LLC, Isaac Teitelbaum, Abraham Schneebalg, Chaim Meisels, and/or Ronald Henry Land Trust met or spoke with Defendants Peter Henry and/or Samuel Emmanus and agreed that Goldberger, Emmanus, and Peter Henry would go to 287 Franklin Avenue on August 5, 2010 to attempt to break into the front door. Also at that meeting, the aforementioned Defendants agreed that Goldberger construct an artificial lease document for Peter Henry as tenant from Ronald Henry Land Trust as owner effective March 31, 2010, and agreed that Peter Henry and Goldberger sign that document. The artificial lease was formulated and signed as planned before the August 5, 2010 break-in attempt.

34

125. The same Defendants listed above in paragraph 124 further met or spoke with each other and agreed that Goldberger, Emmanus, and Peter Henry return to 287 Franklin Avenue again on August 6, 2011 at 1:00 a.m. to make another attempt to break in.

126. The same Defendants listed above in paragraph 124 further met or spoke with each other and agreed that Emmanus and Peter Henry return to 287 Franklin Avenue again on August 25, 2011 to make another attempt to gain entry and also to move objects inside.

127. On or around November 10, 2011, Defendants Isaac Teitelbaum and Chaim Goldberger, and possibly Defendants Chaim Meisels, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land Trust met or spoke with each other separately and also met or spoke with Stuart I. Jacobs and agreed to file a meritless nonpayment eviction case, L.&T. No. 100576/10 at the Civil Court of the City of New York, County of Kings, Housing Part, captioned Ronald Henry Land Trust v. Jon Sasmor & Kurt Fletcher & Lisa Lin & Willie Osterweil & Amanta Diqz [sic], as described more fully above in paragraphs 83 and 84.

128. Plaintiffs have no specific knowledge of any meeting or conversation between Stuart I. Jacobs and Curtis Duncan. Due to the improper service and the suggestions that Stuart I. Jacobs made to tenants at the court that they would need to move out of 287 Franklin Avenue, even despite the meritlessness of the eviction claim, Plaintiffs believe that on or around November 12, 2010, Stuart I. Jacobs met or spoke with process server Curtis Duncan and deliberately or negligently or recklessly arranged for Plaintiffs Jon Sasmor, Kurt Fletcher, Lisa Lin, and Willie Osterweil, and tenant Amanda Diaz to be served improperly the day before their answer was due.

129. Plaintiffs have no specific knowledge of any meeting between Defendants Louis Garcia, Joel Kaufman, Kings County Realty Corp., Chaim Meisels, and the other Defendants. Because Garcia stated connections to Defendants Chaim Meisels and Joel Kaufman, stated a past experience with getting a tenant to leave 287 Franklin Avenue while an eviction case was pending, knew Sasmor's cell phone number, had a set of tools for breaking into locks, and refused to provide evidence that he actually worked for OneWest Bank, as he claimed, Plaintiffs believe and allege that on or around December 10, 2010, Defendants Chaim Meisels and Chaim Goldberger and/or Isaac Teitelbaum met or spoke with each other and agreed to take action as follows. Shortly thereafter, Meisels met or spoke with Defendants Joel Kaufman and/or Louis Garcia about pretending to be "the bank" and attempting to gain access to 287 Franklin Avenue, or alternatively, that Defendants Meisels, Kaufman, and/or Garcia initiated some contact with OneWest Bank, FSB that resulted in the bank hiring Defendant

Garcia to go to 287 Franklin Avenue. Defendants Joel Kaufman, Louis Garcia, and Kings County Realty Corp. met or spoke with each other and agreed that Garcia would go to 287 Franklin and attempt to gain access on December 13, 2010, as described in paragraph 85 above. Kaufman and Garcia spoke on the phone on December 13, 2010 in Plaintiff Jon Sasmor's presence. Meisels, Kaufman, Garcia, and/or Kings County Realty Corp. met or spoke with each other again and agreed that Garcia would return to 287 Franklin Avenue on December 16, 2010, as described in paragraph 86 above. When Garcia failed to gain access, he called Kaufman and they agreed that Kaufman would try to call Sasmor in another attempt to gain access, and Kaufman did so, as described in paragraph 86 above.

130. In or around March, 2011, Defendants Isaac Teitelbaum and Chaim Goldberger, and possibly Defendants Chaim Meisels, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land Trust met or spoke with each other separately and also met or spoke with Stuart I. Jacobs and agreed to file seven meritless holdover eviction cases, L.&T. Nos. 64297/11, 64298/11, 64299/11, 64300/11, 64301/11, 64302/11, and 64303/11 at the Civil Court of the City of New York, County of Kings, Housing Part, captioned Ronald Henry Land Trust v. [Various Tenants], as described more fully above in paragraph 89.

131. In or around June, 2011, Defendants Isaac Teitelbaum and Chaim Goldberger, and possibly Defendants Chaim Meisels, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land Trust met or spoke with each other separately and also met or spoke with Stuart I. Jacobs and agreed to file another meritless holdover eviction case, L.&T. Nos. 78902/11 at the Civil Court of the City of New York, County of Kings, Housing Part, captioned Ronald Henry Land Trust v. Jon Sasmor & Lisa Lin, and thereby to avoid a traverse hearing, as described more fully above in paragraph 90.

132. On June 30, 2011, at around 11:25 a.m., Stuart I. Jacobs entered the Housing Court trial expediter waiting room and spoke briefly with Plaintiffs Sasmor and Lin. Mr. Jacobs picked up his cell phone as he left the room and began pressing some buttons. Around 11:35 a.m., ten minutes later, Yisroel A. Simon arrived in the waiting room to serve Plaintiffs Sasmor and Lin with yet another eviction case. Plaintiffs note that Stuart I. Jacobs was the attorney and Yisroel A. Simon was the process server in another eviction case involving Defendants Chaim Goldberger and Henry Management, LLC in 2008, Francisco and Nitza Pagan v. Victor Cortes, Index No. L. & T. No. 67631/08 at the Civil Court of the City of New York, County of Kings, Housing Part, about which additional details appear below in paragraph 134. Due to the improper service in the seven 2011 holdover cases and the actions that Stuart I. Jacobs made to avoid a traverse hearing or any other hearing on the merits, and due to Mr.

36

Jacobs repeated statements to tenants that they needed to leave regardless of their defenses or a Court ruling, Plaintiffs believe that in March 2011 and again in June 2011, Stuart I. Jacobs met or spoke with process server Yisroel A. Simon and deliberately or negligently or recklessly arranged for improper service of process in the seven original holdover cases and for the bizarre and possibly improper service of an additional holdover case in the Court waiting room on the day scheduled for the traverse hearing.

### Mail fraud

133.  Defendants committed acts of mail fraud in violation of 18 U.S.C. § 1341, as follows.

134.  Based on the following information, Plaintiffs believe that, between around 1995 and 2010, Defendants Chaim Goldberger and Henry Management, LLC, along with Francisco and Nitza Pagan, operated a fraudulent scheme at 175 Tompkins Avenue, Brooklyn, NY 11206. According to the allegations presented in three lawsuits, (1) Victor Cortes v. Henry Management LLC, Index No. 16419/2008 at the Supreme Court of the State of New York, County of Kings, (2) Victor Cortes v. Francisco and Nitza Pagan, Index No. 16414/2008 at the Supreme Court of the State of New York, County of Kings, and (3) Francisco and Nitza Pagan v. Victor Cortes, Index No. L. & T. No. 67631/08 at the Civil Court of the City of New York, County of Kings, Housing Part, in or around 1995, Defendant Chaim Goldberger acting on behalf of Defendant Henry Management, LLC brokered a sale by which Victor Cortes purchased from Francisco and Nitza Pagan the building in which he resided, 175 Tompkins Avenue, Brooklyn, NY 11206. The sale agreement involved a down payment and 100 subsequent monthly payments, totaling around $150,000. A deed was not properly filed at the time of the sale, and the lawyer responsible for filing the deed died. Over a decade after the sale, once Mr. Cortes had completed paying off the house, Defendant Chaim Goldberger filed an eviction lawsuit against Mr. Cortes. According to his allegations, Mr. Cortes, who was a Vietnam Veteran, did not find out that he was not the record owner of 175 Tompkins Avenue until Goldberger filed the eviction case against him in 2008. Documents included in the dockets of the 3 lawsuits mentioned above, including termination notices and court papers, were sent from Goldberger to Cortes by U.S. Mail in furtherance of Goldberger's fraudulent scheme.

135.  Between May 9, 2009 and the present time, Defendants Chaim Meisels, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry, and Ronald Henry Land Trust operated a fraudulent scheme by which they collected and attempted to collect illegal rent from 287 Franklin Avenue, while the building had neither a valid Certificate of Occupancy nor a valid Multiple Dwelling Registration, as required by

law to collect rent.

136. In February 2010, Defendants Chaim Meisels, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land Trust converted 287 Franklin Avenue from a 2-family house into 9 SRO rooming units. Neither a Work Permit for the conversion nor a Certificate of Occupancy was obtained from the Department of Buildings ("DOB"), and no Multiple Dwelling Registration was filed with the Department of Housing Preservation and Development ("HPD").

137. On or around March 20, 2010 and on numerous occasions thereafter as described herein, Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry, and Ronald Henry Land Trust all asserted conflicting representations that they were the owner or representative of the owner of 287 Franklin Avenue for the purposes of collecting rent. Furthermore, on or around March 20, 2010 and on numerous occasions thereafter as described herein, said Defendants made misrepresentations on craigslist.org and directly to Plaintiffs 287 Franklin Avenue Residents' Association, Jon Sasmor, Lisa Lin, Willie Osterweil, Kurt Fletcher, and Vilija Skubutyte, and to Defendant Brian Dudjak, and to tenants Amanda Diaz, Alex Rosenbaum, Anthony Steele, and Etjan Naro that the available rooming units at 287 Franklin Avenue were safe, legal housing fit for human habitation, and for which said Defendants had a legal right to collect rent. 287 Franklin Avenue Residents' Association, Sasmor, Lin, Osterweil, Fletcher, Skubutyte, Dudjak, Diaz, Rosenbaum, Rosenbaum, Steele, and Naro relied on these misrepresentations, and paid rents to Chaim Goldberger, Isaac Teitelbaum, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, and Ronald Henry as described herein.

138. On December 18, 2010, the HPD inspected 287 Franklin Avenue. As a result of that inspection: (1) the HPD issued to Defendant Ronald Land Trust 8 Class B "Hazardous" violations, including 5 violations for illegal rooming units, and 1 violation for an illegal conversion to a multiple dwelling; (2) the DOB issued to Defendant Ronald Henry Land Trust an Environmental Control Board violation for occupancy contrary to Certificate of Occupancy or Department of Buildings records; and (3) on January 18, 2011, the HPD issued a Partial Vacate Order for the 4 rooming units on the top floor, which the HPD deemed to be "unfit for human habitation" due to the lack of adequate fire egress.

139. On January 7, 2011, following the December 18, 2010 HPD inspection, Judge Marcia Sikowitz found that no rent was owed, and instructed Plaintiffs Jon Sasmor, Lisa Lin, and Willie Osterweil and tenant Amanda Diaz not to pay any more rent for their rooming units at 287 Franklin Avenue.

140. As part of the fraudulent scheme described herein, Defendants Chaim Meisels, Isaac Teitelbaum, Abraham Schneebalg, and Ronald Henry formed or fraudulently invented Defendant Ronald Henry Land Trust on or around May 12, 2009. A deed was filed with the City Register on May 18, 2009 conveying 287 Franklin Avenue from Ronald Henry to the Ronald Henry Land Trust.

141. As a result of the Ronald Henry Land Trust deed, between March 2010 and July 2011, Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry and Ronald Henry Land Trust all asserted conflicting representations that they were the owner or representative of the owner of 287 Franklin Avenue for the purposes of collecting rent.

142. However, between April 1, 2010 and July 4, 2011, none of the Defendants has collected U.S. Mails addressed to Ronald Henry Land Trust, 287 Franklin Avenue, Brooklyn, NY 11205, including the following:

    (a) quarterly water and sewer bills sent to Ronald Henry Land Trust from NYC Department of Environmental Protection

    (b) monthly payment reminder statements sent from Ronald Henry Land Trust from NYC Department of Environmental Protection

    (c) letter sent to Henry Ian Hrust Ronald from NYC Department of Environmental Protection postmarked October 5, 2010

    (d) quarterly property tax statements from NYC Department of Finance

    (e) letter sent to Ronald Henry Land Trust from NYC Department of Buildings Administrative Enforcement Unit on or around January 1, 2011

    (f) letter sent to Ronald Henry Land Trust from NYC Department of Buildings Administrative Enforcement Unit postmarked January 10, 2011

    (g) 8 letters to Owner from NYC Department of Housing Preservation and Development, Division of Code Enforcement / Brooklyn Boro Office postmarked January 4, January 4, January 4, January 4, January 24, January 25, January 26, and January 28, 2011.

    (h) USPS "Sorry We Missed You!" notice, left for R. Henry Land Trust on January 19, 2011 regarding Certified Mail from sender HPD.

    (i) 3 letters sent to Ronald Henry Land Trust from City of New York Environmental Control Board, no postmark dates

    (j) 2 letters sent to Ronald Henry Land Trust from NYC Department of Buildings Administrative Enforcement Unit, no postmark dates

    (k) letter sent to Ronald Henry Land Trust from NYC Department of Housing Preservation and

Development, postmarked June 11, 2011

143.  Since the filing of the Ronald Henry Land Trust deed on May 18, 2009, by using Defendant Ronald Henry Land Trust as an instrument to receive U.S. Mails, including U.S. Mails regarding legal obligations of building owners, and by Defendants collecting rent from 287 Franklin Avenue while declining to accept U.S. Mails regarding legal obligations of building owners, including taxes, emergency repairs, water and sewer bills, fines, violations, and notices, Defendants Chaim Meisels, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry, and Ronald Henry Land Trust have used the U.S. Mails in furtherance of their fraudulent scheme.

144.  Plaintiffs do not have knowledge of particular mailings sent to Sylvia Francis Land Trust regarding 162 Covert Street, but believe that since the filing of the Sylvia Francis Land Trust deed on August 17, 2009, the Defendants, by using Sylvia Francis Land Trust as an instrument to receive U.S. Mails, including U.S. Mails regarding legal obligations of building owners, and by possibly collecting rent from 162 Covert Street while declining to accept U.S. Mails regarding legal obligations of building owners, possibly including taxes, emergency repairs, water and sewer bills, fines, violations, and notices, Microsoft Real Estate Inc., Sylvia Francis Land Trust, and Defendants Chaim Meisels, Joel Kaufman, Louis Garcia, and/or Kings County Realty Corp. have used the U.S. Mails in furtherance of a fraudulent scheme at 162 Covert Street similar to that executed at 287 Franklin Avenue.

145.  On or around March 23, 2010, while he was still living in Missouri before moving to New York, Plaintiff Kurt Fletcher found an ad on craigslist.org for a room for rent.  He called the number in the ad, and spoke with Defendant Nathan Smith from Defendant People Choice Real Estate, LLC.  Smith told Fletcher that he needed send money immediately in order to reserve the room for his arrival in New York City on or around April 3, 2010.  Fletcher used the U.S. Mail to send checks to People Choice Real Estate, LLC for $300 security deposit and $50 credit check fee for 287 Franklin Avenue, Room #4R.

146.  On or around May 16, 2010, when Defendant Chaim Goldberger was at 287 Franklin Avenue, Plaintiff Jon Sasmor and Defendant Brian Dudjak asked Goldberger about a piece of U.S. Mail from Supreme Court of the State of New York, County of Kings, addressed to Ronald Henry, sent on or around May 14, 2010, and labeled NOTICE OF FORECLOSURE PRE-SETTLEMENT CONFERENCE.  Goldberger took the envelope, opened it, looked at it, said he would take care of it, and left the building with said piece of U.S. Mail.  This piece of mail was the first piece of evidence

that alerted Plaintiff Jon Sasmor to Defendants' fraudulent scheme at 287 Franklin Avenue.

147.  On or around November 17, 2011, Defendants Isaac Teitelbaum, Chaim Goldberger, Chaim
Meisels, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land
Trust, and also Stuart I. Jacobs and/or Curtis Duncan caused a single Notice of Petition and Petition to
be sent regarding the nonpayment eviction case L.&T. No. 100576/10 at the Civil Court of the City of
New York, County of Kings, Housing Part.  A single envelope arrived by U.S. Mail at 287 Franklin
Avenue postmarked November 17, 2010, sent from P.O. Box 356038, Briarwood, NY 11435, addressed
to Jon Sasmor & Kurt Fletcher & Lisa Lin & Willie Osterweil & Amanta / (sic).  The Petition
demanded judgment for $15,500 and the eviction of the Respondents in that case who refused to pay
illegal rent.

148.  In addition to the larger fraudulent scheme, Defendants Isaac Teitelbaum, Chaim Goldberger,
Chaim Meisels, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry
Land Trust, and also Stuart I. Jacobs and/or Curtis Duncan operated a fraudulent sub-scheme by which
they attempted to obtain a judgment of eviction and/or a money judgment by improper service which
omitted proper notice of the eviction case.  The single Petition and Notice of Petition referenced in
paragraph 83 arrived at 287 Franklin Avenue on November 18, 2010, just one day before an answer
was required.  The improper service by U.S. Mail furthered both the fraudulent sub-scheme related to
the eviction case and the larger fraudulent scheme at 287 Franklin Avenue.

149.  Plaintiff Jon Sasmor discovered when looking at the Housing Part records on or around January
14, 2011 that Curtis Duncan, a process server, had submitted an Affidavit of Service stating that he had
twice attempted personal service on all Respondents, posted a copy of the Petition and Notice of
Petition on the entrance door for each Respondent, and sent each Respondent additional copies by both
certified and regular mail.  Duncan claimed additional uses of the U.S. Mails which never occurred, the
absence of which furthered both the fraudulent sub-scheme related to the eviction case and the larger
fraudulent scheme at 287 Franklin Avenue.

150.  Defendants Chaim Meisels, Isaac Teitelbaum, Chaim Goldberger, Henry Management, LLC,
Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, and Ronald Henry Land Trust operate an
additional fraudulent scheme, whereby they collect rents in such a way as to facilitate evasion of taxes.
Between March 2010 and July 2010, Defendants Nathan Smith and Josh Bosch from Defendant People
Choice Real Estate, LLC and Defendant Chaim Goldberger from Defendant Henry Management, LLC
collected rents as checks or money orders made out to Isaac Teitelbaum.  On or around March 26,
2010, Nathan Smith instructed Plaintiffs Jon Sasmor and Lisa Lin to issue a $400 rent check to "Isaac

Titalbaum" and to issue a separate $400 security deposit check to "Kings Management." Goldberger asked tenants to pay rent in cash when they could do so. In May 2010, when Plaintiff Vilija Skubutyte asked Goldberger for a receipt, he placed a squiggle on a receipt that Skubutyte wrote in her notebook. On or around June 1, 2010, when Sasmor attempted to pay his rent to Isaac Teitelbaum in person, Teitelbaum instructed Sasmor to make the check out to "Henry Goldberg."

151.  Plaintiffs do not have express knowledge of Defendants' tax returns. Based on Defendant Chaim Goldberger's express preference for cash rent payments, based on the direction of rent checks to different parties, and based on the confusing number of entities operated by the Defendants, the Plaintiffs infer that tax returns of the Defendants would not be true, correct, and complete, and the Plaintiffs therefore allege the same, as follows. Following the collection of rents in cash or as checks made out to others, false names, or pseudonyms, Defendants Chaim Meisels, Isaac Teitelbaum, Chaim Goldberger, Henry Management, LLC, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, and/or Ronald Henry Land Trust filled out annual tax returns in which they did not claim rents collected as income, and used the U.S. Mails and/or the U.S. wires to submit their fraudulent tax returns to the Internal Revenue Service and/or the New York State Department of Taxation and Finance on or around April 15, 2010, and also on or around April 15 of previous years between 2000 and 2010.

152.  The eight 2011 eviction cases have included numerous mailings from Stuart I. Jacobs, Yisroel A. Simon, Landlord & Tenant Services Inc., the Civil Court of the City of New York, and City Marshal Steven Powell to plaintiffs and other tenants and former tenants making representations that Defendant Goldberger is the managing agent for Defendant Ronald Henry Land Trust, that the trust has legal capacity to sue and to own property in its name, that Defendant Isaac Teitelbaum is the trustee of the trust, and that attorney Stuart I. Jacobs has personal knowledge of the facts related to 287 Franklin Avenue. These mailings are all present within the court files of the respective cases. These uses of the mails further the fraudulent scheme by which Defendants Chaim Meisels, Joel Kaufman, Louis Garcia, Kings County Realty Corp., Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry, Henry Management, LLC, Chaim Goldberger, and Ronald Henry Land Trust use a fraudulent "land trust" to operate illegal housing and collect illegal rents without paying any taxes or building owners' obligations, all while concealing their true identities.

153.  In addition to the larger fraudulent scheme, Defendants Isaac Teitelbaum, Chaim Goldberger, Chaim Meisels, Joel Kaufman, Abraham Schneebalg, Henry Management, LLC, Ronald Henry, and/or Ronald Henry Land Trust, and also Stuart I. Jacobs, Landlord & Tenant Services Inc., and/or Yisroel A. Simon operated a fraudulent sub-scheme by which they attempted to obtain judgments of eviction by improper service which omitted proper notice of the eviction cases, so as to replace the existing tenants

42

with new unknowing tenants willing to pay illegal rent. Yisroel A. Simon submitted to the court an affidavit of service alleging personal service to Plaintiff Jon Sasmor at his former room on the top floor at a time when Sasmor was doing volunteer work collecting leftover bagels or else already was downstairs preparing to leave for the volunteer work. In another affidavit, Simon claimed to have served Plaintiff Willie Osterweil personally in his former room, which Osterweil had not been inside at all during several months up to, including, and after the purported time of service. In several other affidavits, Simon claims to have attempted personal service twice each to tenants inside 287 Franklin Avenue, and then posted eviction papers on the entrance doors of their rooms. However, despite Simon's claims to have attempted personal service at interior rooms of 287 Franklin Avenue on six different dates, he never gained access even once to the interior of 287 Franklin Avenue. Simon merely made several mailings to several tenants, resulting in Certified Mail slips left for Jon Sasmor, Lisa Lin, Willie Osterweil, and Amanda Diaz on March 31, 2011 and for Luis Campos, Vilija Skubutyte, Kurt Fletcher, and Alex Rosenbaum on April 8, 2011. Simon also mailed petitions by first class mail to Willie Osterweil and Amanda Diaz from Landlord and Tenant Services, Inc. on or around April 1, 2011. Strangely, Simon or someone else left petitions and notices of petition for Sasmor, Lin, Osterweil, and Diaz in the U.S. mailbox at 287 Franklin Avenue on March 31, 2011, not enclosed in any envelope, not folded, and without any postage affixed. Simon later claimed in affidavits, among his other false statements, that mailings had been made by first class mail to Lin and Diaz on March 30, 2011. These statements of first class mailings may refer to the papers that mysteriously appeared in the mailbox without any appearance of having been sent by mail. The improper service involving U.S. Mail furthered both the fraudulent sub-scheme related to the eviction cases and the larger fraudulent scheme at 287 Franklin Avenue.

154. Yisroel A. Simon, Landlord and Tenant Services Inc., Esther M. Olitsky, and/or Stuart I. Jacobs operate an additional fraudulent scheme whereby they operate an apparently unlicensed process serving agency. When Plaintiff Jon Sasmor checked the website of the New York City Department of Consumer Affairs at http://www.nyc.gov/html/dca/html/licenses/license_check.shtml on June 5, 2011, Yisroel A. Simon had an individual process server license, License # 1161183. However, when Sasmor checked the same website and looked at the list of all 156 registered Process Serving Agencies in the City, Landlord & Tenant Services Inc. was not on that list. Therefore Plaintiffs believe that Landlord & Tenant Services Inc. is not licensed as a Process Serving Agency. As described above, process mailed by Yisroel A. Simon was contained in envelopes with return address "LANDLORD AND TENANT SERVICES, INC., 4809 Avenue N - PMB #283, Brooklyn, New York 11234." The LinkedIn public profile for Yisroel Simon, as accessed on June 5, 2011 at http://www.linkedin.com/pub/yisroel-simon/27/2b4/283, describes Yisroel Simon as "Manager at Landlord & Tenant Services Inc." Based on these facts, Plaintiffs believe that Yisroel A. Simon is operating an unlicensed process serving

agency. This failure to obtain the correct license could be significant because, under § 20-406.1 of the New York City Administrative Code, an individual process server needs to post a $10,000 surety bond, while a process serving agency needs to post a $100,000 surety bond. The mailings involving Landlord & Tenant Services Inc. advance yet another fraudulent scheme, by which Defendants and their associates conduct "sewer service" using an unlicensed process serving agency.

### Wire fraud

155. Defendants committed acts of wire fraud in violation of 18 U.S.C. § 1343, as follows.

156. Defendants Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry Land Trust, Chaim Goldberger, Henry Management, LLC, Nathan Smith, Josh Bosch, Joe Doe and/or People Choice Real Estate, LLC posted internet ads to craigslist.org in March 2010 for 9 rooming units in 287 Franklin Avenue, in furtherance of the fraudulent scheme described above in paragraphs 135 through 154. Defendants additionally used the U.S. Wires in furtherance of the same fraudulent scheme as follows.

157. On or around March 23, 2010, Plaintiff Kurt Fletcher contacted Defendants Nathan Smith, Josh Bosch, and People Choice Real Estate, LLC in New York by telephone from Missouri after seeing an internet ad for a room at 287 Franklin Avenue. As a result of this internet and telephone contact between Missouri and New York, Fletcher sent a $300 security deposit and $50 credit check fee for 287 Franklin Av to Defendant People Choice Real Estate, LLC.

158. On or around March 25, 2010, Plaintiff Vilija Skubutyte contacted Defendants Nathan Smith, Josh Bosch, and People Choice Real Estate, LLC in New York by telephone from New Jersey after seeing an internet ad for a room at 287 Franklin Avenue. As a result of this internet and telephone contact between New Jersey and New York, Skubutyte came to New York to look at the room and gave a $500 security deposit to Defendant People Choice Real Estate, LLC.

159. Defendants People Choice Real Estate, LLC, Nathan Smith, Josh Bosch, and/or Joe Doe continue to use the internet to operate a fraudulent scheme where they rent illegal rooming units using craigslist.org, whereby they make misrepresentations on craigslist.org that safe, legal rooms are available, which are fit for human habitation, and for which they have a legal right to collect rent. As of February 17, 2011, a google search for "craigslist 646-229-9213" reveals multiple current craigslist ads for single room rentals posted by Defendant Nathan Smith from Defendant People Choice Real Estate, LLC, including properties at Hancock 1331, 440 Lafayette Avenue, Bushwick @ Vanderveer, Halsey @ Irving, Troutman @ Central, Troutman @ Evergreen, and Harman @ Wyckoff. According

to the Department of Buildings website as accessed on February 23, 2011, 440 Lafayette Avenue, Brooklyn, NY 11205 does not have a Certificate of Occupancy permitting Single Room Occupancy. According to the Department of Housing Preservation and Development website accessed on February 23, 2011, 440 Lafayette Avenue is registered as a 2-family house. According to both the DOB and the HPD, the address 1331 Hancock does not exist in Brooklyn, NY.

160. Defendants Brian Dudjak and Isaac Teitelbaum, and also possibly Defendant Chaim Meisels, operate a fraudulent scheme by which they rent out unsafe, unregistered spaces as hostels. Said Defendants use the internet to make misrepresentations that safe, legal accommodations are available for international visitors, which are fit for human habitation, and for which hostel fees and booking fees may legally be collected. Between April 15 and July 7, 2010, Dudjak operated one and sometimes both of his rooms at 287 Franklin Avenue as an illegal hostel. Dudjak advertised on the website airbnb.com and engaged international guests from Canada, Australia, France, Germany, and other countries. 287 Franklin Avenue does not have a Certificate of Occupancy permitting operation of a hostel and does not have a Multiple Dwelling Registration. Between 30 and 70 guests stayed at 287 Franklin Avenue while Dudjak was operating the hostel. He usually collected $50 per night for the smaller room and $70 per night for the larger room, plus booking fees. He split the proceeds with Defendant Isaac Teitelbaum. Teitelbaum met with Dudjak several times a week during April 2010 and thereafter, and arranged for Dudjak to begin operating hostels on several other properties, including 1082 Pacific Street, Brooklyn, NY 11238, a property on Broadway in Brooklyn, NY, and a property on Myrtle Avenue in Brooklyn, NY.

161. Between May 2010 and spring 2011, Defendant Brian Dudjak maintained profiles for the Pacific Loft Guesthouse at http://www.travellerspoint.com/accommodation/48507-Pacific-Loft-Guesthouse/ , http://www.hostelbookers.com/hostels/usa/new-york-city/58649/ , and http://www.anytrip.com/hostels/usa/new-york-city/58649/ , at which the hostel at 1082 Pacific Street has accumulated, respectively, 29, 121, and 121 internet reviews from international and domestic guests, as of February 23, 2011. According to the Department of Buildings website as accessed on July 4, 2011, 1082 Pacific Street, Brooklyn, NY 11238 does not have a Certificate of Occupancy permitting operation of a hostel, and a full vacate order was issued for the building on June 23, 2011 due to the building's illegal conversion into a transient hotel without required egress, sprinklers, and fire alarm, and exceeding the occupancy load of the building. According to the Department of Housing Preservation and Development website as accessed on July 4, 2011, 1082 Pacific Street is a 3-family house, the most recent Multiple Dwelling Registration for which was filed on April 8, 2003. Dudjak furthered Defendants' fraudulent scheme by advertising the unsafe hostel on the internet and collecting money electronically from other states and from around the world.

45

**Bank fraud**

162. Defendants committed acts of bank fraud in violation of 18 U.S.C. § 1344, as follows.

163. Defendant Chaim Meisels owns 330 Berry Street, Brooklyn, NY 11211, which is Block 2442, Lot 23 in the City Register's records. Defendant Chaim Goldberger resides at 198 Middleton Street, Brooklyn, NY 11206, which is Block 2242, Lot 23 in the City Register's records. Plaintiffs believe that Defendants Meisels and/or Goldberger operated a scheme to defraud HSBC Bank, an FDIC insured bank, based on information as follows. In the six digits of Block and Lot, only one digit differs between the two properties above: one is Block 2442, Lot 23; the other is Block 2242, Lot 23. On September 15, 2008, HSBC Bank filed a foreclosure case, Index No. 25980/2008 at the Supreme Court of the State of New York, County of Kings, in which HSBC Bank attempted to foreclose on the wrong Block and Lot, incorrectly stating the Block and Lot of 330 Berry Street to be Block 2242, Lot 23 instead of Block 2442, Lot 23. Plaintiffs have no express knowledge of communications between Meisels and HSBC Bank. Because one digit out of six is switched in the Block and Lot of two properties related to Defendants, and because HSBC filed a foreclosure case in which the same one of six digits was switched in the same way, Plaintiffs believe as follows, and allege the same. On or before September 15, 2008, Defendant Chaim Meisels submitted false information regarding the Block No. of the property mortgaged. Alternatively, Meisels failed to notify HSBC bank about the numerical error on or after the filing of the foreclosure case.

164. In conjunction with Defendants' scheme to defraud tenants at 287 Franklin Avenue, Defendants also operated a scheme to defraud OneWest Bank FSB, an FDIC insured bank. Within 10 days after OneWest Bank FSB initiated the foreclosure case bearing Index No. 11344/2009 at Supreme Court of the State of New York, County of Kings on May 8, 2009, Defendants including Chaim Meisels, Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry, Chaim Goldberger, and/or Henry Management, LLC, and unknown others arranged for a deed to be filed granting 287 Franklin Avenue, the subject of the above foreclosure case, from Ronald Henry to Ronald Henry Land Trust. To plaintiffs' knowledge, no member of the Defendants' enterprise notified OneWest Bank FSB about the formation of the Ronald Henry Land Trust, the deed transfer, the engagement of tenants in subsequent months, the conversion of the building from a 2-family house into 9 rooming units, or the collection of rents from tenants living in those units.

165. During the continuing pendency of the foreclosure case regarding 287 Franklin Avenue, plaintiffs believe that OneWest Bank FSB has continued to pay the property tax bill quarterly.

166.  In New York City, when water bills are not paid for over a year, a tax lien may be placed on the property.  The tax lien may be sold at the City's annual Tax Lien Sale.  Banks with pending foreclosure cases may pay off tax liens on mortgaged properties before a foreclosure sale in order to clear their claim to title.  Plaintiffs do not have specific knowledge of a tax lien payment by OneWest Bank FSB.  Because of the cancellation of a tax lien during the pendency of the foreclosure case regarding 287 Franklin Avenue, Plaintiffs believe that on or around October 5, 2009, OneWest Bank FSB paid off a $4,233 tax lien on 287 Franklin Avenue resulting from unpaid water bills in 2008.  Since this time, while the Defendants have continued operating the property, collecting rents, and attempting to collect additional rents, an additional $3,000 has accumulated in unpaid water bills, which may result in an additional tax lien paid by OneWest Bank before the foreclosure sale.

167.  The New York City Department of Housing Preservation and Development ("HPD") is responsible for enforcing compliance with the City Housing Maintenance Code and the State Multiple Dwelling Law.  HPD's Division of Code Enforcement performs inspections and issues violations for unsafe housing.  Additionally, when owners fail to repair emergency conditions, HPD may undertake the repair as part of its Emergency Repair Program and bill the cost of repairs plus a 15% administrative fee to the owner's property tax bill.  At 287 Franklin Avenue, in or around May 2009, within a month after the deed transfer to Defendant Ronald Henry Land Trust, a complaint was made about lack of hot water, which resulted in HPD replacing the hot water heater and opening a gas account for heat and hot water.  Since July 2009, the HPD has paid for the gas at 287 Franklin Avenue and billed the property tax bill.  Plaintiffs do not have specific knowledge of gas payments made by OneWest Bank FSB, but have seen the property tax statements on the New York City Department of Finance website, http://nycprop.nyc.gov/nycproperty/nynav/jsp/selectbbl.jsp.  Because payments were made to the emergency repair accounts on the property tax bill during the pendency of the foreclosure case regarding 287 Franklin Avenue, and because at least on January 10, 2011 those payments were made on the same day as a property tax payment, Plaintiffs believe that OneWest Bank FSB made payments for the gas account as emergency repairs on the property tax bill, including payments of $3,360.19 on April 19, 2010, $621.16 on January 10, 2011, and $655.92 on February 18, 2011.

168.  Plaintiffs do not have specific knowledge of payments by any bank related to 162 Covert Street as part of the Sylvia Francis Land Trust scheme, but believe that the foreclosing bank may have made emergency repair, property tax, or other payments there.  According to the HPD website, as accessed on May 24, 2011, $40,804.87 of emergency repairs, including utility payments, have been made by HPD at 162 Covert Street and have been billed to the City property tax bill, which may have been paid in full or in part by LaSalle Bank, N.A. due to the pending foreclosure proceeding.

169. Defendants may operate an additional fraudulent scheme by which Defendants Louis Garcia and/or Kings County Realty Corp. conduct broker price opinions on properties in which other members of the enterprise have an interest in the result of the broker price opinion. For example, Defendants Louis Garcia, Joel Kaufman, Chaim Meisels, Kings County Realty Corp., Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry, and Ronald Henry Land Trust were all involved together in the "land trust" schemes related to 287 Franklin Avenue and 162 Covert Street in May 2009 and June 2009. Shortly thereafter, on July 30, 2009, Defendant Louis Garcia conducted a broker price opinion for 287 Franklin Avenue in which he provided a broker price opinion for 287 Franklin Avenue to LSI, supposedly a subcontractor of OneWest Bank, FSB. Notably, all six of the comparison properties on which Defendant Garcia based his estimated value were located to the south and east of 287 Franklin Avenue in Bedford-Stuyvesant and Crown Heights, where home values might be lower. No comparison properties were located to the north or west of 287 Franklin Avenue in Clinton Hill, Fort Greene, or Williamsburg, whose higher home values might have produced a higher estimate. Accordingly, Defendant Garcia may have produced an artificially low estimate for the value of a property that other members of the enterprise may have been attempting to purchase through a short sale. It is not known to Plaintiffs whether Defendants Louis Garcia and/or Kings County Realty Corp. conducted broker price opinions for 162 Covert Street or for any other property in which other Defendants may have had an interest or a potential interest.

### Interstate travel or transportation in aid of racketeering enterprises

170. Defendants committed acts of interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, as follows.

171. As alleged herein, Defendants have used U.S. Mails, U.S. wires, and checks from interstate banks to promote, manage, establish, carry on, and distribute the proceeds of extortion, and to facilitate the promotion, management, establishment, and carrying on of extortion.

### Laundering of monetary instruments

172. Defendants committed acts of the laundering of monetary instruments in violation of 18 U.S.C. § 1956, as follows.

173. As described in paragraphs 51, 52, 99, 100, 102, 103, 150, and 151 above, and elsewhere herein, Defendants transferred real property, collected rents, attempted collection of rents, and collected

security deposits and credit check fees, which Defendants knew to constitute proceeds of unlawful activity as described herein.  Defendants conducted additional financial transactions involving the proceeds of specified unlawful activity, as described herein, when they subsequently transferred funds or cashed checks or deposited checks into banks.

174.  Defendants conducted the financial transactions described in paragraph 173 with intent to promote the carrying on of specified unlawful activity as described herein.

175.  As described in paragraphs 51, 52, 99, 100, 102, 103, 150, and 151 above, and elsewhere herein, Defendants conducted the financial transactions described in paragraph 173 with intent to engage in conduct constituting violations of sections 7201 and 7206 of the Internal Revenue Code of 1986.

176.  As described in paragraphs 51, 52, 99, 100, 102, 103, 150, and 151 above, and elsewhere herein, Defendants conducted the financial transactions described in paragraph 173 knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity as described herein.

177.  As described in paragraphs 51, 52, 99, 100, 102, 103, 150, and 151 above, and elsewhere herein, Defendants conducted the financial transactions described in paragraph 173 knowing that the transactions were designed in whole or in part to avoid transaction reporting requirements under State and Federal laws.

178.  The proceeds of the unsafe, illegal hostels at 287 Franklin Avenue, Brooklyn, NY 11205; 1082 Pacific Street, Brooklyn, NY 11238; a property on Myrtle Avenue, Brooklyn, NY; and a property on Broadway, Brooklyn, NY, as transferred by wire over the internet to Defendants Brian Dudjak and Isaac Teitelbaum from international guests in foreign countries in advance of their visits to the United States, both in the past since May 2010, and on a continuing basis at least at 1082 Pacific Street, constitute international transmissions or transfers of monetary instruments with the intent to promote the carrying on of specified unlawful activity as described herein.

### Engaging in transactions of criminally derived property

179.  Defendants committed acts of engaging in transactions of criminally derived property in violation of 18 U.S.C. § 1957, as follows.

180.  As described above in paragraphs 51 and 98, on or around May 12, 2009, Defendant Chaim

Meisels extorted Defendant Ronald Henry to sign a deed transferring 287 Franklin Avenue, Brooklyn, NY 11205 from Ronald Henry to Defendant Ronald Henry Land Trust or to some other party. When Plaintiffs Jon Sasmor, Lisa Lin, and Vilija Skubutyte met with Defendant Ronald Henry on August 6, 2010, Ronald Henry told them that after Ronald Henry signed the deed, Power of Attorney, Proof of Hardship, Authorization for Short Sale, and other papers on May 12, 2009, Chaim Meisels later made an offer to pay OneWest Bank FSB $600,000 to release the mortgage on 287 Franklin Avenue through a short sale. Since Defendants Chaim Meisels, Ronald Henry Land Trust, Isaac Teitelbaum and/or Abraham Schneebalg had obtained a deed for 287 Franklin Avenue through extortion, 287 Franklin Avenue constituted criminally derived property. Defendant Chaim Meisels attempted to conduct a monetary transaction with OneWest Bank FSB regarding said criminally derived property of a value greater than $10,000, though OneWest Bank FSB declined to participate in said monetary transaction.

### Interstate or foreign transport of stolen property

181. Defendants committed acts of interstate or foreign transport of stolen property in violation of 18 U.S.C. § 2314, as follows.

182. The unlawful rents collected as described herein total more than $5,000, and were drawn on or deposited into interstate banks, including Provident Bank, headquartered in Jersey City, NJ; Bank of America, headquartered in Charlotte, NC; and Wachovia Bank, headquartered in Charlotte, NC.

183. Plaintiffs do not have specific knowledge of the proceeds from the illegal hostels, but based on the amount of time the hostels have been operating and the number of internet reviews, Plaintiffs believe that Defendants Isaac Teitelbaum and Brian Dudjak have collected more than $5,000 in illegal hostel reservation fees from hundreds of international guests at their illegal hostels, who have paid those fees from abroad using the internet in advance of their visits to the United States.

### Obstruction of criminal investigations

184. Defendants committed acts of obstruction of criminal investigations in violation of 18 U.S.C. § 1510, as follows.

185. On July 9, 2009, Defendant Henry Management, LLC, 320 Roebling Street, Brooklyn, NY 11211 contributed $250 to Friends of Charles J. Hynes, as a campaign contribution in support of a candidate for Kings County District Attorney. On September 20, 2010, Defendant Chaim Goldberger, 1270 59th Street, Brooklyn, NY 11219 made a $1000 contribution to Schneiderman for Attorney General, Inc., in

support for a candidate for New York State Attorney General. Henry Management, LLC and Goldberger did not make any additional contributions, and no other Defendants made any contributions from their known names and addresses as of February 23, 2011, according to searches on the New York State Board of Elections Campaign Financial Disclosure webpage (http://www.elections.state.ny.us/ContributionSearchB_Name.html).

186. It is unknown to Plaintiffs whether the above campaign contributions constituted bribes and whether Defendants are the subject of any past or current criminal investigation by the Internal Revenue Service, the United States Attorney, or the District Attorneys of the State of New York or the County of Kings.

## C. Impact on Interstate and Foreign Commerce

187. As alleged herein, Defendants have impacted foreign commerce by engaging tenants and hostel guests from other states and countries, by using the U.S. Mails and wires, and by engaging in financial transactions and schemes to defraud involving interstate banks and the Internal Revenue Service.

## D. Injury to Plaintiffs

### 287 Franklin Avenue Residents' Association

188. Plaintiff 287 Franklin Avenue Residents' Association is an unincorporated association formed by written agreement on July 24, 2010 to benefit the residents of 287 Franklin Avenue. The 287 Franklin Avenue Residents' Association collects dues and has a bank account.

189. On or around August 12, 2010, the 287 Franklin Avenue Residents' Association paid $100 by bank check to Defendant Ronald Henry for illegal rent.

190. The Defendants' scheme to provide unsafe, illegal housing at 287 Franklin Avenue has required the 287 Franklin Avenue Residents' Association to pay for fire safety and repair costs that would be paid by bona fide building owners. For example, the 287 Franklin Avenue Residents' Association paid $41.10 on October 6, 2010 for smoke detectors and carbon monoxide detectors, $118.24 on October 30, 2010 for materials to replace defective bathroom tiles, $424.61 on November 5, 2010 to repair the broken heating system, and $343.67 on January 7, 2011 for fire extinguishers and additional smoke

detectors. Prior to the 287 Franklin Avenue Residents' Association's expenditures, there had been no working heat, smoke detectors, carbon monoxide detectors, or fire extinguishers for the several months previously during which the building was occupied.

191.  New York Public Service Law § 52 requires building owners to pay utility bills where meters are shared between multiple units, such as at 287 Franklin Avenue, where there are 2 electric meters and 2 gas meters for 9 housing units.   Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Nathan Smith, Josh Bosch, People Choice Real Estate, LLC, Henry Management, LLC, Ronald Henry, and Ronald Henry Land Trust all asserted conflicting representations that they were the owner or representative of the owner of 287 Franklin Avenue for the purposes of collecting rent, but to Plaintiffs knowledge, none of the Defendants ever created and paid any utility account for 287 Franklin Avenue. As a result, the electricity was turned off for 3 days on or around April 20, 2010, and a notice of upcoming gas service termination was delivered on or around May 10, 2010.  Whereas tenants individually split the costs of gas and electric bills using cash between April 2010 and July 2010, Plaintiff 287 Franklin Avenue Residents' Association took over paying electric and cooking gas bills starting in August 2010. Since then, as a result of Defendants' failure to establish accounts and pay utility bills as part of their fraudulent scheme, Plaintiff 287 Franklin Avenue Residents' Association has paid between $90 and $150 monthly for electricity bills and between $15 and $25 monthly for cooking gas bills, totaling approximately $1500 between August 2010 and June 2011.

192.  On December 15, 2010, the 287 Franklin Avenue Residents' Association paid $74.89 to reimburse tenants for copies, printing, postage, and supplies related to the extortive meritless eviction case described in paragraph 115.

193.  The 287 Franklin Avenue Residents' Association has allocated funds to reimburse tenants for copies, printing, postage, notary fees, court fees, and supplies related to the eight extortive meritless eviction cases described in paragraphs 89 through 94.  As of July 4, 2011, these costs total $1,097.42.

### Jon Sasmor and Lisa Lin

194.  Plaintiffs Jon Sasmor and Lisa Lin contacted Defendants Nathan Smith and Josh Bosch from Defendant People Choice Real Estate, LLC by telephone after finding an ad on craigslist.org for an advertised room.  Jon Sasmor and Lisa Lin moved into 287 Franklin Avenue, Room 4F on April 1, 2010, and lived there until the Department of Housing Preservation and Development issued a Vacate Order for their room on January 18, 2011, at which time they moved downstairs into Room 2B, where they currently reside.

195. Sasmor and Lin paid illegal rent, security deposit, and credit check fees as follows:

(a) on March 26, 2010, $400 paid for security deposit as a check issued from Sasmor to "Kings Management," dated March 26, 2010 and given to Defendant Josh Bosch at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC" signed by Sasmor and Bosch;

(b) on March 30, 2010, $400 paid for April 2010 rent as a check issued from Lin to "Isaac Titalbaum," dated March 30, 2010 and given to Defendant Nathan Smith at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC" signed by Lin, Sasmor, and Smith;

(c) on March 30, 2010, $50 cash paid from Lin and Sasmor for credit check fee, given to Defendant Nathan Smith at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC" signed by Lin, Sasmor, and Smith;

(d) on April 17, 2010, $50 cash paid from Lin and Sasmor for additional credit check fee as described in paragraph 99, given to Defendant Josh Bosch at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC" signed by Lin, Sasmor, and Bosch;

(e) on May 2, 2010, $400 paid for May 2010 rent as a check issued from Sasmor to "Isaac Titalbaum," dated May 2, 2010 and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 4F; no receipt given; and

(f) on June 1, 2010, a check for $400 for June 2010 rent was issued from Sasmor to "Henry Goldberg," and given to Defendant Isaac Teitelbaum outside the bedroom door of 287 Franklin Avenue, Room 4F; and no receipt was given. Sasmor stopped the check by calling Bank of America on June 2, 2010, and incurred a $30 stop check fee.

196. Sasmor and Lin escrowed $400 rent monthly in their bank accounts between June 2010 and January 2011 in case rent could legally be collected by some party, resulting in $3200 of money reserved and precluded from other use.

197. Sasmor and Lin lived for 292 days in a rooming unit in a wood frame building without adequate fire egress, which was later declared by Department of Housing Preservation and Development to be "unfit for human habitation" and for which a vacate order was issued. Because of the vacate order, Sasmor and Lin were forced to move out of the unsafe room that they had rented from Defendants.

198. Between around April 15, 2010 and around July 7, 2010, Sasmor and Lin had limited access to kitchen, bathroom, and common area facilities in 287 Franklin Avenue because of Defendants Isaac

53

Teitelbaum and Brian Dudjak's operation of an illegal hostel in part of the building.

199. Sasmor and Lin have lived in and continue to live in an atmosphere of extortion, harassment, and fear, including threats, attempted break-ins, attempted illegal lockouts, and three waves of baseless eviction proceedings, as described herein.

200. As a result of the ongoing threat of an illegal lockout and property theft by the Defendants, Sasmor and Lin and other tenants have coordinated to keep someone in 287 Franklin Avenue at all times. As a result, Sasmor and Lin have been inconvenienced by hundreds of hours of "coverage time" at which one of them must remain home.

### Willie Osterweil

201. Plaintiff Willie Osterweil contacted Defendants Nathan Smith and Josh Bosch from Defendant People Choice Real Estate, LLC by telephone after finding an ad on craigslist.org for an advertised room. Willie Osterweil moved into Room 2F at 287 Franklin Avenue on April 1, 2010, and lived there until July 25, 2010, when he moved upstairs into Room 3R, where he currently resides.

202. Osterweil paid illegal rent, security deposit, and credit check fees as follows:
> (a) on March 21, 2010, Osterweil paid $525 cash for security deposit given to Defendant Joe Doe at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC";
> (b) on March 21, 2010, Osterweil paid $75 cash for credit check fee given to Defendant Nathan Smith at the office of Defendant People Choice Real Estate, LLC; receipt given from "Peoples Choice Real Estate, LLC";
> (c) on April 1, 2010, Osterweil paid $525 for April 2010 rent as a check issued from Osterweil to Defendant Isaac Teitelbaum, given to Defendant Nathan Smith from Defendant People Choice Real Estate, LLC;
> (d) on or around May 2, 2010, Osterweil paid $465 for May 2010 rent as a check issued from Osterweil to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 2F; and
> (e) on or around June 10, 2010, Osterweil paid $525 for June 2010 rent as a check issued from Osterweil to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 2F.

203. Osterweil escrowed $525 rent monthly in his bank account between July 2010 and January 2011

in case rent could legally be collected by some party, resulting in $3675 of money reserved and precluded from other use.

204. Between around April 15, 2010 and around July 7, 2010, Osterweil had limited access to kitchen, bathroom, and common area facilities in 287 Franklin Avenue because of Defendants Isaac Teitelbaum and Brian Dudjak's operation of an illegal hostel in part of the building.

205. Osterweil has lived in and continues to live in an atmosphere of extortion, harassment, and fear, including threats, attempted break-ins, attempted illegal lockouts, and baseless eviction proceedings, as described herein.

206. As a result of the ongoing threat of an illegal lockout and property theft by the Defendants, Osterweil and other tenants have coordinated to keep someone in 287 Franklin Avenue at all times. As a result, Osterweil has been inconvenienced by hundreds of hours of "coverage time" at which he must remain home.

### Kurt Fletcher

207. Plaintiff Kurt Fletcher contacted Defendants Nathan Smith and Josh Bosch from Defendant People Choice Real Estate, LLC by telephone while still in Missouri after finding an ad on craigslist.org for an advertised room. Kurt Fletcher arrived in New York and moved into Room 4R at 287 Franklin Avenue on or around April 1, 2010, and lived there until July 29, 2010, when he moved downstairs into Room 3F, and lived there until he moved out of New York on September 29, 2010.

208. Fletcher paid illegal rent, security deposit, and credit check fees as follows:
(a) on or around March 23, 2010, Fletcher paid $300 for security deposit as a check issued to Defendant People Choice Real Estate, LLC and sent by U.S. Mail from Missouri;
(b) on or around March 23, 2010, Fletcher paid $50 for credit check fee as a check issued to Defendant People Choice Real Estate, LLC and sent by U.S. Mail from Missouri;
(c) on or around April 1, 2010, Fletcher paid $400 for April 2010 rent as a check issued from Fletcher to Defendant Isaac Teitelbaum, given to Defendant Nathan Smith from Defendant People Choice Real Estate, LLC;
(d) on or around May 2, 2010, Fletcher paid $400 for May 2010 rent as a check issued from Fletcher to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 4R; and
(e) on or around June 10, 2010, Fletcher paid $300 for June 2010 rent as a check issued from

Fletcher to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 4R.

209. Fletcher escrowed $400 rent monthly in his bank account between July 2010 and September 2010 in case rent could legally be collected by some party, resulting in $1200 of money reserved and precluded from other use.

210. Fletcher lived for 120 days in a rooming unit in a wood frame building without adequate fire egress, which was later declared by Department of Housing Preservation and Development to be "unfit for human habitation" and for which a vacate order was issued.

211. Between around April 15, 2010 and around July 7, 2010, Fletcher had limited access to kitchen, bathroom, and common area facilities in 287 Franklin Avenue because of Defendants Isaac Teitelbaum and Brian Dudjak's operation of an illegal hostel in part of the building.

212. Between April 1, 2010 and September 29, 2010, Fletcher lived in an atmosphere of extortion, harassment, and fear, including threats, attempted break-ins, and attempted illegal lockouts, and baseless eviction proceedings thereafter, as described herein.

213. As a result of the ongoing threat of an illegal lockout and property theft by the Defendants, Fletcher and other tenants coordinated to keep someone in 287 Franklin Avenue at all times. As a result, Fletcher was inconvenienced by many hours of "coverage time" at which he must remain home.

**Vilija Skubutyte**

214. Plaintiff Vilija Skubutyte contacted Defendants Nathan Smith and Josh Bosch from Defendant People Choice Real Estate, LLC by telephone while still in New Jersey after finding an ad on craigslist.org for an advertised room. Skubutyte moved into Room 4B at 287 Franklin Avenue on or around April 1, 2010, and lived there until October 2, 2010, when she moved downstairs into Room 3F, where she currently resides.

215. Skubutyte paid illegal rent, security deposit, and credit check fees as follows:
(a) on or around March 26, 2010, Skubutyte gave $500 cash for security deposit to Defendant Nathan Smith from Defendant People Choice Real Estate, LLC, and received a receipt;
(b) on or around April 1, 2010, Skubutyte paid $500 cash for April 2010 rent to Defendant Nathan Smith from Defendant People Choice Real Estate, LLC;

(c) on or around May 2, 2010, Skubutyte paid $500 cash for May 2010 rent to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 4B; and Goldberger placed a squiggle on a receipt that Skubutyte wrote in her notebook;

(d) on or around June 10, 2010, Skubutyte paid $500 for June 2010 rent as a check issued from Skubutyte to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger outside the bedroom door of 287 Franklin Avenue, Room 4B;

(e) on or around July 1, 2010, Skubutyte paid $500 for July 2010 rent as a check issued from Skubutyte to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger in the kitchen of 287 Franklin Avenue; and

(f) on or around August 1, 2010, Skubutyte paid $500 for August 2010 rent as a check issued from Skubutyte to Defendant Isaac Teitelbaum, and given to Defendant Chaim Goldberger in the kitchen of 287 Franklin Avenue.

216. Skubutyte escrowed $500 rent monthly in her bank account between September 2010 and January 2011 in case rent could legally be collected by some party, resulting in $2500 of money reserved and precluded from other use.

217. Skubutyte lived for 184 days in a rooming unit in a wood frame building without adequate fire egress, which was later declared by Department of Housing Preservation and Development to be "unfit for human habitation" and for which a vacate order was issued.

218. Between around April 15, 2010 and around July 7, 2010, Skubutyte had limited access to kitchen, bathroom, and common area facilities in 287 Franklin Avenue because of Defendants Isaac Teitelbaum and Brian Dudjak's operation of an illegal hostel in part of the building.

219. Skubutyte has lived in and continues to live in an atmosphere of extortion, harassment, and fear, including threats, attempted break-ins, attempted illegal lockouts, and a baseless eviction proceeding.

## COUNT I: VIOLATION OF 18 U.S.C. § 1962(a)

### (BY ALL DEFENDANTS EXCEPT LOUIS GARCIA, JOEL KAUFMAN, KINGS COUNTY REALTY CORP., AND SAMUEL EMMANUS)

220. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 219 as if fully set forth herein.

57

221.  Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(a).

## COUNT II: VIOLATION OF 18 U.S.C. § 1962(b)

(BY ALL DEFENDANTS EXCEPT LOUIS GARCIA, JOEL KAUFMAN, KINGS COUNTY REALTY CORP., AND SAMUEL EMMANUS)

222.  Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 219 as if fully set forth herein.

223.  Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(b).

## COUNT III: VIOLATION OF 18 U.S.C. § 1962(c)

(BY ALL DEFENDANTS)

224.  Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 219 as if fully set forth herein.

225.  Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(c).

## COUNT IV: VIOLATION OF 18 U.S.C. § 1962(d)

(BY ALL DEFENDANTS)

226.  Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 219 as if fully set forth herein.

227.  Plaintiffs have been injured by Defendants' violation of 18 U.S.C. § 1962(d).

## COUNT V: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

(BY ALL DEFENDANTS)

228. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 227 as if fully set forth herein.

229. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units that are unfit for human habitation.

230. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units without a valid Certificate of Occupancy where one is required, and where rent legally could not be collected for those units.

231. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units without a valid Multiple Dwelling Registration where one is required, and where rent legally could not be collected for those units.

232. Defendants have advertised, booked guests, and collected fees from interstate and foreign hostel guests for hostels without a valid Certificate of Occupancy where one is required, and where fees legally could not be collected for those units.

233. Defendants have advertised, booked guests, and collected fees from interstate and foreign hostel guests for hostels without a valid Hotel Registration where one is required, and where fees legally could not be collected for those units.

234. Defendants have registered corporations, offices, and residences at Suite #518 in a small 2-family building.

235. Defendants have created numerous corporate entities and land trusts for the purpose of concealing money and deceptive real estate rental and ownership transactions.

236. Defendant Chaim Meisels misrepresented to Ronald Henry that Ronald Henry needed to sign a deed as part of short sale application paperwork to fix Ronald Henry's foreclosure problem.

237. Defendants People Choice Real Estate, LLC, Nathan Smith, and Josh Bosch provided leases to

59

Plaintiffs Jon Sasmor, Lisa Lin, Kurt Fletcher, and Vilija Skubutyte, and to tenant Amanda Diaz, but never returned those leases with an owner's signature. The owner listed on the leases provided, Defendant Henry Management, LLC, was not the record owner and never has been the record owner of 287 Franklin Avenue. Though Plaintiff Willie Osterweil and tenant Alex Rosenbaum requested leases at least 3 times, and were promised them by Defendants People Choice Real Estate, LLC, Nathan Smith, and Josh Bosch at least 3 times, they were never given leases to sign.

238. Defendants Chaim Meisels a/k/a Cliamah Mizelle, Chaim Goldberger a/k/a Henry Goldberg, Isaac Teitelbaum a/k/a Isaac Titalbaum, People Choice Real Estate, LLC a/k/a Peoples' Choice Real Estate, L.L.C a/k/a People's Choice Realty, Inc., and Peter Henry a/k/a Guru conducted consumer-oriented acts and practices using false names. Defendants Nathan Smith and Josh Bosch signed receipts and a lease rider by their first names without printing their full names beneath their signatures, and also posted internet advertisements by their first names only without revealing their last names. Plaintiffs discovered the last names of Smith and Bosch only after the commencement of this litigation.

239. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units on behalf of people and entities other than the legal owner of the premises. Defendants instructed tenants to make out rent checks, security deposits, and credit checks to multiple people including, at least in some cases, people not entitled to receive those funds.

240. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units at 287 Franklin Avenue, but have repeatedly refused requests for evidence that they actually own the building or represent the parties that own the building. Whereas Defendant Ronald Henry Land Trust is the record owner of 287 Franklin Avenue, Defendants attempting to collect rent repeatedly refused to show documentation about the Ronald Henry Land Trust prior to the commencement of this case.

241. Defendants have harassed and extorted tenants, and attempted further harassment and extortion.

242. Defendants attempted meritless extortive eviction cases to recover money not owed and to recover possession for a fraudulent land trust not capable to possess real property under New York law.

243. Defendants used "sewer service" to initiate eviction cases without due process so as to attempt to evict tenants unlawfully without a hearing.

244. Defendants Louis Garcia, Joel Kaufman, and Kings County Realty Corp. claimed to work for

60

"the bank" when attempting to gain access to Plaintiffs' dwelling, but refused to provide proof that they were actually working for any bank.

245. Under the deceptive pretenses alleged herein, Defendants obtained Plaintiffs' Social Security Numbers while misrepresenting a legitimate right to provide rental apartments.

246. Defendants misrepresented to Plaintiffs that Plaintiffs needed to pay utility bills, when it was Defendants' legal responsibility due to the shared utility meters.

247. Defendant Chaim Goldberger took a piece of U.S. Mail that did not belong to him, as described in paragraph 146.

248. Defendants continue to advertise, lease, and collect rent from unsafe, illegal rooms.

249. Defendants continue to advertise, book guests and collect fees from unsafe, illegal hostels.

250. Defendants have committed other deceptive consumer-oriented acts and practices as described herein.

251. Defendants' deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

252. Plaintiffs have been injured, and continue to be injured, as described herein, by Defendants' deceptive acts and practices in the conduct of business, trade, or commerce, in violation of the New York Consumer Protection Act, New York General Business Law § 349.


**COUNT VI: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**

(BY DEFENDANTS CHAIM GOLDBERGER, ISAAC TEITELBAUM, ABRAHAM SCHNEEBALG, RONALD HENRY LAND TRUST, HENRY MANAGEMENT, LLC, PEOPLE CHOICE REAL ESTATE, LLC, NATHAN SMITH, AND JOSH BOSCH)

253. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1 through 252 as if fully set forth herein.

254. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units that are unfit for human habitation.

255. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units without a valid Certificate of Occupancy where one is required, and where rent legally could not be collected for those units.

256. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units without a valid Multiple Dwelling Registration where one is required, and where rent legally could not be collected for those units.

257. Defendants have advertised, booked guests, and collected fees from interstate and foreign hostel guests for hostels without a valid Certificate of Occupancy where one is required, and where fees legally could not be collected for those units.

258. Defendants have advertised, booked guests, and collected fees from interstate and foreign hostel guests for hostels without a valid Hotel Registration where one is required, and where fees legally could not be collected for those units.

259. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units on behalf of people and entities other than the legal owner of the premises. Defendants instructed tenants to make out rent checks, security deposits, and credit checks to multiple people including, at least in some cases, people not entitled to receive those funds.

260. Defendants Nathan Smith and Josh Bosch have posted internet advertisements by their first names only without revealing their last names and without revealing that they are real estate brokers or salespeople.

261. Defendants have advertised, leased, collected rent from, and attempted to collect rent from rental housing units at 287 Franklin Avenue, but have repeatedly refused requests for evidence that they actually own the building or represent the parties that own the building. Whereas Defendant Ronald Henry Land Trust is the record owner of 287 Franklin Avenue, Defendants attempting to collect rent repeatedly refused to show documentation about the Ronald Henry Land Trust prior to the commencement of this case.

262. Defendants continue to advertise, lease, and collect rent from unsafe, illegal rooms.

263. Defendants continue to advertise, book guests and collect fees from unsafe, illegal hostels.

264. Defendants have committed other acts of false advertising as described herein.

265. Defendants' false advertising is misleading to a reasonable consumer in a material way.

266. Plaintiffs have been injured, and continue to be injured, as described herein, by Defendants' false advertising in the conduct of business, trade, or commerce, in violation of the New York Consumer Protection Act, New York General Business Law § 350.

## DEMAND FOR JURY TRIAL

267. Plaintiffs hereby demand a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgments against Defendants, as follows:

(a) Compensatory damages in an amount to be determined at trial, together with interest;

(b) Treble damages pursuant to RICO;

(c) Compensatory, multiple, statutory, and punitive damages pursuant to NYCPA;

(d) Attorneys' fees, if attorneys are engaged, and costs, pursuant to RICO and NYCPA;

(e) An order enjoining Defendants from collecting rent or attempting to collect rent from existing occupants and from advertising or renting to a new tenant any housing unit in 287 Franklin Avenue, Brooklyn, NY 11205 or in any other building without a valid Certificate of Occupancy where one is required, until such time as a valid Certificate of Occupancy is obtained;

(f) An order enjoining Defendants from collecting rent or attempting to collect rent from

existing occupants and from advertising or renting to a new tenant any housing unit in 287 Franklin Avenue, Brooklyn, NY 11205 or in any other building without a valid Multiple Dwelling Registration where one is required, until such time as a valid Multiple Dwelling Registration is obtained;

(g) An order enjoining Defendants from advertising, engaging guests, hosting guests, or collecting money from or at any hotel or hostel without a valid Certificate of Occupancy permitting use as a hotel or hostel, until such time as a valid Certificate of Occupancy is obtained;

(h) An order enjoining Defendants from advertising, engaging guests, hosting guests, or collecting money from any hotel or hostel not registered with the New York City Department of Finance, where registration is required;

(i) An order enjoining Defendants from engaging in other deceptive acts and practices as described herein;

(j) An order enjoining Defendants from engaging in other false advertising as described herein;

(k) An order enjoining any Defendant from transferring money or causing money to be transferred to any other Defendant;

(l) An order directing the dissolution of the Ronald Henry Land Trust, and appointing a referee to distribute its assets, if any, in accordance with the law;

(m) An order directing the New York City Departments of Buildings and Housing Preservation and Development to inspect all real property owned, operated, advertised, or rented by Defendants; and directing Defendants to divest of any interest in real property found by said Departments to be occupied without a valid Certificate of Occupancy where one is required, or occupied without a valid Multiple Dwelling Registration where one is required, or occupied without a valid Hotel Registration where one is required; and enjoining Defendants from converting any property to be illegally occupied; and enjoining Defendants from future investment in any property illegally occupied;

(n) An order directing Defendants to divest of any interest, dissolve, and/or reorganize the enterprise(s) as described herein;

(o) An order appointing a receiver to supervise the divestment, dissolution and/or reorganization of the enterprise(s) as described herein;

(p) An order enjoining Defendants from engaging in or following the business or occupation of, or holding themselves out or acting temporarily or otherwise as a real estate broker or real estate salesperson in New York State;

(q) An order enjoining Defendants from conducting any business, trade, or commerce in New York State;

(r) Pre- and post-judgment interest to the extent permitted by law; and

(s) Such other and further relief as justice requires.

65

Dated: July 7, 2011

Respectfully submitted,

287 Franklin Avenue Residents' Association
by Jon Sasmor, President
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619

Jon Sasmor
287 Franklin Avenue, Room #2B
Brooklyn, NY 11205
(917) 318-2619

Lisa Lin
287 Franklin Avenue, Room #2B
Brooklyn, NY 11205
(352) 556-9353

Willie Osterweil
287 Franklin Avenue, Room #3R
Brooklyn, NY 11205
(857) 234-2701

66

Dated: July 7, 2011

Kurt Fletcher
7324 Richmond Place
Saint Louis, MO 63143
(314) 517-7887

Dated: July 7, 2011

_____
Vilija Skubutyte
287 Franklin Avenue, Room #3F
Brooklyn, NY 11205
(267) 306-0515

**CERTIFICATE OF SERVICE**

Lisa Lin hereby declares as follows:

On July 7, 2011, I served a true and complete copy of the preceding First Amended Complaint dated July 7, 2011 by First Class Mail, postage prepaid, to each of the following:

Louis Garcia
Kings County Realty Corp.
1755 Broadway
Brooklyn, NY 11207

David Lyle Stern, Esq.
STERN & STERN
50 Court St., Suite 1100
Brooklyn, NY 11201

Ronald Henry
424 Cathedral Pkwy, #14C
New York, NY 10025

Boris Kogan
Boris Kogan & Assocs.
277 Broadway, Suite 701
New York, NY 10007

Marc Illish
B. Kogan PLLC
236 Broadway, Suite 208
Brooklyn, NY 11211

Ronald Henry
34 North 6th Street
Brooklyn, NY 11211

Chaim Meisels
660 Bedford Avenue
Brooklyn, NY 11211

Chaim Meisels
75 Franklin Avenue
Brooklyn, NY 11205

Chaim Meisels
132 Franklin Avenue, #2
Brooklyn, NY 11205

Brian Dudjak
Pacific Loft Guesthouse
1082 Pacific Street
Brooklyn, NY 11238

Joel Kaufman
132 Franklin Avenue, #2
Brooklyn, NY 11205

Joel Kaufman
Kings County Realty Corp.
1755 Broadway
Brooklyn, NY 11207

Samuel Emmanus
1580 Prospect Place
Brooklyn, NY 11233

Samuel Emmanus
1112 E 85 Street
Brooklyn, NY 11236

Joe Dante
People Choice Real Estate, LLC
359 Broadway
Brooklyn, NY 11211

Joe
People Choice Real Estate, LLC
359 Broadway
Brooklyn, NY 11211

I declare under penalty of perjury that the foregoing information is true.

Dated: July 7, 2011
Brooklyn, New York

Lisa Lin