UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
287 FRANKLIN AVENUE RESIDENTS'
ASSOCIATION, et al.,                          **MEMORANDUM AND ORDER**

                    Plaintiffs,              11-CV-976(KAM)(JO)

     -against-

CHAIM MEISELS, et al.,

                    Defendants.
--------------------------------------X

**KIYO A. MATSUMOTO**, United States District Judge:

          Plaintiff Jon Sasmor ("Sasmor") has objected to
certain discovery rulings made by Magistrate Judge James
Orenstein on January 11, 2012.  Sasmor seeks discovery of (i)
documents relating to any offers made by defendants to purchase
real property and submissions made to banks in connection with
any such offers; (ii) any information in defendants' 2009 and
2010 tax returns and schedules pertaining to rental income and
the identity of defendants' tax preparers, as well as
defendants' W-2 and 1099 forms; (iii) the identity, conduct, and
dates of involvement of all individuals involved in certain
entities in the last three years; (iv) all categories of
documents kept by certain entities in the ordinary course of
business, as well as the location and custody of those
documents; (v) any information regarding possible common family
relationships among defendants and the late Grand Rabbi Moses

Teitelbaum or Garcia Iron Works, Inc.; (vi) the identity and involvement of any persons involved in the conveyance of 287 Franklin Avenue from Ronald Henry to the Ronald Henry Land Trust, and the purpose of that conveyance; and (vii) all documents related to 287 Franklin Avenue, 175 Thompkins Avenue, Peter Henry, agreements between defendants and Ronald Henry, and arrangements made for utilities, taxes, and violations at 287 Franklin Avenue. (*See* ECF No. 82, Appeal of Magistrate Judge Decision to District Court by Jon Sasmor, filed 2/17/2012 ("Sasmor Appeal").)

The court has reviewed the parties' submissions and the transcript of the status conference before Judge Orenstein on January 11, 2012. For the following reasons, Sasmor's appeal of Judge Orenstein's discovery rulings is granted in part and denied in part, as set forth below.

## BACKGROUND

The facts relevant to the present request for review are as follows. On March 1, 2011, Jon Sasmor, proceeding *pro se*, and the 287 Franklin Avenue Residents' Association and other individuals, represented by counsel, (collectively with Sasmor, "plaintiffs") commenced the instant action. (ECF No. 1, Complaint filed 3/1/2011.) On July 7, 2011, plaintiffs filed an amended complaint against Chaim Meisels, Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, Ronald Henry, Nathan Smith, Josh

Bosch, Peter Henry, Louis Garcia, Joel Kaufman, Brian Dudjak, Samuel Emmanus, the Ronald Henry Land Trust, Henry Management LLC, People Choice Real Estate, LLC, Kings County Realty Corp., and other unknown individuals (collectively, "defendants"). (*See* ECF No. 41, First Amended Complaint ("Am. Compl.") filed 7/7/2011.)  Defendants Chaim Goldberger, Isaac Teitelbaum, Abraham Schneebalg, the Ronald Henry Land Trust, and Henry Management, LLC, collectively, are referred to herein as the "Trust Defendants."  Defendants Louis Garcia, Joel Kaufman, and Kings County Realty Corp., collectively, are referred to herein as the "Garcia Defendants."  Defendants Nathan Smith, Josh Bosch, and People Choice Real Estate, LLC, collectively, are referred to herein as the "People Choice Defendants."  The amended complaint alleges that defendants, who are individuals, real estate companies that employed those individuals, and related trusts, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), including predicate acts of extortion, money laundering, and mail, wire, and bank fraud, and violated New York State consumer protection laws.  (*Id.* ¶¶ 30-40, 97-186, 220-66.)

On August 18, 2011, Judge Orenstein issued a scheduling order setting deadlines for discovery.  (ECF No. 52, Scheduling Order dated 8/18/11.)  On October 1, 2011, plaintiffs served all defendants with interrogatories and document

3

requests.  (*See* ECF No. 57-1, Plaintiffs' First Interrogatories
and Document Requests to [Trust Defendants], dated 9/30/2011
("Requests to Trust Defs."); ECF No. 64-1, Plaintiffs' First
Interrogatories and Document Requests to [Garcia Defendants],
dated 9/30/2011 ("Requests to Garcia Defs."); ECF No. 64-2,
Plaintiffs' First Interrogatories and Document Requests to
[People Choice Defendants], dated 9/30/2011 ("Requests to People
Choice Defs.").)  Although defendants' responses were due within
30 days after being served with the discovery requests, none of
the defendants responded within the allotted time.  (*See* ECF No.
57, Letter Motion to Compel Responses [from Trusts Defendants],
filed 11/16/2011 ("Mot. to Compel Responses from Trust Defs.");
ECF No. 64, Letter Motion to Compel Responses [from Garcia
Defendants and People Choice Defendants], filed 11/28/2011
("Mot. to Compel Responses from Garcia & People Choice Defs.").)
*See also* Fed. R. Civ. P. 33(b)(2), 34(b)(2) (providing that a
party must respond to interrogatories and document requests
within 30 days after service thereof).  Thereafter, the parties
engaged in numerous discussions regarding plaintiffs' discovery
requests.  (*See* ECF No. 57-3, Emails to and from Attorney David
Stern, dated Nov. 3, 8, 11, and 13, 2011 ("Stern E-mails") at 2;
ECF No. 57-4, Letter from Sasmor to Attorney David Stern, dated
11/11/2011 (summarizing the correspondence between Sasmor and
counsel for the Trust Defendants between November 2 and November

4

11, 2011); ECF No. 64-6, Emails to and from Attorney Marc Illish ("Illish E-mails"); ECF No. 64-3, [Garcia Defendants'] First Set of Responses to Plaintiffs' Interrogatories and Document Requests ("Garcia Defs. Unexecuted Draft Responses"); ECF No. 64-4, [People Choice Defendants'] First Set of Responses to Plaintiffs' Interrogatories and Document Requests ("People Choice Defs. Unexecuted Draft Responses").)

On November 16 and November 28, 2011, respectively, Sasmor filed motions to compel defendants to respond to plaintiffs' outstanding interrogatories and document requests. (*See* ECF No. 57, Mot. to Compel Responses from Trust Defs; ECF No. 64, Mot. to Compel Responses from Garcia & People Choice Defs.)

On December 5, 2011, all of the parties appeared before Judge Orenstein to discuss their outstanding discovery disputes. (ECF No. 66, Minute Entry for Proceedings held on 12/5/2011.) Judge Orenstein ordered the parties to meet and confer in a further attempt to resolve or narrow their discovery disputes, and to submit a joint status report no later than December 15, 2011 identifying any outstanding disputes. (*Id.*) Judge Orenstein further directed defendants to promptly respond and produce records in response to those interrogatories and document requests to which they had no reasonable objection. (*Id.*)

5

On January 11, 2012, Judge Orenstein held another status conference (the "January 11, 2012 status conference"), where the parties discussed and Judge Orenstein ruled on each disputed discovery request one-by-one. (*See* ECF No. 73, Minute Entry for Proceedings held on 1/11/2012; ECF No. 98, Transcript of Civil Cause for Conference before the Honorable James Orenstein, dated 1/11/2012 ("1/11/2012 Tr.").)

On January 25, 2012, Sasmor filed a motion seeking reconsideration of several rulings made by Judge Orenstein at the January 11, 2012 status conference. (*See* ECF No. 76, Motion for Reconsideration, filed 1/25/2012 ("Sasmor Motion for Reconsideration").) The Trust, Garcia, and People Choice Defendants opposed Sasmor's motion for reconsideration. (*See* ECF No. 77, Response to Motion for Reconsideration [by Trust Defendants], filed 1/30/2012; ECF No. 78, Response to Motion for Reconsideration [by Garcia and People Choice defendants], filed 1/30/2012.) On February 3, 2012, Judge Orenstein denied Sasmor's motion for reconsideration in its entirety, explaining that:

> [Sasmor] presents no argument or fact in support of the motion [that] satisfies the strict standard for such relief pursuant to Local Civil Rule 6.3. I grant the defendants' request to make their supplemental disclosures in accord with my earlier discovery rulings no later than February 10, 2012.

(Order dated 2/3/2012.)

On February 17, 2012, Sasmor timely appealed to this court Magistrate Judge Orenstein's denial of reconsideration and the underlying discovery rulings.  (*See* ECF No. 82, Sasmor Appeal.)

<u>**DISCUSSION**</u>

**I.   Legal Standards**

**A.   Standard of Review**

A district court may set aside a magistrate judge's order concerning non-dispositive matters only if the order is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  A magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the "clearly erroneous or contrary to law" standard of review.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "nondispositive of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court).  An order is clearly erroneous if the reviewing court, based on all the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).  An order is contrary to law

"when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

"Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Dunkin' Donuts Franchised Rests., LLC v. 1700 Church Ave. Corp.*, No. 07-CV-2446, 2009 U.S. Dist. LEXIS 24367, at *3 (E.D.N.Y. Mar. 24, 2009) (citation and internal quotation marks omitted). Thus, "a party seeking to overturn a discovery ruling [by a magistrate judge] generally bears a heavy burden." *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (citation and internal quotation marks omitted).

**B.    Scope of Permissible Discovery**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26 is "construed broadly to encompass any matter that bears on, or that

8

reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 687 (2d Cir. 1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy"). Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Although the scope of discovery is broad, it is not unrestricted.  Federal Rule of Civil Procedure 26(b)(2)(C) requires a district court to limit or deny discovery, *sua sponte* or upon motion, when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action,; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  "The party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." *Evans v. Calise,* No. 92-CV-8430, 1994 U.S. Dist. LEXIS 6187, at *1 (S.D.N.Y. May 11, 1994); *see also United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (the burden is on the moving party to establish relevance); *Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697, 2002 U.S. Dist. LEXIS 11313, at *3-4 (S.D.N.Y. June 21, 2002) ("Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support. . . .  Discovery requests cannot be based on pure speculation or conjecture.").  Therefore, in a motion to compel, it is incumbent upon the moving party to provide the necessary connection between the discovery sought and the claims or defenses asserted in the case.

## II.  Application

### A.   Offers to Buy Real Property

First, Sasmor seeks to compel defendants to respond to the remainder of plaintiffs' Interrogatory and Document Request No. 1 ("T1/G1/P1"), which provides, in relevant part:

> State the street address of all real property that, within the last three (3) years, you have made an offer to buy on behalf of yourself or someone else, or submitted any paper to any bank; state the result of the offer or submission; and provide all documents in

10

your possession, custody, or control concerning each
offer or submission.[1]

(ECF No. 82-1, Sasmor Appeal Ex. 1.)

At the January 11, 2011 status conference before Judge
Orenstein, Sasmor asserted that information regarding offers
made by defendants to purchase real property was relevant to
establish a pattern of racketeering.  (ECF No. 98, 1/11/2012 Tr.
at 5.)  Sasmor further argued that defendants' offers to buy
real property would be relevant to determining the "scope of
[defendants'] enterprise" and therefore "would help the Court to
examine the scope of injunctive relief that might be
appropriate."  (*Id.* at 7.)  By way of example, Sasmor explained
that "if there were an offer to buy another property in which
the defendants were working together with the banks' lawyer and
the property was in foreclosure, . . . that might further
[plaintiffs'] arguments . . . that there should be an injunction

---

[1] Plaintiffs' original T1/G1/P1 to all defendants stated, in full:

> State the street address of all real property that,
> within the last five (5) years, you have owned or
> claimed an interest in or equity in or managed or
> made repairs to or collected rents from or occupied
> or sold or rented or collected a commission from or
> advertised or used as a registration address or
> mailing address, and describe your involvement in
> each property. State the street address of all real
> property that, within the last five (5) years, you
> have made an offer to buy on behalf of yourself or
> someone else or submitted any paper to any bank,
> state the result of the offer or submission, and
> provide all documents in your possession, custody, or
> control concerning each offer or submission.

(ECF No. 57-1, Requests to Trust Defs. at 4; ECF No. 64-1, Requests to Garcia
Defs. at 4; ECF No. 64-2, Requests to People Choice Defs. at 4.)

[prohibiting] the defendants [from] continuing to operate in the real estate business." (*Id.* at 7-8.)  Judge Orenstein found that the information requested regarding offers to buy real property was not relevant and denied Sasmor's request.  (*See id.* at 4-8, 48.)

Sasmor seeks review of Judge Orenstein's ruling, arguing that offers to purchase real estate and submissions made to banks in connection with such offers are relevant to proving whether defendants engaged in bank fraud, one of the predicate racketeering acts alleged in the amended complaint.  (ECF No. 82-1, Sasmor Appeal Ex. 1; *see also* ECF No. 41, Am. Compl. ¶¶ 162-69.)  Although Sasmor does not allege that plaintiffs were injured by any alleged bank fraud, he nevertheless asserts that information that may prove bank fraud is discoverable to show that defendants engaged in a pattern of racketeering activity.  (ECF No. 82-1, Sasmor Appeal Ex. 1.)  Sasmor further argues that discovery of the "entire scope of the Defendants' enterprises and patterns of racketeering activity" is necessary to determine an appropriate remedy in this case.  (*Id.* n.2.)

"The locus of the line between discovery reasonably calculated to lead to admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading."  *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989).  Here, the only allegation of bank fraud in the

12

amended complaint that could possibly relate to offers by defendants to purchase real property is the speculative assertion that "[d]efendants may operate an additional fraudulent scheme by which Defendants Louis Garcia and/or Kings County Realty Corp. conduct broker price opinions" that produce artificially low estimates for properties that other members of the alleged racketeering enterprise "may have been attempting to purchase through a short sale." (ECF No. 41, Am. Compl. ¶ 169.)

Sasmor has not met his burden of making a *prima facie* showing that the discovery sought is relevant. Plaintiffs' allegation that "[d]efendants *may* operate an additional fraudulent scheme" involving property that defendants "*may* have been attempting to purchase through a short sale," (*id.* (emphases added)), provides an insufficient basis on which to support what appears to be a fishing expedition. Given the clearly speculative nature of the allegations, Sasmor may not "use discovery to uncover evidence that might support an as yet unasserted . . . claim." *Palumbo v. Shulman*, No. 97 Civ. 4314, 1998 U.S. Dist. LEXIS 11467, at *15 (S.D.N.Y. July 24, 1998) ("Discovery is not to be used as 'a hunting license to conjure up a claim that does not exist.'" (quoting *Avnet, Inc. v. Am. Motorists Ins. Co.*, 115 F.R.D. 588, 592 (S.D.N.Y. 1987))); *accord Am. Commc'ns Ass'n. v. Ret. Plan for Emps. of RCA Corp.*,

488 F. Supp. 479, 484 (S.D.N.Y. 1980), *aff'd*, 646 F.2d 559 (2d. Cir. 1980).

Further, setting aside the issue of the sufficiency of plaintiffs' bank fraud claim in light of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and Federal Rule of Civil Procedure 9(b), which requires fraud claims to be pled with particularity, the court finds Sasmor's request to be overbroad.  The request is unrestricted as to location or type of property, and is not reasonably tailored to seek information that would support plaintiff's allegations of a possible scheme to purchase properties for which defendants supplied artificially low broker price opinions.[2]

Accordingly, Judge Orenstein's ruling denying Sasmor's request for discovery of offers to purchase real property and submissions made to banks in connection with such offers is affirmed because it is neither clearly erroneous nor contrary to law.

---

[2] To the extent that Sasmor seeks information regarding appraisals and broker price opinions prepared by defendants, he has sought and received such information from the Garcia Defendants through Interrogatory and Document Request No. 19 ("G19"), which asked the Garcia Defendants to "describe your work conducting appraisals, broker price opinions, and other real estate valuations . . . ."  (ECF No. 64-1, Requests to Garcia Defs. at 12.)  During the January 11, 2012 status conference, Judge Orenstein ordered the Garcia Defendants to certify that they had provided all information regarding appraisals and broker price opinions.  (*See* ECF No. 98, 1/11/2012 Tr. at 56-57.)

**B.    Tax Returns and Related Documents**

Second, Sasmor seeks to compel defendants to respond

to the portion of plaintiffs' Interrogatory and Document Request

No. 5 ("T5/G5/P5") asking defendants to:

> Provide the federal and state tax returns,
> including all attachments and W-2 and 1099
> and Schedule K-1 forms, for each of the last
> five (5) years for you and for every trust,
> corporation, LLC, partnership, or entity
> that you identified in Interrogatory No. 3
> above, and identify who prepared each of
> these tax returns.

(ECF No. 57-1, Requests to Trust Defs. at 6; ECF No. 64-1,

Requests to Garcia Defs. at 6; ECF No. 64-2, Requests to People

Choice Defs. at 6; *see also* ECF No. 82-2, Sasmor Appeal Ex. 2.)

At the January 11, 2012 status conference, Sasmor

asserted that he sought defendants' W-2 and 1099 tax forms

because they would show "what rental income, if any, is being

reported on the tax returns" and would allow him "to trace who

was paying for these investments." (ECF No. 98, 1/11/2012 Tr.

at 19.) Sasmor argued that the statement of defendants' wages

set forth on their W-2 forms "may go towards the distribution .

. . of the rental income" by, for example, showing whether one

defendant paid the proceeds of its rental income to another

defendant. (*Id.* at 20.) Sasmor acknowledged, however, that W-2

forms would not show that any individual received the proceeds

of a particular check, but rather "would show whether [the

15

individual] received income in general." (*Id.* at 20-21.)
Sasmor also argued that a 1099 form issued by a bank to one of
the defendants would "help [plaintiffs] identify the financial
accounts." (*Id.* at 21.)  In response to an inquiry from Judge
Orenstein, Sasmor confirmed that he sought only the amount of
rental income reflected on defendants' tax returns.   (*Id.* at
22.)

Judge Orenstein ordered all defendants to "[p]rovide
[Sasmor] with a redacted version [of each defendant's 2009 and
2010 tax returns] that redacts everything but the line for
rental income . . . ." (*Id.* at 22; *see also id.* at 49 (ordering
Garcia and People Choice Defendants to produce "everything
except the tax returns, W-2's and 1099's, with the exception
that you provide the tax returns redacted for everything but
rental income.").)  Judge Orenstein denied Sasmor's request for
production of defendants' 1099 forms (*id.* at 21-22, 49), but
ordered defendants simply to "[i]dentify the bank accounts" and
advised Sasmor that he could subpoena records from those banks
(*id.* at 23-24; *see also id.* at 49 (ordering Garcia and People
Choice Defendants to "[i]dentify all the [financial]
accounts")).

In the instant appeal, Sasmor seeks discovery of any
portion of defendants' federal and state tax returns that are
"relevant to reporting and tracing income from rental real

16

estate, or items such as management fees derived from rental
real estate income, not only line 17 of federal form 1040."
(ECF No. 82-2, Sasmor Appeal Ex. 2.)  In particular, Sasmor
seeks, *inter alia*, the portions of defendants' tax returns
related to dividend distributions, business income or loss,
capital gain income, and any supporting schedules.[3]  (*Id.*)
Sasmor also seeks discovery of the third party designee, the
sworn taxpayer certification, and the paid preparer information.[4]
(*Id.*)

Sasmor argues that defendants' tax returns are
relevant to the alleged predicate acts of mail fraud and money
laundering "involving false reporting and/or laundering of
income from rental real estate."  (*Id.* n.1.)  He also states
that evidence of defendants' alleged "submission of false income
statements and evasion of income reporting could not be obtained
other than by the tax documents themselves."  (*Id.*)

"Although tax returns are not privileged documents,
Court[s] are reluctant to order their discovery in part because
of the 'private nature of the sensitive information contained

---

[3] From the "individual Defendants," Sasmor seeks "redacted 2009 and 2010
federal tax returns showing at least lines 7, 9a, 9b, 12, 13, 14, 17, and 21
and all Forms, Schedules and lists provided to support the responses to those
lines, as well as the corresponding information from state tax returns."
(ECF No. 82-2, Sasmor Appeal Ex. 2.)  From the "entity Defendants," Sasmor
seeks "full federal and state tax returns, as well as the W-2, 1099, and K-1
forms that they issued, all for 2009 and 2010." (*Id.*)

[4] Sasmor refers to these portions as the "Third Party Designee," "Sign Here,"
and "Paid Preparer Use Only" sections of the tax returns.  (ECF No. 82-2,
Sasmor Appeal Ex. 2.)

therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" *Chen v. Republic Rest. Corp.*, No. 07 Civ. 3307, 2008 U.S. Dist. LEXIS 24000, at *4 (S.D.N.Y. Mar. 26, 2008) (citing *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y. 1979)).  In order to reconcile privacy concerns with liberal pretrial discovery, tax returns typically are subject to compelled production in civil cases only upon a two-part showing:  "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not 'otherwise readily obtainable.'"  *Carmody v. Vill. of Rockville Centre*, No. 05-CV-4907, 2007 U.S. Dist. LEXIS 50933, at *2 (E.D.N.Y. July 13, 2007) (quoting *United States v. Bonanno Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)); *accord Ellis v. City of New York,* 243 F.R.D. 109, 111-12 (S.D.N.Y. 2007) ("The standard for ordering disclosure [of tax returns] is two-part; the moving party must demonstrate that 1) the returns are relevant to the subject matter of the action and 2) a compelling need for the information.").

        Sasmor has failed to articulate any reason that additional portions of defendants' tax returns, supporting schedules, and W-2 and 1099 forms are relevant to proving the claims or defenses asserted, let alone a compelling need for disclosure of those confidential documents.  Insofar as

plaintiffs allege that defendants "filled out annual tax returns in which they did not claim rents collected as income . . ." (ECF No. 41, Am. Compl. ¶ 151), Judge Orenstein's order directing the defendants to provide tax returns that redact everything but the line for rental income is appropriately tailored to provide Sasmor with the relevant information needed to pursue his claim.  Indeed, Sasmor could have sought the information regarding the amount of rental income through an interrogatory.  Further, Judge Orenstein directed defendants to identify their bank accounts so that Sasmor can subpoena the banks for defendants' account information, which will reflect any other income defendants received.

        For the foregoing reasons, ordering production of the documents sought by Sasmor would be duplicative, overly burdensome, and an unwarranted intrusion into the defendants' privacy.  Accordingly, Judge Orenstein's ruling denying Sasmor's motion to compel the production of defendants' tax-related documents, other than the line for rental income, is neither clearly erroneous nor contrary to law, and is affirmed.

        To the extent that defendants have not already provided the identity of their tax preparers, such information may lead to the discovery of admissible evidence relevant to the claims or defenses in this case.  Accordingly, defendants are

directed to identify the names and addresses of individuals

involved in the preparation of defendants' tax returns.

**C.   Other Persons Involved in Certain Entities**

Third, Sasmor seeks to compel the Trust Defendants to

supplement under oath their response to the following request:

> For the trusts, corporations, and LLCs you
> already identified (Ronald Henry Land Trust,
> Henry Management, LLC, and 65 2B Management
> Inc.), identify all other persons involved
> in each now or in the last three (3) years,
> the nature of their involvement, and the
> commencement and termination dates of their
> involvement.[5]

(ECF No. 82-3, Sasmor Appeal Ex. 3 n.4.)

During the January 11, 2012 status conference, counsel

for the Trust Defendants asserted that he had disclosed all of

---

[5] This request is a narrowed version of plaintiffs' original Interrogatory and
Document Request No. 3 to the Trust Defendants ("T3"), which stated:

> Identify every trust, corporation, LLC, partnership,
> or entity of which, now or in the last five (5)
> years, you were a trustee, beneficiary, officer,
> director, manager, member, partner, employee, agent,
> attorney-in-fact, independent contractor,
> stockholder, or incorporator, or of which you were
> involved in the operation or management in any other
> way; describe your involvement in each and the dates
> of your involvement; the reasons for the commencement
> and termination of your involvement in each; identify
> all other persons involved in each now or in the last
> five (5) years, the nature of their involvement, and
> the commencement and termination dates of their
> involvement; identify the business and financial
> records kept by each and the tax identification
> identification [sic] numbers for each; provide the
> formation documents or formation agreement for each;
> provide any assignment, certificate, or documentation
> of legal or beneficial interest for each; and
> identify the chain of custody for each document
> provided starting from its creation and including the
> person currently in custody of each document.

(ECF No. 57-1, Requests to Trust Defs. at 5.)

the members of the identified trusts, corporations, and LLCs since 2009.  (ECF No. 98, 1/11/2012 Tr. at 12-13.)  Sasmor replied that he suspected that counsel for the Trust Defendants "knows more now . . . than he did at the previous meeting." (*Id.* at 13.)  Judge Orenstein concluded that there was no need to compel further disclosure, and directed Sasmor to serve subpoenas on or depose the individuals already identified in order to obtain any additional information sought in response to his request.  (*Id.* at 13-14.)

Sasmor now appeals Judge Orenstein's ruling, arguing that the Trust Defendants' attorney's statement that he had disclosed all of the individuals involved in any of the identified entities during the last three years is insufficient because the statement was not made under oath.  (ECF No. 82-3, Sasmor Appeal Ex. 3.)

Federal Rule of Civil Procedure 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  The oath requirement applicable to interrogatories has legal significance, and courts have routinely refused to consider interrogatories that do not comport with that mandate.  *See, e.g.*, *Miroglio S.P.A. v. Conway Stores, Inc.*, No. 05 Civ. 00121, 2008 U.S. Dist. LEXIS 81755, at *17-18 (S.D.N.Y. Oct. 15, 2008) (finding signed interrogatory

21

responses inadmissible at trial because they were not sworn to under oath); *see also Cabales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970), *aff'd*, 447 F.2d 1358 (2d Cir. 1971) (finding that an unsigned, unverified writing purporting to be plaintiff's answer did not qualify as an answer under Rule 33); *Trueman v. N.Y. State Canal Corp*., No. 09-CV-049, 2010 U.S. Dist. LEXIS 16430, at *15-16 (N.D.N.Y. Feb. 24, 2010) (finding interrogatory responses signed by attorney to be improper and affirming that "the answer must remain the party's and not the attorney's").

In addition, a party that has responded to an interrogatory or document request is obligated to supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

In this instance, the Trust Defendants' response to plaintiffs' interrogatory, provided at the January 11, 2012 status conference, was not given under oath. Accordingly, the Trust Defendants are directed to identify, in the form of an amended verified response to interrogatories or other writing under oath, all other persons involved in the Ronald Henry Land

Trust, Henry Management, LLC, and 65 2B Management, Inc., now or in the last three years, the nature of their involvement, and the commencement and termination dates of their involvement in those entities.

### D.    Categories of Business Records

Fourth, Sasmor seeks to compel all defendants to respond to T5/G5/P5, narrowed as follows:

> Identify by category all the types of documents or records that you keep in the ordinary course of business and that each of the trusts and entities identified in response to [Interrogatory] No. 3 keep in the ordinary course of business, and also identify the location of each of those documents and records and in whose custody they are kept.[6]

(ECF No. 82-3, Sasmor Appeal Ex. 3 n.1.)

Based on the court's review of the transcript of the January 11, 2012 status conference, it appears that there may have been some miscommunication between Sasmor and Judge Orenstein as to what was being sought and what was ruled upon during that conference.  Specifically, Judge Orenstein appears to have denied Sasmor's request, set forth in T3/G3/P3, asking

---

[6] Plaintiffs' original T5/G5/P5 stated, in relevant part:

> Identify all documents or records of any type or form that are kept in the ordinary course of business by you and by every trust, corporation, LLC, partnership, or entity that you identified in Interrogatory No. 3 above, and also identify the location of each of those documents or records and in whose custody they are kept.

(ECF No. 57-1, Requests to Trust Defs. at 6; ECF No. 64-1, Requests to Garcia Defs. at 5-6; ECF No. 64-2, Requests to People Choice Defs. at 5-6.)

defendants to "identify the business and financial records kept"
by each trust, corporation, LLC, partnership, or entity in which
any of the defendants was involved, "provide the formation
documents or formation agreement" for each entity, "provide any
assignment, certificate or documentation of legal or beneficial
interest" for each entity, and "identify the chain of custody
for each document provided." (ECF No. 57-1, Requests to Trust
Defs. at 5; ECF No. 64-1, Requests to Garcia Defs. at 5; ECF No.
64-2, Requests to People Choice Defs. at 5; *see* ECF No. 98,
1/11/2012 Tr. at 14-15.) Although Sasmor asserted that he
sought only the "categories of records" kept, as Judge Orenstein
noted, that limitation did not appear in T3/G3/P3. (ECF No. 98,
1/11/2012 Tr. at 14-15.)

In the instant appeal, Sasmor seeks to compel
defendants to respond to T5/G5/P5, as narrowed above. Although
it is generally appropriate for a district court to refer the
parties to the magistrate judge to decide discovery disputes
that have not been addressed by the magistrate judge, because
Sasmor's objection was made and denied in his motion for
reconsideration, (*see* ECF No. 76-3, Sasmor Motion for
Reconsideration Ex. 3; Order dated 2/3/2012), the court rules on
Sasmor's request as follows. The court finds that Sasmor's
request for defendants to "[i]dentify by category all the types
of documents or records that [they] keep in the ordinary course

24

of business" is overbroad, unreasonably vague, and unduly
burdensome.   As framed, the request is unlimited by time,
location, or subject matter, and is not tailored to seek
evidence relevant to plaintiffs' claims.

Sasmor's argument that "documents must be identified
and provided before depositions to enable preparation of
questions about those documents" (ECF No. 82-3, Sasmor Appeal
Ex. E), belies his assertion that he seeks only the
identification of categories of documents and not the documents
themselves.   Further, Sasmor's stated need for information
regarding "Defendants' regular way of conducting business"
(*id.*), would be readily and more efficiently met by serving a
deposition notice or subpoena, pursuant to Federal Rule of Civil
Procedure 30(b)(6), seeking to depose the individuals involved
in defendants' business operations.

Accordingly, the court affirms Judge Orenstein's
discovery ruling denying Sasmor's motion to compel a further
response because it is neither clearly erroneous nor contrary to
law.

**E.    Relationships Between the Defendants and Grand Rabbi
        Moses Teitelbaum or Garcia Iron Works, Inc.**

Fifth, Sasmor seeks to compel defendants to respond to
plaintiffs' Interrogatory and Document Request No. 4
("T4/G4/P4"), narrowed as follows:

Are more than one of the defendants connected because of being relatives of the late Grand Rabbi Moses Teitelbaum?  If so, please list all Defendants that are relatives of Grand Rabbi Teitelbaum and describe the connection.[7]

(ECF No. 82-4, Sasmor Appeal Ex. 4 n.2.)  The Trust Defendants objected to T4 in its entirety, asserting that it was anti-Semitic in nature, overbroad, and irrelevant.  (ECF No. 70-1, [Trust Defendants'] Responses to Plaintiffs' First Set of Interrogatories & Document Demands, dated 12/30/2011 ("Trust Defs. Response") at 11.)  The Garcia and People Choice Defendants responded to G4/P4 that they "d[id] not know the answer and d[id] not understand the question."  (ECF No. 64-3, Garcia Defs. Unexecuted Draft Responses ¶ 4; ECF No. 64-4, People Choice Defs. Unexecuted Draft Responses ¶ 4.)

In addition, Sasmor seeks to compel the Garcia and People Choice Defendants to respond to plaintiffs' Interrogatory and Document Request No. 20 to the Garcia Defendants ("G20") and Interrogatory and Document Request No. 16 to the People Choice Defendants ("P16") asking them to:

---

[7] Plaintiffs' original T4/G4/P4 stated:

Identify every Defendant in this case who is a relative or descendant by blood or by marriage within six degrees of consanguinity of the late Grand Rabbi Moses Teitelbaum, and describe that person's relationship to the late Grand Rabbi Moses Teitelbaum.  For each of the 17 Defendants, please identify his affiliation or relationship with either or both of the two sons of the late Grand Rabbi Moses Teitelbaum known as Rabbi Aaron Teitelbaum and Rabbi Zalman Teitelbaum.

(ECF No. 57-1, Requests to Trust Defs. at 5; ECF No. 64-1, Requests to Garcia Defs. at 5; ECF No. 64-2, Requests to People Choice Defs. at 5.)

> Identify all persons you know (including yourself, any
> of the Defendants, and any other persons) who have
> operated, managed, been employed by, worked at
> contracted with, purchased from, or otherwise
> conducted business with Garcia Iron Works, Inc.,
> formerly located at 56 Franklin Avenue, Brooklyn, NY.
> For each such person, state the nature of that
> person's involvement with Garcia Iron Works, Inc.[8]

(ECF No. 82-4, Sasmor Appeal Ex. 4 n.2; ECF No. 64-1, Requests

to Garcia Defs. at 12; ECF No. 64-2, Requests to People Choice

Defs. at 10.)  The Garcia and People Choice Defendants initially

objected to G20 and P16 "as constituting harassment and not

designed or likely to lead to relevant information."  (ECF No.

64-3, Garcia Defs. Unexecuted Draft Responses ¶ 20; ECF No. 64-

4, People Choice Defs. Unexecuted Draft Responses ¶ 16.)

Further, at the January 11, 2012 status conference, counsel for

the Garcia and People Choice Defendants stated, "[t]here's no

relation between any of the defendants and Garcia Ironworks."

(ECF No. 98, 1/11/2012 Tr. at 58.)

Judge Orenstein denied both requests as to all

defendants.  (*See id.* at 16-17 (stating that Sasmor's attempt to

link defendants with Rabbi Moses Teitelbaum is a "fishing

expedition"); *id.* at 49 (stating that G4/P4 was denied); *id.* at

58-59 (noting that Sasmor's attempt to link defendants to Garcia

---

[8] This request was also served on the Trust Defendants as Interrogatory and
Document Request No. 19 ("T19").  (*See* ECF No. 57-1, Requests to Trust Defs.
at 12.)  The Trust Defendants responded that they "have no knowledge of
Garcia Iron Works Inc." (ECF No. 70-1, Trust Defs. Response at 21.)  Sasmor
appears to have been satisfied with that response, as the instant appeal only
seeks responses from the Garcia and People Choice Defendants.  (*See* ECF No.
82-4, Sasmor Appeal Ex. 4.)

Iron Works is "precisely the sort of flight of fancy reasoning that I'm just strongly urging you to reconsider").)

In the instant appeal, Sasmor asserts that "[p]ossible common family relationships to the esteemed late Grand Rabbi and a possible family business, Garcia Iron Works, Inc., . . . provide reasonable lines of inquiry into the relationships amongst the Defendants" and that he should be afforded "the opportunity to use every thread to weave the fabric of the enterprise." (ECF No. 82-4, Sasmor Appeal Ex. 4.) Sasmor further states, "[o]f course, if there is no relationship, the Defendants simply may say so in their responses . . . ." (*Id.*)

Notwithstanding Sasmor's assertion that he should not be precluded from discovery of "facts underlying his opponent's case" (*id.*), Sasmor has failed to satisfy his burden of "showing that the discovery sought is more than merely a fishing expedition." *Evans*, 1994 U.S. Dist. LEXIS 6187, at *1. He has not presented any evidence or other reasonable basis to believe that there might be any connection between any of the defendants and Rabbi Teitelbaum or Garcia Iron Works, Inc., or that such a connection would be relevant to the claims or defenses in this case. Rather, Sasmor appears to concede that his request is based on pure speculation that there may exist some familial ties among the defendants and Rabbi Teitelbaum or Garcia Iron Works, Inc. This is plainly insufficient under Rule 26. *See,*

28

*e.g.*, *Tottenham*, 2002 U.S. Dist. LEXIS 11313, at *4 ("Discovery requests cannot be based on pure speculation or conjecture."); *Tucker v. Am. Int'l Group, Inc.*, No. 3:09-CV-1499, 2012 U.S. Dist. LEXIS 35374, at *31 (D. Conn. Mar. 15, 2012) (denying motion to compel inspection of computer records where the "Plaintiff concedes that she speculates, rather than knows of, the existence of the emails she seeks in her proposed inspection" and "the likelihood of finding the information sought remains in doubt").

Accordingly, Judge Orenstein's ruling denying Sasmor's motion to compel a response to his inquiries regarding defendants' connections to the late Grand Rabbi Moses Teitelbaum and Garcia Iron Works, Inc. is not clearly erroneous or contrary to law, and is therefore affirmed.

**F. Documents Relating to the Conveyance of 287 Franklin Avenue to the Ronald Henry Land Trust**

Sixth, Sasmor seeks to compel the Trust Defendants to respond to Interrogatory and Document Request No. 15 ("T15"), which provides:

> For the deed granting 287 Franklin Avenue from Ronald Henry to Ronald Henry Land Trust . . . , the "Agreement and Declaration of Trust — Ronald Henry Land Trust" . . . and the "Assignment of Beneficial Interest in Land Trust" . . . , identify who wrote or prepared each document, the chain of custody for each document starting from its creation and including the person currently in custody of each document, who originally

29

> suggested the idea to prepare and the format
> of each of these documents, who originally
> suggested deeding 287 Franklin Avenue to
> Ronald Henry Land Trust, who was involved in
> the preparation, discussion, and decision to
> execute the three documents, and what was
> the purpose of the conveyance of 287
> Franklin Avenue to Ronald Henry Land Trust.[9]

(ECF No. 82-5, Sasmor Appeal Ex. 5 n.1; ECF No. 57-1, Requests

to Trust Defs. at 10.)  The Trust Defendants objected to T15 as

violating "the protections defined by the Federal Rules of

Evidence Rule 502(g), work product protection as defined by

Federal Rules of Evidence Rule 502(g) or which is otherwise

privileged." (ECF No. 70-1, Trust Defs. Response at 19.)  The

Trust Defendants nevertheless responded that "[u]pon information

and belief, Ephraim Frenkel prepared the documents.  Defendants

have no knowledge of the chain of custody." (*Id.*)

At the January 11, 2012 status conference, Sasmor

stated that "the main thing we're looking for is, who has [the

trust agreement] now?" (ECF No. 98, 1/11/2012 Tr. at 35.)

Judge Orenstein confirmed that Sasmor was not trying to

---

[9] Plaintiffs also sought this information from the Garcia Defendants, as
Interrogatory and Document Request No. 16 ("G16"), and from the People Choice
Defendants, as Interrogatory and Document Request No. 13 ("P13"). (*See* ECF
No. 64-1, Requests to Garcia Defs. at 10; ECF No. 64-2, Requests to People
Choice Defs. at 9.)  During the January 11, 2012 status conference, Judge
Orenstein ordered the Garcia and People Choice Defendants to provide the
requested information "item by item, here's what we have, here's what we
don't have, here's what we don't have anything about." (ECF No. 98,
1/11/2012 Tr. at 56.)  The Garcia and People Choice Defendants objected that
"many of these questions are very broad and again goes back to the fishing
expedition and so forth." (*Id.*)  Judge Orenstein agreed, but stated that he
would not explore the issue further because the defendants had not "done
something about it in a timely manner." (*Id.*)

determine the full chain of custody, but rather "what happened
to [the trust agreement] — who had it among the defendants and
what did they do with it? . . . . How did they dispose of it?"
(*Id.* at 37.)  Judge Orenstein ordered the Trust Defendants to
certify who currently has custody of the trust agreement.  (*Id.*
at 36-37.)  Sasmor did not request any further response to T15,
and Judge Orenstein did not address any other portion of the
request.  Contrary to the Trust Defendants' representations (*see*
ECF No. 88, [Trust Defendants'] Reply in Opposition to Sasmor's
Objections to Magistrate's Orders, filed 3/5/2012, at 7), Judge
Orenstein did not specifically address the attorney-client
privilege as it pertained to T15.

In the instant appeal, Sasmor argues that the Trust
Defendants' response, based "upon information and belief," is
insufficient.  (ECF No. 82-5, Sasmor Appeal Ex. 5.)  He also
argues that the Trust Defendants' "privilege objection to the
remainder of the interrogatory has been waived by failure to
provide a privilege log."  (*Id.*)  Sasmor further asserts that
"the details of individuals involved with the deed and [T]rust
[D]efendants are important to the choice and preparation of
depositions."  (*Id.*)

Although Judge Orenstein did not specifically address
the remainder of T15 during the January 11, 2012 status
conference, Sasmor did object regarding the individuals involved

in the deed and trust documents in his motion for reconsideration, (*see* ECF No. 76-5, Sasmor Motion for Reconsideration Ex. 5), which Judge Orenstein denied, (*see* Order dated 2/3/2012).  Therefore, the court considers Sasmor's request to have been denied and rules on the request as follows.

The court directs the Trust Defendants to supplement their response to T15, which was made "upon information and belief," by identifying, in writing under oath, the individual or individuals who negotiated and/or drafted the deed granting 287 Franklin Avenue from Ronald Henry to the Ronald Henry Land Trust, the agreement and declaration of trust, and the assignment of beneficial interest.  The additional information that Sasmor seeks, to the extent not privileged, including who originally suggested conveying 287 Franklin Avenue to the Ronald Henry Land Trust and the purpose of that conveyance, can be obtained more efficiently and appropriately during a deposition of the individual(s) who negotiated and/or drafted the deed, the trust agreement, and the assignment of beneficial interest. Accordingly, it was neither clearly erroneous nor contrary to law for Judge Orenstein to refuse to compel a further response to T15, and the remainder of Sasmor's request is denied.

G.   **Additional Document Requests**

Finally, Sasmor seeks to compel the Trust Defendants to respond to the document request portions of the following

requests, on which Sasmor claims Judge Orenstein did not

explicitly rule:

> Interrogatory and Document Request No. 9
> ("T9"): [. . . .] Please provide all
> documents in your possession, custody, or
> control related to 287 Franklin Avenue,
> including but not limited to leases with
> Plaintiffs or with Defendant Peter Henry,
> all other leases, financial records,
> receipts, check copies, deeds, trust
> documents, contracts, management agreements,
> letters, emails, and all other documents.
>
> Interrogatory and Document Request No. 10
> ("T10"): [. . . .] Please provide all
> documents in your possession, custody, or
> control related to 175 Tompkins Avenue,
> including but not limited to leases,
> financial records, receipts, check copies,
> deeds, trust documents, contracts,
> management agreements, letters, emails, and
> all other documents.
>
> Interrogatory and Document Request No. 11
> ("T11"): [. . . .] Please provide all
> documents in your possession, custody, or
> control related to each agreement [between
> any of the other defendants and defendant
> Ronald Henry] and each payment [of cash or
> other valuable consideration to or from
> defendant Ronald Henry], including but not
> limited to any written agreement, any papers
> signed by Ronald Henry, and any check
> copies, receipts, or bank records related to
> the payments.
>
> Interrogatory and Document Request No. 14
> ("T14"): [. . . .] Please provide receipts,
> check copies, bills, statements, and any
> other documents in your possession, custody,
> or control showing payments or concerning
> arrangements made for utilities, taxes, and
> violations at 287 Franklin Avenue.
>
> Interrogatory and Document Request No. 18
> ("T18"): [. . . .] Please provide . . . any

33

> other written agreement, receipt, check
> copy, paper, correspondence, email, or other
> document signed by Peter Henry or concerning
> Peter Henry.

(ECF No. 82-6, Sasmor Appeal Ex. 6 n.1; ECF No. 57-1, Requests

to Trust Defs. at 8-11.)

Contrary to Sasmor's assertion, it appears that Judge

Orenstein did rule on T9 at the January 11, 2012 status

conference.  Specifically, Sasmor stated that he sought a copy

of a lease between the Ronald Henry Land Trust and Peter Henry.

(ECF No. 98, 1/11/2012 Tr. at 28-29.)  In response, counsel for

the Trust Defendants stated that he was "not aware of any lease

between the trust and Peter Henry."  (*Id.* at 29.)  Judge

Orenstein ordered the Trust Defendants to "[p]rovide an

affidavit from a person who has knowledge of that possible lease

to describe the circumstances."  (*Id.*)  Sasmor acknowledged that

the requests in T9 "seem to be similar to the sort of things

that your Honor said would be sought in deposition, so I do

still seek those."  (*Id.* at 30.)  Judge Orenstein stated that he

was "not going to compel anything beyond an affidavit concerning

the Peter Henry possible lease and information about rent

payments to the defendants."  (*Id.*)

With respect to T10, Sasmor also acknowledged that

"maybe this would be better for depositions, again without

waiving what I requested."  (*Id.* at 31.)  Judge Orenstein agreed

and denied further relief as to T10.  (*Id.*)  Sasmor did not expressly pursue the production of any documents in response to T10.

With respect to T11, Sasmor stated that defendants had provided one agreement regarding payment of cash or valuable consideration to or from defendant Ronald Henry, but had not responded to the other portions of the request.  (*Id.* at 32; *see* ECF No. 70-1, Trust Defs. Response at 17.)  Counsel for the Trust Defendants agreed to "provide an affidavit that there's no other payment . . . [a]nd if there is another payment between Ronald Henry and my clients, we'll provide that information." (ECF No. 98, 1/11/2012 Tr. at 32.)  Sasmor did not pursue further his request for documents responsive to T11.  (*Id.*)

The Trust Defendants initially responded to T14 by asserting, "upon information and belief," that any property taxes were paid by the bank, utilities were paid by former tenants, and any fines assessed were being contested and had not been paid.  (ECF No. 70-1, Trust Defs. Response at 18.)  At the January 11, 2012 status conference, Sasmor objected to the Trust Defendants' response insofar as it was made "upon information and belief."  (ECF No. 98, 1/11/2012 Tr. at 33.)  Judge Orenstein ordered the Trust Defendants to clarify their response by striking the "upon information and belief" language and replacing it with a declarative sentence or supplementing the

information provided.  (*Id.*)  Sasmor did not raise any further objections or request any additional information in response to T14.

Similarly, Sasmor noted with respect to T18 that "[m]ost of the response is upon information and belief, but without saying what that is." (*Id.* at 40.)  Judge Orenstein ordered the Trust Defendants to clarify the basis for their information and belief and denied any further relief on T18. (*Id.* at 40-41.)

Sasmor seeks an order to compel discovery in response to T9, T10, T11, T14, and T18, arguing that "[i]t was clearly erroneous or contrary to law not to make any ruling and thereby de facto to deny certain document requests that were appended to interrogatories, because, although further inquiry in the interrogatories was reserved for depositions, the documents cannot be obtained except by document requests." (ECF No. 82, Sasmor Appeal at 2.)

Sasmor has failed to identify any error in Judge Orenstein's rulings with respect to T9, T10, T11, T14, and T18. As reflected in the transcript of the January 11, 2012 status conference, Judge Orenstein discussed each request one-by-one and offered Sasmor an opportunity to articulate what discovery he continued to seek and why.  To the extent that Sasmor did not specifically raise the document request portions during the

conference, his objections to defendants' responses and Judge
Orenstein's rulings regarding those requests may be deemed
waived.  Nevertheless, because Sasmor raised these objections in
his motion for reconsideration, (*see* ECF No. 76-6, Sasmor Motion
for Reconsideration Ex. 6), which Judge Orenstein denied, (*see*
Order dated 2/3/2012), the court considers the document requests
to have been denied and therefore rules as follows.

The requests in T9, T10, T11, T14, and T18 are
unlimited in time, location, and subject matter, and are not
reasonably calculated to lead to relevant, let alone admissible
evidence.  Accordingly, Judge Orenstein's rulings are affirmed
as to these requests because they were neither clearly erroneous
nor contrary to law.

<u>CONCLUSION</u>

For the foregoing reasons, Sasmor's appeal of Judge
Orenstein's discovery rulings is granted in part and denied in
part, as follows: (i) by June 7, 2012, all defendants shall
identify, in writing under oath, the individual(s) involved in
the preparation of defendants' tax returns; (ii) by June 7,
2012, the Trust Defendants shall identify, in writing under
oath, all other persons involved in the Ronald Henry Land Trust,
Henry Management, LLC, and 65 2B Management, Inc., now or in the
last three years, the nature of their involvement, and the
commencement and termination dates of their involvement in those

37

entities; (iii) by June 7, 2012, the Trust Defendants shall

identify, in writing under oath, the individual(s) who

negotiated and/or drafted the deed granting 287 Franklin Avenue

from Ronald Henry to the Ronald Henry Land Trust, the agreement

and declaration of trust, and the assignment of beneficial

interest; and (iv) all other rulings made by Judge Orenstein

during the status conference on January 11, 2012 are affirmed.

Counsel for the Trust Defendants shall serve a copy of

the instant Memorandum and Order on Jon Sasmor and file a

certificate of service on ECF by May 25, 2012.


**SO ORDERED.**

Dated: May 24, 2012
       Brooklyn, New York

                                    _____/s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York