March 25, 2013

Hon. James Orenstein, U.S.M.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: <u>287 Franklin Avenue Residents' Association, et al. v. Meisels, et al.</u>
    Docket No. 11-CV-976 (KAM) (JO)

Dear Judge Orenstein:

  I am one of the Plaintiffs, *pro se*.  At least eight times since this case started, subsequently discovered evidence revealed that Defendant Isaac Teitelbaum ("Teitelbaum") gave false, incomplete, or evasive discovery responses.  In addition, Teitelbaum's counsel improperly instructed Teitelbaum not to answer deposition questions, and counsel also improperly answered deposition questions in lieu of his client.

- In Teitelbaum's interrogatory responses about his involvement in corporate entities and his involvement with 287 Franklin Avenue, Brooklyn, NY, Teitelbaum failed to disclose that he had incorporated "Franklin Empire Corp."  Teitelbaum's omission was discovered when OneWest Bank, FSB produced short sale papers and contracts related to 287 Franklin Avenue in which Isaac Teitelbaum was listed as "authorized signatory" on behalf of "Franklin Empire Corp."  When I requested to meet and confer about the newly discovered evidence, Teitelbaum and other Defendants thereafter provided "Land Trust Defendants' Supplemental Responses Regarding Franklin Empire Corp."

- In Teitelbaum's interrogatory responses about his telephone numbers, he failed to disclose that he had a different primary cell phone number before April 2010.  *See* ECF 210 (pending motion to subpoena records for phone number that Teitelbaum failed to disclose).

- In Teitelbaum's January 4, 2012 interrogatory responses, he described himself as "tenant" at 237 Hooper Street, Brooklyn, NY.  ECF 70-1 at *6.  The ACRIS land records show that an earlier deed filed on September 1, 2011, Exhibit 1, granted this same property, 237 Hooper Street, to "Meilich TB Corp."[1] — and the signatures on behalf of "Meilich TB Corp.," Exhibit 1 at *6, *7, *8, *9, match Defendant Teitelbaum's signature, *e.g.* ECF 70-1 at *26.  Teitelbaum has not disclosed his involvement in "Meilich TB Corp."

- Teitelbaum testified at his January 22, 2013 deposition, Exhibit 2 (declaration containing deposition excerpts):[2] that he owns no properties, *id.* at *8, is not involved and has not

---

[1] According to www.yiddishdictionaryonline.com/ , מלך or "meylekh" translates to "king."  Thus "Meilich TB Corp." suggests an intended meaning of "King Teitelbaum Corporation."

[2] *See* 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2117 at 595 (3d ed. 2010) ("It is relatively clear that there is no requirement that a party who records a deposition by nonstenographic means need prepare a written transcription of the entire deposition even if it is to be used at trial; Rules 26(a)(3) and 32(c) only require transcription as to the portions to be used at trial, and Rule 32(c) expresses a preference for use of a nonstenographic version at trial, if it is available. Moreover, the written transcription thus prepared need not be 'official' in any sense; the Committee Note acknowledges that 'counsel often utilize their own personnel to prepare transcripts from audio or video tapes.'") (quoting Note to Rule 26(a)(3), 146 F.R.D. at 636);

been involved in any organization or corporation that owns property, *id.*, that he does not remember whether he has been an officer of a corporation, *id.*, and that he currently is not the officer of any corporation, *id.* at *9. The ACRIS land records show that <u>two days after Teitelbaum's deposition</u>, two deeds were filed with regard to 705 and 709 Fountain Avenue, Brooklyn, NY, granting both those properties to "BSD 1 Inc." Exhibits 3, 4.[3] The address listed for "BSD 1 Inc." is the same as that used by "Franklin Empire Corp." — 183 Wilson Street, Suite 356, Brooklyn, NY 11211. Moreover, the signatures on behalf of "BSD 1 Inc.," Exhibit 3 at *6, *7, *10, *12; Exhibit 4 at *6, *7, *10, *12, match Defendant Teitelbaum's signature, *e.g.* ECF 70-1 at *26. Though these two deeds, Exhibits 3 and 4, purportedly were executed respectively in May and June 2011, both were not recorded until January 24, 2013 — two days after Teitelbaum's deposition in this case.

- A mortgage from the land records of Berks County, PA, Exhibit 5, shows Isaac Teitelbaum as President of "212 South 8th Street, Ltd.," an entity that owned 212 South 8th Street, Reading, PA. The signature on the mortgage, Exhibit 5 at *7, matches Defendant Teitelbaum's, *e.g.* ECF 70-1 at *26. When I attempted to examine Teitelbaum at deposition about this signature page, Mr. Castellano instructed Teitelbaum not to answer. Exhibit 2 at *12. Without the benefit of the signature page, Teitelbaum testified that he did not remember if he was the president of "212 South 8th Street, Ltd." or otherwise involved with this PA property. *Id.* at *13.[4]

- In a written interrogatory response, Teitelbaum implied that he has "employment obligations managing various properties." *See* ECF 147-3 at *1, ¶ 3. Teitelbaum testified at deposition that he manages a small warehouse or garage with one tenant, Exhibit 2 at *1-4, that he earns $26,000 for his work managing that garage and for doing other things that he cannot remember, *id.* at *4-6, and that he previously did similar work for "Bobov," *id.* at *2. It is not credible that Teitelbaum does not remember what work he does for the $26,000. Teitelbaum also failed to include the specific properties at which he has worked in his written responses to an interrogatory that sought exactly such information. ECF 70-1 at *6. Moreover, my deposition inquiry into Defendant Teitelbaum's real estate industry experience was frustrated when Mr. Castellano, Teitelbaum's attorney, twice instructed Teitelbaum not to answer lines of questions about Teitelbaum's signatures on documents in land records, Exhibit 2 at *6-8, *12, and also when Mr. Castellano answered my questions about Teitelbaum's employment in lieu of Teitelbaum, *id.* at *4, *6.[5] [6]

---

*Jacobson v. Schwarzenegger,* 650 F.Supp.2d 1032, 1046-7 (C.D. Cal. 2009) (no requirement for neutral party to make transcripts; allowing transcripts prepared by plaintiff with assistance of his wife; accuracy of transcripts not in dispute).

[3] Like the deed purportedly conveying 287 Franklin Avenue to "Ronald Henry Land Trust," the 705 and 709 Fountain Avenue deeds, Exhibits 3 and 4, each lists a very low sale price ($15,000), each does not show Teitelbaum's name legibly anywhere on the deeds, and each relates to properties with pending foreclosure cases at the Supreme Court of the State of New York, County of Kings, *see LaSalle Bank N.A. v. Anthony Sylvester*, No. 1714/2007 (related to 705 Fountain Avenue); *U.S. Bank N.A. v. Anthony Sylvester*, No. 21571/2008 (related to 709 Fountain Avenue). Thus, the similarity in facts between the Fountain Avenue properties and 287 Franklin Avenue suggests that Teitelbaum may be involved in RICO predicate acts at the Fountain Avenue properties too — which might explain why the filing of the Fountain Avenue deeds was delayed until two days after Teitelbaum's deposition.

[4] The Reading, PA property has been certified as a "blighted property" by the City of Reading Blighted Property Review Committee. Exhibit 2 at *19, ¶ A.

2

- Teitelbaum convinced this Court that he required an interpreter at his deposition. ECF 192, ¶ 2. However, at deposition, Teitelbaum answered numerous questions directly in English, Exhibit 2 at *5, *9, *10, *11, *12, *13, conversed with his attorney in English, *id.* at *3, *12, and even understood and corrected the interpreter's translation when the interpreter might have missed nuances of Teitelbaum's response, *id.* at *3-4.[7]

- Furthermore, at deposition, Teitelbaum testified that he could not remember certain things that a person would be expected to remember, such as what he was asked to do in his employment, Exhibit 2 at *6, whether he went with another Defendant to look at properties, *id.* at *10, whether any of the people he knows in Monroe, NY also are named Isaac Teitelbaum, *id.* at *11, whether he ever has been an officer of a corporation, *id.* at *8, and whether he is an officer of a specific corporation in Pennsylvania, *id.* at *13.

Because of Teitelbaum's (and his counsel's) above described conduct, I am requesting additional discovery.

## Discussion

At trial, Teitelbaum may claim inexperience, mistake, oversight, or lack of intent with respect to the RICO predicate acts and deceptive consumer practices alleged in this case. Teitelbaum's prior experience with real estate — and with real-estate-related corporate entities — is relevant to show the intent, extent, and experience behind his widespread deceptive practices and racketeering activity. *See* Fed. R. Evid. 404(b)(2) (crimes, wrongs, or other acts admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Moreover, basic discovery about entities and real properties has been permitted by the Court, *see* ECF 98, 106, and Teitelbaum should not be allowed to evade discovery on these topics that the Court has permitted.

"When a witness refuses to answer a question during a deposition, the questioning party may subsequently move to compel disclosure of the testimony that it sought." *Balk v. N.Y. Inst. of Tech*, No. 11-CV-509 (JFB) (AKT) (E.D.N.Y. Nov. 19, 2012) (internal quotation marks and citations omitted) (compelling continuation of deposition). The Court may order a deponent to be "forthright and honest" at a reopened deposition. *SonoMedica, Inc. v. Mohler*, No. 1:08-cv-230 (GBL), 2009 WL 2371507, at *1 (E.D. Va. July 28, 2009). Thereafter, a deponent may face contempt for continuing failure to be "forthright and honest." *Id.* (holding deponents in civil contempt and also referring the case to the United States Attorney to investigate criminal contempt proceedings).

---

[5] Mr. Castellano justified his providing the deposition answers instead of Teitelbaum on the grounds that the question had been "asked and answered." However, I think that the earlier answered question related to a different area of inquiry (287 Franklin Avenue only) and that Mr. Castellano was answering questions about Teitelbaum's employment responsibilities for the first time. If I am mistaken, perhaps Mr. Castellano could point out the time in the recordings when those questions previously were asked and answered. *See also Taylor v. Pool Corp.*, No. 07-CV-1984 (D. Ariz. Oct. 23, 2008) ("'Asked and answered' is not an objection found in the Federal Rules of Evidence or the Federal Rules of Civil Procedure. If counsel believes that repetitive questioning rises to the level of harassment, counsel can seek relief pursuant to Rule 30(d)(3). Instructing a witness not to answer every time a question is asked twice is not appropriate under Rule 30(c)(2).") (compelling continuation of deposition).

[6] Mr. Castellano also may have attempted to reduce the amount of material that could be covered in Teitelbaum's deposition by repeatedly asking to slow the pace of the deposition. *See, e.g.*, Exhibit 2 at *2, *3, *5.

[7] Teitelbaum also corrected the interpreter's English on several additional occasions not included in the accompanying transcriptions.

3

Moreover, supplementation of written discovery is required: "(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

I met and conferred with Mr. Castellano, Mr. Illish, and Mr. Oliver by telephone conference on February 12, 2013, spoke with Mr. Castellano on the phone again about this matter on February 15, 2013, and communicated with Mr. Castellano thereafter by email. While initially it seemed that we might resolve this matter outside of Court, unfortunately, we were not able to do so.

Defendant Teitelbaum should not be allowed to succeed by lying and/or evading discovery about his multiple involvements in the real estate business and with corporate entities.

WHEREFORE, I respectfully request:

1. continued deposition of Defendant Isaac Teitelbaum,
2. supplemental responses to first set interrogatories T1, T3, and T20 regarding Teitelbaum's involvement with real properties and corporate entities,[8]
3. reinstatement of third set interrogatory T3 regarding properties managed by Teitelbaum,[9]
4. that Teitelbaum bear the costs of the notary and the interpreter for continued deposition,
5. that the Court order Teitelbaum to be forthright and honest in all further discovery,
6. and that the Court grant such other and further relief as it deems just and proper.

Thank you for your consideration.

Respectfully submitted,

/s/

Jon Sasmor, Plaintiff, *Pro Se*
287 Franklin Avenue
Brooklyn, NY 11205
(917) 318-2619
jonathan.sasmor@gmail.com

cc: Gideon Orion Oliver, Esq. (*via* ECF), David Lyle Stern, Esq. (*via* ECF),
Roy I. Martin, Esq. (*via* ECF), Carmine Joseph Castellano, Esq. (*via* ECF),
Marc Illish, Esq. (*via* ECF), Boris Kogan, Esq. (*via* ECF), Jonathan E. Cohen, Esq. (*via* ECF).

---

[8] *See* ECF 70-1 at *5-6, *10-11, *21-22 (prior responses to First Set Interrogatories T1, T3, and T20). I now seek supplemental responses to First Set Interrogatories T1, T3, and T20 only to the same extent that such discovery previously was permitted and compelled by the Court. *See* ECF 98, 106.

[9] *See* ECF 147-3 at *1, ¶ 3 (Third Set Interrogatory T3); ECF 173, ¶ 1 (quashing this interrogatory and other discovery without prejudice to move to reinstate after the parties conducted depositions).