```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
287 FRANKLIN AVENUE                                          REPORT AND
RESIDENTS' ASSOCIATION, et al.,                              RECOMMENDATION
                            Plaintiffs,
              - against -                                    11-CV-0976 (KAM) (JO)
CHAIM MEISELS, et al.,
                            Defendants.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

The plaintiffs in this action, five individuals who formerly resided at 287 Franklin Avenue, Brooklyn, New York ("287 Franklin"), together with their residents' association, assert a variety of claims under both state law and the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act. *See* Docket Entry ("DE") 41 (First Amended Complaint) ("Complaint"); 18 U.S.C. § 1961, *et seq.*. Some defendants have defaulted or been dismissed,[1] and those remaining now seek summary judgment in their favor (and also, as discussed below, dismissal for failure to state a claim). DE 285; DE 296; DE 309. Plaintiff Jon Sasmor, appearing *pro se*, similarly seeks partial summary judgment in his favor. DE 274.[2] Upon a referral from the Honorable Kiyo A. Matsumoto, United States District Judge (*see* Orders dated November 5, 2013, & April 23, 2015), I now make this report and, for the reasons set forth below, respectfully recommend that the court dismiss the plaintiffs' RICO claims for failure to establish a cognizable injury and decline to exercise jurisdiction over the remaining state law claims.

---

[1] Defendants Chaim Meisels, Samuel Emmanus, Peter Henry, and Brian Dudjak all failed to answer the Complaint. *See* Clerk's Entry of Default dated April 12, 2011; DE 20; DE 26; DE 93. The court struck the answer of defendants Nathan Smith, Josh Bosch, and People Choice Real Estate, LLC (collectively, the "Realtor Defendants") after they repeatedly failed to discharge their discovery and other obligations. *See* DE 146. The plaintiffs voluntarily dismissed their claims against defendants Joe Doe and Ronald Henry. DE 198; DE 199.

[2] Plaintiffs 287 Franklin Avenue Residents' Association, Lisa Lin, William Osterweil, Kurt Fletcher, and Vilija Skubutyte (collectively, the "Represented Plaintiffs") are all represented by the same attorney; none has moved for dispositive relief. As a convenient shorthand, I will refer below to each individual party (other than Ronald Henry and Peter Henry) by his or her surname.

I.  Background

    A.    Facts

        1.    Local Civil Rule 56.1 Statements

Before summarizing the relevant facts that inform my analysis of the pending motions, I pause to clarify the source of those facts. Pursuant to Local Civil Rule 56.1, a party seeking summary judgment shall include a "short and concise statement" of material facts in separate numbered paragraphs with its motion as to which it contends that there is no genuine issue to be tried.[3] An opposing party must likewise respond to each statement of the moving party in a correspondingly numbered paragraph. Both the statement of material facts and the counterstatement must include citations to admissible evidence. Material facts uncontroverted by the opposing party will be deemed admitted for purposes of the motion. *See* Local Civ. R. 56.1.

The original statements and counterstatements submitted by the various parties did not conform to the local rule. *See* DE 290; DE 290-2; DE 296-2; DE 297-1; DE 306; DE 310 at 1-5. At a conference on October 31, 2014, I discussed the problem with the parties and afforded them a second opportunity to comply. *See* DE 317 (minute entry). Even after that warning, two of the three groups of defendants who have sought relief and opposed Sasmor's motion – the Goldberger Defendants and the Garcia Defendants[4] – failed to submit counterstatements to Sasmor's motion

---

[3] A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

[4] As a convenient shorthand, I refer to the appearing defendants by the groups that share counsel and that have joined together in seeking summary judgment. The "Goldberger Defendants" include the company that manages the 287 Franklin property (defendant Henry Management, LLC) and its principal (defendant Chaim Goldberger); the "Trust Defendants" include the trust that is the property's record owner (defendant Ronald Henry Land Trust (the "Trust")) as well as two of its two trustees (defendants Isaac Teitelbaum and Abraham Schneebalg); the "Garcia Defendants" include the company that appraised the property (defendant Kings County Realty Corp.) and two of its employees (defendants Louis Garcia and Joel Kaufman).

2

that conform to the local rule. Specifically, the Goldberger Defendants have not cited admissible evidence controverting Sasmor's assertions, and the Garcia Defendants have failed to controvert Sasmor's assertions individually as required, choosing instead to object to groups of statements as hearsay, argumentative, or immaterial without indicating, in many cases, whether they disputed the substance of those factual assertions. *See* DE 324-1 to -2 ("Goldberger Counterstatement"); DE 331 ("Garcia Counterstatement").

Notwithstanding those lapses, however, Sasmor's factual proffers "cannot be deemed true simply by virtue of their assertion in a Local Civil Rule 56.1 statement." *See Holtz*, 258 F.3d at 73. In many instances, Sasmor characterizes legal conclusions as statements of material fact; in others, his factual assertions lack support in the record or are wholly irrelevant. *See, e.g.*, DE 277 ("Sasmor Stmt.") ¶¶ 14-16 (concluding that Ronald Henry Land Trust is not a business trust, a trust formed by an employer for her employees, nor a trust created under a retirement plan); *id.* ¶ 72 (asserting that defendants "conspir[ed] to send the thug Peter Henry as a threatening imposter tenant"); *id.* ¶¶ 145-154 (describing facts relating to a "Sylvia Francis Land Trust" and a "Leon Jenkins Trust").

Accordingly, the parties have to a large extent left the court without any reliable statement of undisputed fact, which requires the court to review the record independently. *See Holtz*, 258 F.3d at 74 (where the record does not support the assertions in a Local Civil Rule 56.1 statement or counterstatement, "those assertions should be disregarded and the record reviewed independently"). The following factual summary is therefore based on my independent review of the record, supplemented where possible by the parties' properly supported statements or counterstatements of undisputed material facts.

        2.    <u>Summary</u>

The individual plaintiffs were all, at relevant times, residents of 287 Franklin. In addition to this lawsuit, the plaintiffs' residence in that building has also given rise to multiple eviction

proceedings in New York City Civil Court ("Housing Court") as well as a separate lawsuit that Sasmor filed in this court. *See Sasmor v. Powell*, 2013 WL 1335838 (E.D.N.Y. Mar. 31, 2013), *aff'd,* 554 F. App'x 67 (2d Cir. 2014); *Ronald Henry Land Trust v. Sasmor* ("*Trust v. Sasmor*"), 44 Misc. 3d 51 (N.Y. App. Div. June 13, 2014).[5] I assume the reader's familiarity with the published decisions in those matters, which provide a general factual background for some of the issues in dispute here. For purposes of analyzing the instant motions, however, I rely exclusively on the record in this case. The following summary of that record includes only those facts useful to an understanding of the pending motions; except where noted, those facts are undisputed.

287 Franklin was formerly a two-family home owned by Ronald Henry. *See* DE 278-3 (R. Henry deposition transcript) ("R. Henry Tr.") at 3. On May 8, 2009, a bank commenced foreclosure proceedings against Ronald Henry's mortgage on 287 Franklin. Sasmor Stmt. ¶ 1; DE 283-14 (copy of foreclosure proceeding docket). Within days, Ronald Henry – with the help of defendants Meisels, Teitelbaum, and Schneebalg, as well as defendant Garcia's price opinions – tried to avoid foreclosure by short-selling the property. Believing it necessary to enable the defendants to help him complete such a transaction, Ronald Henry executed a deed that conveyed 287 Franklin over to the Trust, and he signed a trust agreement appointing Teitelbaum and Schneebalg as trustees. *See* Sasmor Stmt. ¶¶ 2-3, 130; DE 325 ("Trust Counterstatement") ¶¶ 2-3; R. Henry Tr. 5-8, 10-11, 12-

---

[5] In *Sasmor v. Powell*, this court dismissed Sasmor's claims because of state court rulings that estopped him from alleging a cognizable property interest in 287 Franklin. After the affirmance of that dismissal on appeal, one of the underlying state court rulings was reversed, and this court reopened the case "for the limited purpose of considering the additional bases of the remaining defendants' previously submit[t]ed motions in determining the effect, if any, of the state appellate court's decision that the Ronald Henry Land Trust lacked the capacity to bring eviction proceedings against Jon Sasmor in state court." *See Sasmor v. Powell*, 11-CV-4645 (KAM) (JO), entry dated Jan. 16, 2015; *Sasmor v. Powell*, 2013 WL 1335838, at *3, *aff'd*, 554 F. App'x at 68; *Trust v. Sasmor*, 44 Misc. 3d at 52. Concurrently with this Report and Recommendation, I am submitting a separate Report and Recommendation in *Sasmor v. Powell* urging the court to adhere to its order of dismissal because no finding of estoppel is required for the court to determine that Sasmor lacks any cognizable property interest in 287 Franklin.

13, 18; DE 307-2 ("Garcia Stmt.") ¶ 3; DE 309 at 97-101 (Garcia Defendants' interrogatory responses) ¶ 9; DE 283-15 (transfer of mortgage from Ronald Henry to the Trust); DE 283-16 (trust agreement). Ronald Henry did not realize he was signing a trust agreement as part of the short sale application. Sasmor Stmt. ¶ 6; R. Henry Tr. at 9-10; 12-13; 23 (stating that he did not read the paperwork "thoroughly" and that he "thought that was just part of the process to give them authority to work on the mortgage. I didn't realize I was relinquishing ownership over to them.").

In early 2010, the Trust Defendants converted 287 Franklin from a private residence into a rooming house by installing locks on each of the building's nine bedrooms; the plaintiffs contend that the Goldberger Defendants were also involved in the conversion, but that assertion is in dispute. *See* Sasmor Stmt. ¶ 19; Trust Counterstatement ¶ 19; Goldberger Counterstatement ¶ 19; DE 279 ("Fletcher Decl.") ¶¶ 10-12; DE 280 ("Lin Decl.") ¶ 7; DE 281 ("Osterweil Decl.") ¶ 14; DE 282 ("Skubutyte Decl.") ¶ 10; DE 283 ("Sasmor Decl.") ¶ 12.

The individual plaintiffs each rented rooms at 287 Franklin in late March 2010 and moved into the building in early April 2010. *See* Fletcher Decl. ¶¶ 2, 8; Lin Decl. ¶¶ 2, 4; Osterweil Decl. ¶¶ 2, 12; Skubutyte Decl. ¶¶ 2, 9; Sasmor Decl. ¶¶ 2, 8. Three of them – Sasmor, Lin, and Skubutyte – signed leases provided to them by Realtor Defendants; neither Fletcher nor Osterweil ever signed a lease. DE 280-3 (lease signed by Sasmor and Lin); DE 282-3 (lease signed by Skubutyte); Fletcher Decl. ¶ 9; Osterweil Decl. ¶ 13.[6] The leases provided that the owner of 287 Franklin was responsible for costs such as heat, water, and repairs to the apartment. *See, e.g.*, DE 280-3 ¶ 1. Both leases had a one-year term ending on April 1, 2011, and had no provision concerning automatic renewal; to the contrary, both leases required the tenants move out at the end of the lease term and notified each

---

[6] The lease that Sasmor and Lin signed listed as residents all of the individual plaintiffs as well as defendant Brian Dudjak and several nonparty individuals, and it described the portion of the building being leased as "all floors" at 287 Franklin. DE 280-3 at 1.

tenant that "[o]nce this Lease has ended … [y]ou give up any right [y]ou might otherwise have to reinstate or renew the Lease." *See*, *e.g.*, DE 280-3 ¶¶ 8(B), 16.

The individual plaintiffs quickly became disenchanted with their new home. They did not like the fact that co-resident Brian Dudjak was operating a hostel out of his rooms, renting them out via the Internet rather than living there himself. *See* Complaint ¶ 66; Fletcher Decl. ¶¶ 20-22; Lin Decl. ¶¶ 14-15; Osterweil Decl. ¶¶ 23-25; Sasmor Decl. ¶ 26. They also disliked defendant Goldberger's rent-collection practices: he would come in person to demand the rent from them, knocking on their doors late at night and allegedly threatening them if they did not pay (the Goldberger Defendants dispute that the threatened consequences of non-payment included anything other than eviction). *See* Sasmor Stmt. ¶ 32; Goldberger Counterstatement ¶ 32; Fletcher Decl. ¶¶ 13-15; Lin Decl. ¶¶ 8-9, 16; Osterweil Decl. ¶¶ 15-18, 26; Skubutyte Decl. ¶ 11; Sasmor Decl. ¶¶ 17-21, 35; DE 294 (Goldberger's affirmation opposing partial summary judgment) ¶ 12. Goldberger's practices were not the only anomalies associated with rent collection: each individual plaintiff was told to address his or her rent checks to different people at various times, including "Isaac Titalbaum," "Isaac Titlebaum," "Henry Shtein," "Mr. Miesls," "Mr. Gold," "Henry Management llc," and "Henry Goldberg." *See* Fletcher Decl. ¶ 18; Lin Decl. ¶ 11; Osterweil Decl.¶¶ 19-20; Skubutyte Decl. ¶¶ 13-14; Sasmor Decl. ¶¶ 18, 30; *see also* DE 279-1; DE 280-1; DE 281-3; DE 281-4; DE 281-5; DE 282-6; DE 282-7; DE 283-4 (copies of rent checks).

Sasmor became curious about the ownership of the building, and later discovered that it was owned by the Trust, after seeing a foreclosure notice mailed to the building that was addressed to Ronald Henry. *See* Sasmor Decl. ¶¶ 28, 32. On June 2, 2010, Sasmor and Lin cancelled their June rent check based on their doubts about the building's ownership. *See id.* ¶¶ 30-31; DE 285-2 (Goldberger's affirmation supporting summary judgment) ("Goldberger Aff. Supp.") ¶ 5. On July 24, 2010, the building's occupants formed the plaintiff 287 Franklin Avenue Residents' Association, and

6

changed the building's locks. *See* Complaint ¶ 76; DE 324 ("Goldberger Stmt.") ¶ 22. No plaintiff has paid rent since July 2010. *See* Goldberger Aff. Supp. ¶ 5; Fletcher Decl. ¶ 24; Osterweil Decl. ¶ 22; Skubutyte Decl. ¶ 16.

On August 5, 2010, defendants Goldberger and Emmanus drilled through the newly installed lock, and Sasmor called the police. *See* Goldberger Stmt. ¶¶ 23-24; Sasmor Stmt. ¶¶ 58-60. The police ordered Sasmor to give Goldberger access to the building. Goldberger was accompanied by a new resident, defendant Peter Henry (also known as "Guru"). *See* Complaint ¶ 77. The plaintiffs allege, and the defendants deny, that Peter Henry, a former prison inmate, was brought to 287 Franklin to intimidate the plaintiffs and cause them to move out. *See* Sasmor Stmt. ¶¶ 72-73; Goldberger Counterstatement ¶ 72; Trust Counterstatement ¶ 72.

After the encounter with the police, Sasmor and Lin contacted Ronald Henry, who told the plaintiffs that he had never conveyed the property to the Trust. *See* Lin Decl. ¶ 12; Skubutyte Decl. ¶ 15; Sasmor Decl. ¶ 46; DE 283-9 (R. Henry affidavit dated Aug. 6, 2010). The plaintiffs then changed the locks for a second time and established a "security watch" rotation to ensure that the defendants did not try to enter the building again. *See* Fletcher Decl. ¶¶ 29-31; Lin Decl. ¶¶ 18-19; Osterweil Decl. ¶¶ 28-29; Skubutyte Decl. ¶ 19; Sasmor Decl. ¶¶ 44, 48.

In November 2010, the Trust initiated eviction proceedings in Housing Court against Sasmor, Fletcher, Lin, Osterweil and co-resident Amanda Diaz based on their nonpayment of rent. *See* Complaint ¶ 83; DE 284-1 at 1-3 (Petition, *Ronald Henry Land Trust v. Jon Sasmor et al.*). The residents – other than Fletcher, who voluntarily vacated 287 Franklin – opposed eviction on the ground that no rent could properly be collected at 287 Franklin because it was an unregistered multiple dwelling. *See* Complaint ¶ 84; Fletcher Decl. ¶ 33; *see also* N.Y. Mult. Dwell. Law §§ 302(1)(b), 325(2) (providing that an owner cannot collect rent on premises in violation of New York's multiple dwelling laws). Their defense prevailed: at the Housing Court's behest, *see* Complaint

7

¶ 84, the New York City Department of Housing Preservation and Development ("HPD") inspected 287 Franklin on December 18, 2010, and on December 29, 2010, issued several violations based on its determination that 287 Franklin had been "converted from a private dwelling to a multiple dwelling and [was then being] occupied and maintained as such contrary to law." DE 293-1 (copy of violations). HPD further concluded that the rooming units for Sasmor, Lin, Skubutyte, Osterweil, and non-party residents Amanda Diaz and Luis Campos should be "discontinued" and the premises "restore[d]… to lawful occupancy[,]" *id.*, and ordered the top floor of 287 Franklin to be vacated because there was no second means of egress. DE 283-11 (copy of HPD's vacate order).

Based on those reported violations, the Housing Court determined in January 2011 that that no rent could legally be collected on the premises and dismissed the nonpayment case. *See* Complaint ¶ 84. Shortly after the dismissal, the Trust and Goldberger sent each plaintiff a notice terminating his or her lease because 287 Franklin could not be legally rented as a multiple dwelling. *See* DE 284-1 at 4-68 (copies of termination notices and holdover eviction petitions against plaintiffs and nonparties Amanda Diaz, Luis Campos, and Alex Rosenbaum).

In March 2011, the Trust again initiated eviction proceedings in Housing Court, this time as holdover eviction cases based on the occupants' failure to vacate 287 Franklin after the termination of their leases. The Housing Court decided each case in favor of the Trust. *See* DE 310 at 107-44 (copies of decisions as to Sasmor, Lin, Skubutyte, and Osterweil). Sasmor alone appealed the decision against himself and Lin, and the appellate court reversed on the ground that because an express trust lacks the capacity to sue, the eviction proceedings could only have been brought by the trustees rather than by the Trust as such. *See* DE 301 at 2-3 (opinion in *Trust v. Sasmor*).

    B.    <u>Proceedings</u>

The plaintiffs filed their initial complaint on March 1, 2011 asserting violations of the RICO Act and New York General Business Law § 349. DE 1. They filed an amended complaint on July 7,

2011, that added new factual allegations supporting the RICO claims as well as a new claim under New York General Business Law § 350. DE 41. The Land Trust Defendants, the Goldberger Defendants, the Garcia Defendants, and the Realtor Defendants all answered the complaint, although the latter group's answer was ultimately stricken. *See* DE 43 (Realtor Defendants' Answer); DE 44 (Goldberger Defendants' and Trust Defendants' Answer); DE 46 (Garcia Defendants' Answer); DE 146 (order adopting recommendation to strike Realtor Defendants' Answer). The parties exchanged discovery over the next two years, largely completing that exchange by the time discovery closed on April 3, 2013. *See* DE 227 (minute entry). Sasmor lodged objections to several discovery rulings; the court ruled on those abjections, and referred the instant motions to me, on November 5, 2013. DE 254. The parties filed the fully briefed motions on October 3, 2014. *See* DE 274 (Plaintiff Sasmor's Notice of Motion); DE 285 (Goldberger Defendants' Notice of Motion); DE 296 (Trust Defendants' Notice of Motion); DE 309 (Garcia Defendants' Notice of Motion).[7]

II.    Discussion

The plaintiffs predicate their claims on an assertion that the defendants formed an enterprise, the object of which was to "claim ownership of, manage, and operate residential real estate at 287 Franklin, advertise and rent illegal rooming units, obtain cooperation from tenants by extortion, and conceal the proceeds to evade taxes." DE 275 (Sasmor's memorandum of law supporting partial summary judgment) at 18. They allege that the defendants conspired to commit a slew of racketeering acts in furtherance of this scheme, including extortion, mail fraud, wire fraud, bank fraud, money laundering, and attempted transaction of criminally derived property, as well as violations of the Travel Act and the National Stolen Property Act; in particular, they posit that the

---

[7] The Garcia Defendants also move to dismiss the Complaint for failure to state a claim upon which relief can be granted, a defense they initially raised in their Answer. *See* DE 46; DE 309; Fed. R. Civ. P. 12(b)(6). Because, in seeking both forms of relief, the Garcia Defendants rely heavily on evidence extrinsic to the pleadings, the court should analyze the motions exclusively under the standard applicable to motions for summary judgment. *See* Fed. R. Civ. P. 12(d).

defendants stole 287 Franklin from Ronald Henry and then falsely represented themselves to be its legal owners. *See generally* Complaint. The defendants counter that the plaintiffs are improvidently seeking to escalate a routine landlord-tenant conflict into a federal RICO case. *See* DE 285-3 (Goldberger Defendants' memorandum of law supporting summary judgment) at 2-3; DE 296-1 (Trust Defendants' memorandum of law supporting summary judgment) at 1. In part because the parties have such fundamentally irreconcilable views of the case, they dispute virtually every element of the plaintiffs' civil RICO claims, and devote a great deal of attention to disagreements about whether the record would allow a jury to conclude that the defendants have engaged in criminal conduct that violates the RICO Act's substantive prohibitions.

The court need not resolve such a broad array of disputes to be able to resolve the instant motions. As discussed below, even if the court assumes for purposes of analysis that the record suffices to allow a jury to conclude that the defendants committed crimes defined in the RICO Act, it should nevertheless dismiss the plaintiffs' federal claims because they cannot establish that they suffered any cognizable injury as a result of such violations. Because that renders their federal claims fatally defective, *see Commercial Union Assurance Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) (finding that a civil RICO plaintiff only has standing to bring a claim if he has been injured in his business or property by reason of a RICO violation), I discuss below only the RICO injury element of the plaintiffs' federal claims. Should the court reject the analysis below, I will of course provide a supplemental report discussing the myriad remaining issues pertinent to the resolution of the motions for summary judgment.

    A.    <u>Standard of Review</u>

"Summary judgment is warranted only upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jaramillo v. Weyerhauser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citations omitted) (quotation

10

marks omitted); *accord Moore v. City of N.Y.*, 2015 WL 1198084, at *3 (E.D.N.Y. Mar. 16, 2015); Fed. R. Civ. P. 56(a). A fact is material if it "'might affect the outcome of the suit under the governing law.'" *Holtz*, 258 F.3d at 69 (quoting *Anderson*, 477 U.S. at 248). A genuine issue is presented if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* In determining whether to grant summary judgment, a court is confined to issue-finding, not issue-resolution. *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012) (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). The court does not "weigh the evidence and resolve … factual issues" but rather "determine[s] as a threshold matter whether there are genuine unresolved issues of material fact to be tried." *Owens v. N.Y. City Hous. Auth.*, 934 F.2d 405, 408 (2d Cir. 1991) (quoting *Gibson v. Am. Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989)); *see also* Fed. R. Civ. P. 56(a).

      The moving party must demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Moore,* 2015 WL 1198084, at *3. If the moving party meets that burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 249). "To defeat a summary judgment motion, the non-moving party … may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations omitted). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Monclova v. City of N.Y.*, 2014 WL 4828813, at *8 (E.D.N.Y. Sept. 29, 2014) (quoting *Anderson*, 477 U.S. at 248). In assessing the evidence, "all reasonable inferences are drawn in favor of the non-movant[.]" *Wellesley v. Debevoise & Plimpton LLP*, 346 F. App'x 662, 662 (2d Cir. 2009). Moreover, because Sasmor is proceeding *pro se*, the court must construe his arguments liberally to make the strongest arguments they suggest. *See Erickson v. Pardus*,

551 U.S. 89, 94 (2007); *Guy v. MTA N.Y.C. Transit*, 2012 WL 4472098, at *2 (E.D.N.Y. Sept. 26, 2012).

      B.      <u>RICO Injury</u>

A plaintiff asserting a civil RICO claim must demonstrate not only that the defendants have committed a criminal offense under the RICO Act, but also that he was "'injured in his business or property *by reason of* [that criminal] violation.'" *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (emphasis in original; quoting 18 U.S.C. § 1964(c)).[8] To meet that burden, the plaintiff must show both proximate and but-for causation. That is, the plaintiff must establish both a direct relationship between the plaintiff's injury and the defendant's injurious conduct, and that he would not have been injured in the absence of the RICO violation. *See UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994); *see also Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Moreover, not any injury will suffice: the injury resulting from the RICO offense must be to the plaintiff's "business or property[.]" 18 U.S.C. § 1964(c). Personal harms such as emotional distress or the waste of time caused by the defendants' conduct are not cognizable injuries for purposes of establishing a civil RICO claim. *See Angermeir v. Cohen*, 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (collecting cases).

In seeking to establish the injury element of their RICO claims, the plaintiffs contend that they have suffered the following injuries as a result of the defendants' RICO violations:

- they paid illegal rent, credit check fees, utilities, repair fees, and security deposits;

---

[8] In general, to prove a substantive RICO violation, a plaintiff must establish "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Id.*; *see* 18 U.S.C. § 1962(a)-(c). A person who conspires to commit a substantive RICO offense also violates the Act. *See id.*, § 1962(d).

12

- they suffered emotional distress due to the "atmosphere of fear" created by the defendants;

- they were forced to remain in the house on security watch to prevent the defendants from breaking in to 287 Franklin;

- they paid litigation costs in connection with "meritless" eviction proceedings; and

- Sasmor gave his social security number to the defendants in his application for housing at 287 Franklin.

*See* Sasmor Stmt. ¶¶ 164-167; DE 305 (Represented Plaintiffs' memorandum of law opposing summary judgment) at 10; DE 304-1 (Declaration of 287 Franklin Avenue Residents' Association and exhibits thereto) ("287 Franklin Decl."). I address each proposed injury in turn below.

1. Rent and Other Payments

The payment of expenses such as rent, credit check fees, utilities, repair fees, and security deposits in connection with renting an apartment is not a cognizable injury proximately caused by any RICO Act violations. In arguing to the contrary, the plaintiffs first contend that the rent and other payments injured them because the defendants, having cheated Ronald Henry out of the deed to 287 Franklin, had no right to collect rent on the property. *See* DE 299 (Sasmor's memorandum of law opposing summary judgment) ("Sasmor Opp.") at 5-8, 11. But the fact that the defendants rooked Ronald Henry to obtain record ownership of 287 Franklin (and the concomitant legal right to rent it out to the plaintiffs) does not render the plaintiffs' rent payments cognizable RICO injuries: the plaintiffs had no obligation to pay rent to Ronald Henry, and so the fact that they paid rent to the defendants did not deprive them of money that they owed some other landlord. The defendants' rent collection may well have been an injury to Ronald Henry (who arguably lost the ability to collect rent on property he believed he owned), but it did no harm to the plaintiffs (who were in any event willing to exchange rent payments for housing at 287 Franklin). Thus, even assuming that the defendants committed racketeering acts to scam Ronald Henry out of the deed to

13

287 Franklin, that larcenous conduct did not cause the plaintiffs to make unlawful rent payments or incur other expenses – to the contrary, the record reflects that the plaintiffs purported to deposit the rent on their rooms into their own bank accounts, reserving the money in a self-styled escrow that might later be legally collected by whomever they determined to be the building's rightful owner. *See* Complaint ¶¶ 73, 196, 203, 209, 216; Sasmor Decl. ¶ 31; *see also Medgar Evers Houses Tenants Ass'n v. Medgar Evers Houses Assocs., L.P.*, 25 F. Supp. 2d 116, 120-24 (E.D.N.Y. 1998) (finding that tenants had not suffered a RICO injury where the racketeering acts were directed at misleading the U.S. Department of Housing and Urban Development), *aff'd*, 201 F.3d 430 (2d Cir. 1999); *cf. Holmes*, 503 U.S. at 271 (finding no proximate cause where the plaintiffs' claimed RICO injury depended upon an injury inflicted by the defendants on an intervening third-party).

To the extent Sasmor contends that one rent payment for May 2010 was the direct result of an extortionate act that formed part of the racketeering activity of which he complains, Sasmor Opp. at 23, the record does not support his claim for two reasons. First, the plaintiffs purport to establish the extortion on which they rely by declaring that Goldberger occasionally came to their doors during nighttime hours, knocking loudly, and demanding rent. *See id.* at 9, 23 (citing Sasmor Counterstatement § IV, ¶¶ 19-33, 35, 50, 165). That fails to establish, as required, that the defendants procured the plaintiffs' consent to make rent payments by "the wrongful use of actual or threatened force, violence or fear (including fear of economic loss)." *Wood v. Gen. Motors Corp.*, 2015 WL 1396437, at *6 (E.D.N.Y. Mar. 25, 2015) (internal quotations and citations omitted).[9]

Second, and more fundamentally, the record belies any claim that Goldberger's allegedly extortionate conduct was the proximate cause of any rent payment. To the contrary, as the plaintiffs acknowledge, it is undisputed that during the brief period in which they did make rent payments,

---

[9] To the extent that the record includes instances of Goldberger threatening to ruin the plaintiffs' credit, those instances occurred only after the plaintiffs stopped paying rent, and therefore cannot have induced their consent to make the rent payment that Sasmor cites as a cognizable injury.

14

they did so "because they believed that the rooming units were legitimate housing, and because they did not realize that rent collection was illegal due to lack of certificate of occupancy and lack of multiple dwelling registration" and that they "paid … rent fearing inability to find other affordable housing." DE 300 (Sasmor Counterstatement) § IV, ¶¶ 29, 30. In contrast, once the individual plaintiffs determined to their satisfaction that they were justified in withholding their rent payments, they persisted in doing so even in the face of explicit threats by Goldberger. *See, e.g.*, Sasmor Decl. ¶¶ 35-36; Lin Decl. ¶ 16; Osterweil Decl. ¶ 26.

Next, the plaintiffs argue that their payment of rent and other expenses was a cognizable injury both because 287 Franklin was in violation of several housing laws, and because the landlords breached the requirements in the lease agreements to provide certain utilities and repairs. *See* Sasmor Opp. pp. 3-4. That argument fails for two related reasons. At the outset, the housing violations and contract breaches were not themselves racketeering acts. *See* 18 U.S.C. § 1961(1).[10] Moreover, those violations and breaches severed any proximate causal link between the RICO Act violation and the unlawful rent collections. The defendants' reconfiguration of 287 Franklin from a two-family home to an unregistered multiple dwelling violated state law, and their failure to provide utilities and repairs may have violated the lease agreements – but those violations were independent of the defendants' allegedly unlawful conduct that put them in a position to abuse their control of the building. Thus, the harm of which the plaintiffs complain was not caused by any racketeering activity, and therefore cannot support a viable civil RICO claim. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985) ("Any recoverable damages occurring by reason of a violation of § 1962(c)

---

[10] The RICO Act's extensive list of crimes that constitute "racketeering activity" consists primarily of specifically enumerated federal offenses, none of which relate to state landlord-tenant law. *See id.* § 1961(1)(B)-(G). The only state offenses that qualify as racketeering activity under the statute are acts or threats "involving murder, kidnapping, gambling, arson, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance … which [are] chargeable under State law and punishable by imprisonment for more than one year." *Id.* § 1961(1)(A).

15

will flow from the commission of the predicate acts."); *cf. McFarland v. Weil*, 196 F. App'x 417, 420 (7th Cir. 2006) (dismissing a RICO claim where the damages flowed from plaintiff's wrongful termination, not from any RICO predicate offense).

### 2. Emotional Distress

A plaintiff may only base a civil RICO claim on an injury to her "business or property." 18 U.S.C. § 1964(c). To the extent the plaintiffs purport to establish the injury element of their RICO claims by asserting that they suffered emotional distress as a result of defendants' actions, their argument must fail: such injuries are personal in nature and not compensable under the RICO Act. *See, e.g., Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012) ("[i]t is beyond dispute that personal injuries are not injuries to 'business or property[;]'" citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)); *Gause v. Philip Morris*, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000) ("claims for personal injury or emotional distress … are not recognized under RICO").

### 3. The "Security Watch"

The plaintiffs allege that after twice taking it upon themselves to change the locks at 287 Franklin, only to have the local police rebuff their first such effort, they were forced to remain in the house on "security watch" in case the defendants sought once again to regain control of the building. Here again, the plaintiffs' argument fails in two ways. First, lost time and effort does not constitute an injury to business or property. *See, e.g., Angermeir*, 14 F. Supp. 3d at 152 (holding that loss of time and effort was not a RICO injury); *see also Rylewicz v. Beaton Servs., Ltd.*, 698 F. Supp. 1391, 1396 (N.D. Ill. 1988) (same), *aff'd*, 888 F.2d 1175 (7th Cir. 1989). Second, the plaintiffs' perceived need to mount such a security effort was proximately caused not by the defendants' unlawful conduct, but rather by the plaintiffs' unwillingness to accept that civil authorities would not take their side in their dispute with the defendants.

16

4. Litigation Expenses

Finally, the plaintiffs claim that they paid litigation expenses in connection with two rounds of eviction proceedings. Litigation costs can constitute a RICO injury where they are proximately caused by a RICO violation. *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993). Sasmor contends that the eviction proceedings were caused by the defendants' acts of mail and wire fraud and extortion. *See* Sasmor Opp. at 5-11, 12-13.

As with the previous arguments, this one fails to clear the hurdle of proximate causation. The fact that the defendants committed RICO Act violations manifestly did not cause the plaintiffs to make the independent decision to resort to self-help by withholding rent – and as discussed above, those rent payments were in any event not the proximate result of the RICO violations. The record unequivocally establishes that it was the plaintiffs' rent withholding that caused the defendants to put the plaintiffs to the burden of defending against the first set of eviction proceedings. Nor did the defendants' RICO violations proximately cause the second set of eviction proceedings: here again, the record unequivocally establishes that the plaintiffs incurred those litigation burdens because they insisted in staying in the rooms at 287 Franklin after their lease on those rooms had ended. The record also unequivocally establishes that the leases ended prematurely because HPD, after an investigation prompted by the plaintiffs' defense strategy in the eviction proceedings, ordered the defendants to discontinue renting out the rooms to the plaintiffs and restore the building to lawful occupancy.

With regard to that second wave of eviction cases, Sasmor argues that the state appellate court's reversal of his eviction demonstrates that the defendants' Housing Court claims were meritless, and that issue preclusion should apply to prevent any relitigation of that issue in this case. *Id.* at 5-8. Not so. Issue preclusion "bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding;

17

(3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (internal citation omitted). The ruling on which Sasmor seeks to base his assertion of issue preclusion was only that the Trust, as such, lacked the capacity to sue for eviction, and that such relief could instead be sought only by one of the trustees. *See Trust v. Sasmor*, 44 Misc. 3d at 52. That issue is simply not before the court in this case.

In holding that an express trust lacks the capacity to sue, the state appellate court did not hold that Ronald Henry, rather than the Trust, is the true owner of 287 Franklin. And it assuredly did not hold that an eviction claim against Sasmor, properly asserted by a trustee rather than by the Trust, would be meritless.[11] *See Cmty. Bd. 7 v. Schaffer*, 84 N.Y.2d 148, 155 (1994) ("'Capacity'… concerns a litigant's power to appear and bring its grievance to the court…. [T]he capacity question has often arisen in connection with controversies involving trustees."). As such, the state appellate court's decision does not resolve any issue in this case. Sasmor's misreading of the decision thus does nothing to support his effort to characterize the eviction proceeding's legal expenses as a cognizable harm proximately caused by the defendants' RICO Act violations.

5. Disclosure of Sasmor's Social Security Number

The fact that the defendants know Sasmor's social security number is not a cognizable injury. Sasmor has not claimed that he has suffered any adverse consequences as a result of the disclosure. *Cf. Angermeir*, 14 F. Supp. 3d at 152 (finding that an adverse entry in a credit report was not a RICO injury where plaintiffs had not established that they suffered damages as a result of such an entry).

---

[11] Indeed, the state appellate court in *Trust v. Sasmor* emphasized that "no motion was ever made to join the trustee or amend the caption to reflect that the trustees were the proper parties petitioner[.]" *Id.* Read in context, that observation makes sense only if the Trust is understood to be an entity that is competent to hold property and can (and must) act though its trustees in seeking judicial intervention to evict a tenant. Viewed in that light, the court clearly suggested that it would have affirmed an eviction if the plaintiff seeking Sasmor's ouster had been the individual trustees rather than the Trust itself. *See id.*

18

Moreover, for the same reason that the plaintiffs' rent payments to the defendants cannot properly be viewed as the proximate result of the defendants' RICO Act violation, the disclosure of Sasmor's Social Security number was likewise independent of the means by which the defendants unlawfully put themselves in the position to make 287 Franklin available for occupancy by Sasmor and others.

      6.  Conclusion as to the RICO Claims

    The plaintiffs have plausibly alleged, and have developed a factual record that would arguably allow a factfinder to conclude, that the defendants engaged in a variety of illegal acts – some of them properly characterized as "racketeering activity" within the meaning of the RICO Act – that improperly stripped Ronald Henry of his ownership of 287 Franklin and ultimately led to unsavory and illegal practices at the plaintiffs' residence. In rejecting the plaintiffs' RICO theory, and in addressing only one element of the claim to the exclusion of others, I do not mean to express any view either as to the veracity of the plaintiffs' factual allegations. Nor do I discount the deeply troubling nature of the picture that those allegations, if established, would present.

    Nevertheless, the federal law that the plaintiffs seek to invoke requires them to prove a very specific form of harm. And as explained above, they have failed to identify any injury to their business or property that was the proximate result of the defendants' alleged RICO Act violations. For that reason, even if a jury were to agree that the defendants did violate the RICO Act, the plaintiffs' civil claims under that statute would fail as a matter of law. I therefore respectfully recommend that the court deny Sasmor's motion for partial summary judgment on the RICO claims and grant the defendants' motions for summary judgment on those claims.

    C.  State Law Claims

    A federal district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction" – and it should do so where all such claims are dismissed prior to a trial. 28 U.S.C. § 1367(c)(3); *see Castellano v. Bd. of Trs.*, 937 F.2d 752,

758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). If the court accepts the foregoing recommendations to dismiss the plaintiffs' RICO claims, the only remaining claims will be those asserted under state law pursuant to the court's supplemental jurisdiction. I respectfully recommend that the court decline to exercise jurisdiction over those claims.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court deny plaintiff Sasmor's motion for partial summary judgment, grant defendants' motions for summary judgment, dismiss the plaintiffs' RICO claims with prejudice, and decline to exercise jurisdiction over their remaining state law claims.

IV.     Objections

Any objections to this Report and Recommendation must be filed no later than August 6, 2015.[12] Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        July 20, 2015

                                                            /s/
                                                    JAMES ORENSTEIN
                                                    U.S. Magistrate Judge

---

[12] Although he is proceeding *pro se*, Sasmor has arranged to receive electronic notification of all filings in this case via the court's ECF docketing system. He will therefore receive this document at the time of its filing on the docket.